IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
1st AMENDMENT PRAETORIAN          :
         :
       Plaintiff,          :
         :
v.            :     <u>Case 1:23-cv-00012-MKV</u>
         :     Hon. Mary Kay Vyskocil
         :
THE NEW YORK TIMES CO. *et al.*    :     ORAL ARGUMENT REQUESTED
         :
       Defendants.         :
-------------------------------------------------------x

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Anthony C. Carlini, Jr., Esquire
(New York Bar # 2648374)
Handel & Carlini, LLP
1984 Hackensack Road
Poughkeepsie, NY 12603
Telephone:  (845) 454-2221
Facsimile:  (845) 471-1005
Email: anthony@handelcarlini.com

*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net
(*Motion for Admission Pro Hac Vice
    To be Filed*)

*Counsel for the Plaintiff*

## <u>**TABLE OF CONTENTS**</u>

<u>Page No.</u>

Table of Authorities ……………………………………………………...  ii

Introduction …………………………………………………………  1

Background ………………………………………………………  2

    A.    Parties …………………………………………………  2

    B.    January 6 ………………………………………...............  3

    C.    The Articles …………………………………………...  3

Motion to Dismiss Standard of Review …………………………………  11

Discussion …………………………………………………………  12

    A.    1AP Plausibly Alleges A Claim of Defamation ………………..  12

        1.    The Statements Are Materially False …………………...  13

        2.    Of and Concerning ……………………………….....  14

        3.    The Fair Report Privilege Does Not Apply …................  15

        4.    1AP Plausibly Alleges Actual Malice ………...............  18

        5.    The Statements Are Not Pure Opinions ………………..  19

        6.    1AP Has Pled Special Damages …………………….....  21

        7.    1AP's Claims Are Timely ………………………….....  22

    B.    1AP Plausibly States A Claim of Defamation
        By Implication ……………………………………………  22

Conclusion and Request for Relief …………………………………...  24

# **TABLE OF AUTHORITIES**

Page No.

*Armstrong v. Simon & Schuster,*
    85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825 (1995) ………………     22

*Aronson v. Wiersma,*
    65 N.Y.2d 592, 493 N.Y.S.2d 1005, 483 N.E.2d 1138 (1985) ……………     12

*Bilinski v. Keith Haring Foundation, Inc.,*
    96 F.Supp.3d 35 (S.D.N.Y. 2015) ……………………………………………     17,18

*Biro v. Conde Nast,*
    883 F.Supp.2d 441 (S.D.N.Y. 2012) …………………………………...     Passim

*Bolden v. Morgan Stanley & Co.,*
    765 F.Supp. 830 (S.D.N.Y. 1991) ………………………………………..     19

*Bose Corp. v. Consumers Union of the United States,*
    692 F.2d 189 (1st Cir. 1982) ………………………………………………     18

*Brady v. Ottaway Newspapers, Inc.,*
    84 A.D.2d 226, 445 N.Y.S.2d 786 (2nd Dep't 1981) ……………………..     14

*Brian v. Richardson,*
    87 N.Y.2d 46, 637 N.Y.S.2d 660 N.E.2d 1126 (1995) ………………….     20

*Bustos v. A&E Networks,*
    646 F.3d 762 (10th Cir. 2011) ……………………………………………     13,14

*Celle v. Filipino Reporter Enters., Inc.,*
    209 F.3d 163 (2nd Cir. 2000) …………………………………………..     Passim

*Chapin v. Knight-Ridder, Inc.,*
    993 F.2d 1087 (4th Cir. 1993) ……………………………………………     22

*Chau v. Lewis,*
    771 F.3d 118 (2nd Cir. 2014) …………………………………………..     12

*Cianci v. New Times Publ'g Co.,*
    639 F.2d 54 (2nd Cir. 1980) ……………………………………………     7

*Coker v. Barr,*
    2020 WL 9812034 (D. Colo. 2020) ……………………………………     10

<u>Page No.</u>

*Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO,*
    377 F.Supp.3d 16 (D. D.C. 2019) ……………………………………..     21,22

*Croixland Properties Limited Partnership v. Corcoran,*
    174 F.3d 213 (D.C. Cir. 1999) ………………………………………     14,15

*Dershowitz v. Cable News Network, Inc.,*
    541 F.Supp.3d 1354 (S.D. Fla. 2021) ………………………………….     17

*Davis v. Boeheim,*
    24 N.Y.3d 262, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014) ……………….     19,20

*Dillon v. City of New York,*
    261 A.D.2d 34, 704 N.Y.S.2d 1 (1999) …………………………………..     13

*Dorr v. U.S.,*
    195 U.S. 138 (1904) ………………………………………………....     16,17

*Elias v. Rolling Stone,*
    872 F.3d 97 (2nd Cir. 2017) ………………………………………….     12,15

*Enigma Software Grp. USA, LLC v. Bleeping Computer, LLC,*
    194 F.Supp.3d 263 (S.D.N.Y. 2016) ………………………………....     7

*Fairstein v. Netflix, Inc.,*
    553 F.Supp.3d 48 (S.D.N.Y. 2021) ……………………………………     11

*Flamm v. American Ass'n of University Women,*
    201 F.3d 144 (2nd Cir. 2000) …………………………………………...     20,21

*Flynn v. Cable News Network, Inc.,*
    2021 WL 5964129 (S.D.N.Y. 2021) ……………………………………     10

*Flynn v. Cable News Network, Inc.,*
    2022 WL 3334716 (S.D.N.Y. 2022) ……………………………………     10

*Foster v. Churchill,*
    87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996) ……………..     12

*Franklin v. Daily Holdings, Inc.,*
    135 A.D.3d 87, 21 N.Y.S.3d 6 (1st Dep't 2015) ………………………….     13

*Frechtman v. Gutterman,*
    115 A.D.3d 102, 979 N.Y.S.2d 58 (2014) ………………………………..     13

Page No.

*Goel v. Bunge, Ltd.*,
    820 F.3d 554 (2nd Cir. 2016) …………………………………………...    11

*Goldwater v. Ginzburg*,
    414 F.2d 324 (2nd Cir. 1969) …………………………………………    18

*Gross v. New York Times Co.*,
    82 N.Y.2d 146, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993) …………….    12,20

*Herbert v. Lando*,
    781 F.2d 298 (2nd Cir. 1986) …………………………………………    22

*Herbert v. Lando*,
    441 U.S. 153 (1979) …………………………………………………    18

*Hotchner v. Castillo-Puche*,
    551 F.2d 910 (2nd Cir. 1977) …………………………………………...    20

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
    49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185 (1979) ………………    16

*Karedes v. Ackerly Group, Inc.*,
    423 F.3d 107 (2nd Cir. 2005) …………………………………………    16

*Keough v. Texaco, Inc.*,
    1999 WL 61836 (S.D.N.Y. 1999) ………………………………………    24

*Kinsey v. New York Times Company*,
    991 F.3d 171 (2nd Cir. 2021) …………………………………………    17

*Laguerre v. Maurice*,
    192 A.D.3d 44, 138 N.Y.S.3d 123 (2020) ………………………………...    13

*La Liberte v. Reid*,
    966 F.3d 79 (2nd Cir. 2020) ………………………………………….    12

*Lan Sang v. Ming Hai*,
    951 F.Supp.2d 504 (S.D.N.Y. 2013) …………………………………….    17

*Lewis v. Abramson*,
    2023 WL 3323009 (D. N.H. 2023) ……………………………………….    Passim

*Lindberg v. Dow Jones & Company, Inc.*,
    2021 WL 3605621 (S.D/NY. 2021) ……………………………………    16

Page No.

*Masson v. New Yorker Magazine, Inc.*,
    501 U.S. 496 (1991) …………………………………………………… 13

*Nunes v. Lizza*,
    12 F. 4th 890 (8th Cir. 2021) …………………………………………. Passim

*Nunes v. NBCUniversal Media, LLC*,
    2022 WL 17251981 (S.D.N.Y. 2022) ………………………………… Passim

*O'Hara v. Storer Communications*,
    231 Cal.App.3d 1101, 282 Cal.Rptr. 712 (1991) …………………….... 21

*Palin v. New York Times Company*,
    940 F.3d 804 (2nd Cir. 2019) ……………………………………….... 12, 13

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
    413 U.S. 376 (1973) …………………………………………………… 7

*Rinaldi v. Holt, Rinehart & Winston*,
    42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977) …………… 12

*Roberti v. Schroder Inv. Management North America, Inc.*,
    2006 WL 647718 (S.D.N.Y. 2006) …………………………………… 24

*Sparrow Fund Mgmt, LP v. MiMedx Grp., Inc.*,
    2019 WL 1434719 (S.D.N.Y. 2019) …………………………………... 14

*Spitzer v. Greenberg*,
    155 A.D.3d 27, 62 N.Y.S.2d 372 (2017) …………………………… 16

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) …………………………………………………… 18,19

*Tah v. Global Witness Publishing, Inc.*,
    2021 WL 1045205 (D.C. Cir. 2021) ………………………………….. 2

*Terwilliger v. Wands*,
    17 N.Y. 54 (1858) …………………………………………………... 21

*Unlimited Cellular, Inc. v. Red Points Solutions SL*,
    2023 WL 4029824 (S.D.N.Y. 2023) …………………………………. 14

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ………………………………………... 19

Page No.

*Wilson v. Diocese of New York Episcopal Church*,
    1998 WL 82921 (S.D.N.Y. 1998) ………………………………………..    22

*Yergey v. Brinker Florida, Inc.*,
    2020 WL 10817751 (M.D. Fla. 2020) ……………………………………    21

Section 74 of the New York Civil Rights Law ………………………………...    15,16

New York C.P.L.R. § 215(3) ……………………………………………………..    22

Newall on Defamation, Libel and Slander, chap. 19, § 153 …………………...    17

R. Sack, *Libel, Slander, and Related Problems* 138 (1980) ……………………...    13

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
1st AMENDMENT PRAETORIAN :
 :
  Plaintiff, :
 :
v. :  <u>Case 1:23-cv-00012-MKV</u>
 :  Hon. Mary Kay Vyskocil
 :
THE NEW YORK TIMES CO. *et al.* :  ORAL ARGUMENT REQUESTED
 :
  Defendants. :
------------------------------------------------------x

# <u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS</u>

Plaintiff, 1st Amendment Praetorian ("Plaintiff" or "1AP"), by counsel, pursuant to Local Rule 7.1(b) and § 4(A)(iii) of the Court's Individual Civil Practice Rules, respectfully submits this Memorandum in Opposition to the motion to dismiss amended complaint pursuant to Rule 12(b)(6) filed by defendants, The New York Times Company ("NYT") and Alan Feuer ("Feuer").

## I. <u>INTRODUCTION</u>

This is an action for defamation and defamation by implication arising out of a series of articles published by Defendants that falsely state or imply that 1AP was involved in the January 6 attack on the United States Capitol. [*ECF No. 12 ("Am. Compl."), ¶¶ 1, 12, 13-31, 44*].  1AP commenced this action on January 3, 2023.  After 1AP amended its complaint, NYT and Feuer filed a motion to dismiss 1AP's claims pursuant to Rule 12(b)(6) [*ECF No. 12*], arguing that 1AP has failed to state a claim upon which relief can be granted.

The matter is before the Court on Defendants' motion to dismiss. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). As is explained in detail below, viewed in a light most favorable to 1AP, the amended complaint plausibly alleges claims of defamation and defamation by implication against NYT and Feuer. The Court should DENY Defendants' motion.

## II.  <u>BACKGROUND</u>

### A.    <u>The Parties</u>

Robert Patrick Lewis ("Lewis") is a decorated United States Army Green Beret, who received a Bronze Star and Purple Heart in the service of his Country. He possessed a TS-SCI security clearance and received an Honorable Discharge. In 2020, Lewis founded 1AP to provide pro bono security and protective services at grassroots events. Lewis created 1AP to ensure that every American can freely associate, freely gather and freely speak on matters of public concern to them without threat or fear of intimidation, retribution, bodily harm or death. [*Am. Compl., ¶ 9*].

NYT publishes *The New York Times* newspaper and its digital equivalent, www.nytimes.com. NYT is a well-known "Democratic Party broadsheet". *Tah v. Global Witness Publishing, Inc.*, 2021 WL 1045205, at * 17 (D.C. Cir. 2021) (Silberman, J., dissenting). In addition to its print and digital products, NYT targets advertisers, subscribers and viewers via social media. NYT has over 55,000,000 followers on Twitter alone. [*Id., ¶ 4*]. Feuer is a reporter for NYT. In January 2022, NYT represented to its readers and viewers that Feuer covered "courts and criminal justice for the Metro desk." After January 2022 and during the time relevant to this matter, NYT conspicuously advised readers that "**Alan Feuer covers extremism and political violence**." [*Id., ¶ 5*].

B.   **January 6**

January 6, 2021 was one of the most dangerous days in the modern history of our republic. [*Am. Compl., ¶ 10*].[1]

On January 6, 2021, 1AP provided security detail for members of the press, including a Washington D.C. ABC affiliate. [*Id., ¶ 11*]. Neither 1AP nor any of its officers engaged in violence or played any part or role or had any involvement in the planning, coordination or the attacks on the United States Capitol on January 6. [*Id., Compl., ¶ 12*].

C.   **The Articles**

1.   ***The J3 Article***

On January 3, 2022, NYT published an online article written by Feuer entitled, "***Another Far-Right Group Is Scrutinized About Its Efforts to Aid Trump***" (the "J/3 Article").  On January 4, 2022, a version of the J3 Article appeared in print, on Section A, Page 1 of the New York edition of *New York Times* with the headline: "***Jan. 6 Inquiry Turns Its Focus To New Group***". [*Am. Compl., ¶ 13*].  1AP alleges that readers of the J/3 Article "clearly understood the Article to convey a defamatory meaning about 1AP, including, as NYT's Robert Draper expressly represented to his 28,500+ Twitter followers, that 1AP had a 'role in 1/6'". [*Id., ¶ 14*]. The J/3 Article contains the following statements of fact and implications that the amended complaint alleges [*Id., ¶ 15*] are materially false and defamatory:[2]

---

[1]    On August 1, 2023, the Department of Justice unveiled an indictment charging former President Donald J. Trump with four criminal counts.  The indictment relates to former President Trump's alleged attempts to overturn the results of the 2020 presidential election, which "culminated in the January 6 attack on the Capitol by a mob of his supporters." [https://www.nytimes.com/interactive/2023/08/01/us/politics/trump-jan-6-indictment-2020-election-annotated.html].

[2]    For ease of analysis, this Memorandum will identify the statements at issue by number and in chronological order in which they appear in the amended complaint, *e.g.,* "Statement No. 1", *etc.*

Statement No. 1:     1AP engaged in "Efforts to Aid Trump" in overturning the results of the 2020 Presidential Election;

Statement No. 2:     1AP was "was involved in a less publicly visible yet still expansive effort to keep President Donald J. Trump in power";

Statement No. 3:     "1AP … spent much of the postelection period working in the shadows with pro-Trump lawyers, activists, business executives and military veterans to undermine public confidence in the election and to bolster Mr. Trump's hopes of remaining in the White House";

Statement No. 4:     1AP "had men on the ground outside the building on Jan. 6 and others at the Willard Hotel, near some of Mr. Trump's chief allies";

Statement No. 5:     "On the day of the Capitol attack, at least one of Mr. Lewis's lieutenants, Geoffrey Flohr, a former Michigan police officer, was outside the building walking the grounds and talking on his cellphone just before the riot erupted";[3]

Statement No. 6:     "Another member of 1AP posted on Twitter that afternoon, claiming he was in an 'overwatch position' in Arlington County, Va., where prosecutors say the Oath Keepers had placed at a hotel an armed 'quick reaction force' that was prepared to move into Washington if needed";[4] and

---

[3]     *See Lewis v. Abramson*, 2023 WL 3323009, at * 17-18 (D. N.H. 2023) (statement in tweet that "1AP members don't appear to have stormed the Capitol, but at least one operative—Geoffrey Flohr—circled it as the attack was underway, talking covertly via an earpiece" and "[a]nother—Philip Luelsdorff—observed from a war room led by Giuliani and Eastman" was actionable).

[4]     Members of 1AP were staying at a Holiday Inn in Arlington (7.5 miles away from the Capitol) because of the favorable room rates. There was no line of sight from the Holiday Inn to the Capitol. 1AP had no knowledge that the Oath Keepers were staying at a hotel and/or that the Oath Keepers had "placed an armed 'quick reaction force'" at any hotel. NYT and Feuer implied a connection between 1AP and the activities of the Oath Keepers that was knowingly false and defamatory. [*Am. Compl, ¶ 15(f) fn. 3*].

Statement No. 7:       "As for Mr. Lewis [President of 1AP] … '[t]oday is the day the true battles begin,' he wrote on Twitter just as the Capitol was breached."

1AP alleges that the J/3 Article, viewed in its entirety, states or implies that 1AP was involved in the events of January 6, 2021.  The defamatory gist of the J/3 Article, according to 1AP, is that 1AP, a "right-wing paramilitary group" like "high-profile extremist" and "far-right nationalist Proud Boys and Oath Keepers militia", was involved in former President Trump's postelection plot to interfere with the certification of the 2020 vote count and to stay in power, which included the January 6 attacks on the Capitol. [*Am. Compl., ¶ 16*].

2.       ***The 3/29 Article***

On March 29, 2022, NYT published an online article written by Feuer entitled, "***New Focus on How a Trump Tweet Incited Far-Right Groups Ahead of Jan. 6***" (the "3/29 Article")].  Feuer and other NYT employees tweeted out the 3/29 Article in tandem, falsely stating to their Twitter followers and readers that 1AP "stormed the Capitol" on January 6, 2021. [*Am. Compl., ¶ 17*].  On March 30, 2022, a version of the 3/29 Article appeared in print in Section A, Page 1 of the New York edition of the *New York Times* with the headline: "***Evidence Grows That Dec. 19 Trump Tweet Paved Way for Jan. 6***". [*Id.*].  1AP alleges that the 3/29 Article was republished millions of times by third-parties, who clearly understood the Article to convey a defamatory meaning about 1AP. [*Id., ¶ 18*].  The 3/29 Article contains the following statements of fact, which 1AP alleges [*Id., ¶ 19*] are false and defamatory:

Statement No. 8:       "[A] [December 19, 2020] tweet by President Donald J. Trump less than three weeks before Jan. 6, 2021, served as a crucial call to action for extremist groups that played a central role in storming the Capitol";

Statement No. 9:      "Extremist groups almost immediately celebrated Mr. Trump's Twitter message, which they widely interpreted as an invitation to descend on the city in force";

Statement No. 10:      "Extremists began to set up encrypted communications channels, acquire protective gear and, in one case, prepare heavily armed 'quick reaction forces' to be staged outside Washington";

Statement No. 11:      "The event on Dec. 12, 2020, which Mr. Trump flew over in Marine One, showed his ability to draw huge crowds of ordinary people in support of his baseless assertions that the election had been stolen.  But it also brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian, who would be present on Jan. 6";

Statement No. 12:      "Mr. Trump's message arguably landed with the greatest impact among members of the same extremist groups that had been in Washington on Dec. 12"; and

Statement No. 13:      "Once the call came, early on Dec. 19, the extremists were ecstatic".

1AP alleges that the 3/29 Article, viewed in its entirety, states or implies that 1AP was one of the extremists and paramilitary groups that played a role in storming the Capitol on January 6, 2021.  The 3/29 Article intentionally engages in reciprocation; that is, it reciprocates between generally referring to "extremists" and specifically identifying examples of such "extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian."   As a result of this literary device employed by Defendants, 1AP alleges that the 3/29 Article is capable of a defamatory meaning and is susceptible to a defamatory implication. [*Am. Compl., ¶ 20*].

3.      **The 6/29 Article**

On June 29, 2022, NYT published an online article written by Feuer entitled, "***Jan. 6 Panel Explores Links Between Trump Allies and Extremist Groups***" (the "6/29 Article").  A version of the 6/29 Article appeared in print on June 30, 2022, on Section A, Page 17 of the New York edition of the *New York Times* with the headline: "***Testimony of Trump Allies And Extremists at Hearing***".  [*Am. Compl., ¶ 21*].  1AP alleges that readers of the 6/29 Article "clearly understood the Article to convey a defamatory meaning".  [*Id., ¶ 22*].  The 6/29 Article contains the following statements of fact that 1AP contends [*Id., ¶ 23*] are materially false:

Statement No. 14:      "Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a pair of allies [Retired Lieutenant General Michael T. Flynn ("General Flynn") and Roger Stone ("Stone")] who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence"; and

Statement No. 15:      "Jamie Raskin, Democrat of Maryland, has said he intends to lead a presentation that will focus on the roles far-right groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian played in the Capitol attack".[5]

---

[5]      Defendants are liable for their republication of Raskin's false and defamatory statements. *See, e.g., Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2nd Cir. 1980) (discussing the "black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows the truth of the statement."); *Enigma Software Grp. USA, LLC v. Bleeping Computer, LLC*, 194 F.Supp.3d 263, 287 (S.D.N.Y. 2016) (it is "well-established that "[a] speaker who repeats another's defamatory statements is not made immune from liability for defamation merely because another person previously made the same demeaning claim.") (collecting cases)); *see id. Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 386 (1973) (a "newspaper may not defend a libel suit on the ground that the falsely defamatory statements are not its own")).

1AP alleges that Statements 14 and 15 – that 1AP was at the "forefront of the violence" on January 6 and that 1AP played a role in "the Capitol attack" – are capable of a defamatory meaning. [*Am. Compl., ¶ 24*].

### 4.   *The NPR Statements*

On June 30, 2022, National Public Radio ("NPR") host Terry Gross published an article entitled, "***Did the Trump camp help far-right militia groups plan the Jan. 6 attack?***", and aired an interview with Feuer. [*Am. Compl., ¶ 25*].  During the NPR interview, Feuer published the following statements of fact (the "NPR Statements") [*Id., ¶ 26*] that 1AP alleges are materially false and defamatory per se [*Id., ¶ 27*]:

Statement No. 16:     "[w]hile we don't know what Meadows may have said to Stone and Flynn, what we do know is that Stone and Flynn[6] both have extensive contacts to far-right militia groups that were intimately involved in the attack on the Capitol"; and

Statement No. 17:     The call from Meadows to Stone and Flynn "is a potential conduit in which Trump could be connected directly to these militia groups that, ultimately, were at the vanguard of the attack on the Capitol."

### 5.   *The 7/11 Article*

On July 11, 2022, NYT published an online article written by Luke Broadwater entitled, "***Raskin Brings Expertise on Right-Wing Extremism to Jan. 6 Inquiry***" (the "7/11 Article").  A version of the 7/11 Article appeared in print on July 12, 2022, on Section A, Page 13 of the New York edition of the *New York Times* with the headline: "***Raskin Faces Major Moment in 5-Year Crusade Against Extremism***". [*Am. Compl., ¶ 28*].  1AP alleges that readers of the 7/11 Article "clearly understood the Article to convey a defamatory meaning about 1AP". [*Id., ¶ 29*].  The

---

[6]     Of the "militia groups" identified by Feuer during the NPR interview, NYT and Feuer knew that General Flynn had contacts with only one:  1AP. [*Am. Compl., ¶ 26(a) fn. 4*].

7/11 Article contains the following false statements of fact and implications, which 1AP alleges [*Am. Compl., ¶ 30*] are materially false and defamatory:

<u>Statement No. 18</u>:   "[A]fter Mr. Trump's many efforts to overturn the 2020 election had failed, he and his allies turned to violent far-right extremist groups";

<u>Statement No. 19</u>:   "There were Proud Boys, Oath Keepers, Three Percenters, the QAnon network, Boogaloo Boys, militia men and other assorted extremist and religious cults that assembled under the banner of 'Stop The Steal'";

<u>Statement No. 20</u>:   "This was quite a coming-out party for a lot of extremist, antigovernment groups and white nationalist groups that had never worked together before";

<u>Statement No. 21</u>:   "Donald Trump's tweet urging everyone to descend upon Washington for a wild protest on Jan. 6 succeeded in galvanizing and unifying the dangerous extremists of the country";

<u>Statement No. 22</u>:   The J6 "panel plans to detail known links between the political operative Roger Stone, a longtime ally of Mr. Trump's, the former national security adviser, Michael T. Flynn, and the extremist groups"; and

<u>Statement No. 23</u>:   "Mr. Flynn has ties to the 1st Amendment Praetorian paramilitary group, which provided him with security when he appeared as a speaker at a pro-Trump march in Washington in December 2020.  Joining the group in a security role at the event were members of the Oath Keepers, including Mr. Rhodes".

1AP alleges that the 7/11 Article, viewed in its entirety, states or implies that 1AP was one of the "violent far-right extremist groups" that were involved in efforts to overturn the 2020 election.  1AP further alleges that the 7/11 Article falsely states or implies that 1AP "assembled"

and/or "worked together" with or is linked to other "extremist, antigovernment groups and white nationalist groups". [*Am. Compl., ¶ 31*].

1AP's complaint explains how or why the Statements are materially false. [*Id., ¶ 32*]; *see Flynn v. Cable News Network, Inc.*, 2022 WL 3334716, at * 5 (S.D.N.Y. 2022) ("given the extreme negative connotations of being a QAnon follower, the Flynns have adequately alleged that being labeled a QAnon follower would have a different effect on the mind of a viewer than the pleaded truth."). 1AP also alleges that the Statements are capable of a defamatory meaning. [*Am. Compl., ¶ 33*]; *Lewis*, 2023 WL 3322009 at * 15 ("a reasonable reader could understand the tweet to assert that 1AP was involved in coordinating the attack on the Capitol or other attempts to overturn the results of the election—an assertion that the plaintiffs vehemently deny. The statement therefore survives the motion to dismiss.");[7] *Flynn v. Cable News Network, Inc.*, 2021 WL 5964129, at * 4 (S.D.N.Y. Dec. 16, 2021) ("[F]alsely implying a connection to a violent extremist group can be defamatory."); *see id. Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world."). In support of its claim that the Defendants knew the Statements were false or published the Statements with reckless disregard for the truth – actual malice – 1AP alleges facts that show (a) the Statements are so inherently improbable under the circumstances that only a reckless person would have put them in circulation; (b) that NYT and Feuer purposefully

---

[7]    *See id. Lewis*, 2023 WL 3322009 at * 16 ("Classifying Lewis as a "domestic insurgent[]" while discussing the January 6 "domestic insurgency" could plausibly be understood as an assertion that Lewis had some sort of involvement in the January 6 attack on the Capitol. Thus, the statement is capable of defamatory meaning."); * 18 ("Charging 1AP with 'seditious activity' goes beyond mere rhetorical hyperbole, particularly where, as here, it is used in conjunction with the events of January 6, which many have described as seditious. Thus, read in context, the tweet could be understood to assert that 1AP was involved in or otherwise supportive of the attack on the Capitol, and is therefore capable of defamatory meaning."); * 19 ("This tweet accuses 1AP of playing a 'support role[]' in an '[i]nsurrection,' and is therefore capable of defamatory meaning.").

avoided the truth and published the false Statements and defamatory implications about 1AP as part of a preconceived narrative that "domestic violent extremists" were involved in the attacks on the Capitol; and (c) NYT and Feuer republished the false Statements and defamatory implications about 1AP after reading a lawsuit in which 1AP expressly denied that it played any role or had any involvement in the events of January 6. *Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.'") (citation and quotation omitted). [*Am. Compl., ¶¶ 1, 32, 34*].

## III.  <u>MOTION TO DISMISS STANDARD OF REVIEW</u>

A motion to dismiss under Rule 12(b)(6) only tests the "legal feasibility" of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Nunes v. NBCUniversal Media, LLC*, 2022 WL 17251981, at * 3 (S.D.N.Y. 2022) (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2nd Cir. 2016)); *Fairstein v. Netflix, Inc.*, 553 F.Supp.3d 48, 62 (S.D.N.Y. 2021).  The test of a claim's substantive merits is "reserved for the summary judgment procedure, governed by Rule 56, where both parties may 'conduct appropriate discovery and submit the additional supporting material contemplated by' that rule." *Nunes*, 2022 WL 17251981 at * 3 (quotation and citations omitted).  In adjudicating a motion to dismiss, the Court takes no account of the complaint's "basis in evidence" and "may review only a narrow universe of materials." *Id.* (quoting *Goel*, 820 F.3d at 559).  Generally, Courts do not look beyond facts stated on the face of the complaint, documents incorporated in the complaint, matters of which judicial notice may be taken and documents that are "integral" to the complaint. *Id.*; *see also Fairstein*, 553 F.Supp.3d at 62 (citation and quotation omitted).

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *La Liberte v. Reid*, 966 F.3d 79, 85 (2nd Cir. 2020) (citing *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2nd Cir. 2019) (quoting *Elias v. Rolling Stone, LLC*, 872 F.3d 97, 104 (2nd Cir. 2017))).

## IV.  DISCUSSION

Under New York law, Courts assess a defamation claim "by looking at the full context of the communication in which the statement appears". *Nunes*,  2022 WL 17251981 at * 3 (quoting *Chau v. Lewis*, 771 F.3d 118, 129 (2nd Cir. 2014); *accord Gross v. New York Times Co.*, 82 N.Y.2d 146, 153, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993); *Aronson v. Wiersma*, 65 N.Y.2d 592, 593-594, 493 N.Y.S.2d 1005, 483 N.E.2d 1138 (1985) ("The words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader").

### A.    1AP Plausibly Alleges A Claim of Defamation

Defamation is defined as "the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Nunes*, 2022 WL 17251981 at * 3 (citing and quoting *Foster v. Churchill*, 87 N.Y.2d 744, 751, 642 N.Y.S.2d 583, 665 N.E.2d 153 (1996) (quoting *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379, 397 N.Y.S.2d 943, 366 N.E.2d 1299 (1977)).  Under New York law, to recover on a claim of defamation, a plaintiff must establish the following elements: (1) publication without privilege or authorization to a third party of a (2) false and (3) defamatory statement of and concerning the plaintiff, (4) with the requisite fault, and (5) special damages or per se

actionability. *See, e.g., Palin v. New York Times Company*, 940 F.3d 804, 809 (2nd Cir. 2019); *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2nd Cir. 2000); *Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1, 5 (1999). A statement is defamatory on its face (defamation *per se*) when it "suggests improper performance of one's professional duties or unprofessional conduct." *Nunes*, 2022 WL 17251981 at * 3 (citing and quoting *Frechtman v. Gutterman*, 115 A.D.3d 102, 104, 979 N.Y.S.2d 58 (2014) (further quotation omitted)); *see also Laguerre v. Maurice*, 192 A.D.3d 44, 50, 138 N.Y.S.3d 123 (2020) ("A statement is defamatory per se if it ... tends to injure the plaintiff in her or his trade, business, or profession").

NYT and Feuer challenge 1AP's claim of defamation on several grounds. Those challenges are addressed in order:

### 1. ***The Statements Are Materially False***

As to the element of falsity in a defamation case, "[t]he common law of libel takes but one approach ... regardless of the form of the communication. It overlooks minor inaccuracies and concentrates upon substantial truth." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-517 (1991). "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Id.* Therefore, "[a] statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

"Courts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader." *Nunes*, 2022 WL 17251981 at * 4 (quoting *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94, 21 N.Y.S.3d 6 (1st Dep't 2015)); *see Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch,

J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

Ironically, the truth is that on January 6, 2021, 1AP was providing security detail for the press. [*Am. Compl., ¶ 11*].  Instead of portraying 1AP as a defender of the First Amendment, NYT and Feuer chose to portray 1AP in the exact opposite light – as a threat to democracy.  The amended complaint emphasizes that the Statements are materially false, and explains why.  1AP did not aid and abet former President Trump in his efforts to overturn the results of the 2020 Presidential Election.  1AP did not work together with any "extremist, antigovernment groups and white nationalist groups".  1AP did not play any role and was not involved in any way in the January 6 attacks on the Capitol.  1AP was not "at the vanguard of the attack on the Capitol".  1AP did not storm the Capitol.  1AP was never on the "forefront of the violence" on January 6. [*Am. Compl., ¶¶ 15, 19, 23, 26, 27, 30, 32*].

1AP sufficiently alleges that the Statements are materially false.

## 2.    *Of and Concerning*

"The 'of and concerning' element in defamation actions requires that the allegedly defamatory comment refer to the plaintiff." *Unlimited Cellular, Inc. v. Red Points Solutions SL*, 2023 WL 4029824, at * 3 (S.D.N.Y. 2023) (quoting *Sparrow Fund Mgmt, LP v. MiMedx Grp., Inc.*, 2019 WL 1434719, at * 9 (S.D.N.Y. 2019) (quoting *Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 228, 445 N.Y.S.2d 786 (2nd Dep't 1981))); *Croixland Properties Limited Partnership v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999) (the "of and concerning" element of defamation is satisfied if the statement leads "the listener to conclude that the speaker is

referring to the plaintiff by description, even if the plaintiff is never named or is misnamed.").

The Statements are "of and concerning" 1AP.  1AP is mentioned by name in the J/3 Article, the 3/29 Article, the 6/29 Article and the 7/11 Article.  1AP leadership and officers are identified by name in the J/3 Article.  In each of the Articles and in the defamatory tweets accompanying the 3/29 Article [*Am. Compl., ¶ 17*], 1AP is consistently identified as being one of the "extremist groups", the others being the Proud Boys and the Oath Keepers.  Statement 14 and Statement 16 that appear in the 6/29 Article and the NPR interview do not mention 1AP by name, but these Statements clearly refer to 1AP because it was commonly understood that 1AP had "extensive ties" to General Flynn.  Indeed, 1AP alleges that NYT and Feuer knew that General Flynn had "extensive contacts" with only one "far-right militia group": 1AP. [*Id., ¶¶ 15, 19, 23, 26, 30, 38*].  Readers of the Statements could easily identify 1AP, and 1AP alleges that readers clearly understood the Statements to convey a defamatory meaning about 1AP. [*Id., ¶¶ 14, 18, 29*].

The amended complaint sufficiently alleges that the Statements are "of and concerning" 1AP. *Elias*, 872 F.3d at 104-105 ("a defamation plaintiff must allege that the purportedly defamatory statement was 'of and concerning' him or her, *i.e.*, that '[t]he reading public acquainted with the parties and the subject" would recognize the plaintiff as a person to whom the statement refers.") (citations and quotation omitted).

### 3.  <u>*The Fair Report Privilege Does Not Apply*</u>

New York law recognizes certain privileges that shield a person or corporation from liability for defamation.  Section 74 of the New York Civil Rights Law provides:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published."

"The fair and true report privilege has been described as an absolute privilege that is not defeated by the presence of malice or bad faith." *Biro v. Conde Nast*, 883 F.Supp.2d 441, 477 (S.D.N.Y. 2012). A statement is deemed a fair and true report only if it is "substantially accurate." *Karedes v. Ackerly Group, Inc.*, 423 F.3d 107, 119 (2nd Cir. 2005). "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Id.* "A fair and true report admits of some liberality; the exact words of every proceeding need not be given if the substance be substantially stated." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185, 1187 (1979).[8]

In assessing whether a publication is a fair and true report of a legislative or other official proceeding, the United States Supreme Court points out that the "publisher must add nothing of his own. He must not state his opinion of the conduct of the parties, or impute motives therefor; he must not insinuate that a particular witness committed perjury. That is not a report of what occurred; it is simply his comment on what occurred, and to this no privilege attaches. Often such comments may be justified on another ground,—that they are fair and bona fide criticism on a matter of public interest, and are therefore not libelous. But such observations, to which quite different considerations apply, should not be mixed up with the history of the case. Lord Campbell said: 'If any comments are made, they should not be made as part of the report. The report should be confined to what takes place in court; and the two things—report and comment—should be kept separate.' And all sensational headings to reports should be

---

[8]    "The privilege afforded by Civil Rights Law § 74 is an affirmative defense to a claim of defamation." *Spitzer v. Greenberg*, 155 A.D.3d 27, 42, 62 N.Y.S.2d 372 (2017) (cited in *Lindberg v. Dow Jones & Company, Inc.*, 2021 WL 3605621, at * 10 fn. 122 (S.D/NY. 2021)). As an affirmative defense, the applicability of the privilege cannot be resolved on a motion to dismiss under Rule 12(b)(6). The Court should deny Defendants' motion without more, and allow the parties to conduct discovery and develop evidence.

avoided.'". *Dorr v. U.S.*, 195 U.S. 138, 152-153 (1904) (quoting Newall on Defamation, Libel and Slander, chap. 19, § 153)).

NYT and Feuer's Statements are not protected by the fair report privilege for several reasons.  First, Statements 1-7 (J/3 Article), Statements 8-13 (3/29 Article), Statement 14 (6/29 Article), Statements 16-17 (NPR Statements) and Statements 18-21 and 23 (7/11 Article) are not reports of any legislative or other official proceeding.  They are Statements made by NYT and Feuer.  Second, Defendants fail to show that Statements 15 and 22 are "fair" or "substantially accurate" reports of any J6 Committee proceedings.  Third, even if Statement 15 occurred during an official J6 Committee proceeding – and it did not – the Statement is false.  1AP played no role in the Capitol attack, and neither Raskin nor any other member of the J6 Committee ever had any evidence or ever proved that it did.  Defendants' Statements accuse 1AP of more serious conduct than that actually suggested in any official proceeding. *Compare Kinsey v. New York Times Company*, 991 F.3d 171, 179 (2nd Cir. 2021) ("First, the Times article notes that it is reporting on a specific court proceeding and that seven declarations were filed in that proceeding.  Second, the article then quotes from those declarations throughout and follows the alleged defamatory language from the Woolman declaration"); *Dershowitz v. Cable News Network, Inc.*, 541 F.Supp.3d 1354, 1365-1366 (S.D. Fla. 2021) (use of truncated video clip of plaintiff's argument at impeachment trial was not "fair" or "accurate"); *see also  Lan Sang v. Ming Hai*, 951 F.Supp.2d 504, 521 (S.D.N.Y. 2013) ("Section 74 does not afford protection if the specific statements at issue, considered in their context, suggest more serious conduct than that actually suggested in the official proceeding.") (internal quotation marks omitted and alteration adopted); *Bilinski v. Keith Haring Foundation, Inc.*, 96 F.Supp.3d 35, 49 (S.D.N.Y. 2015) ("Application of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury

could conclude that the report 'suggest[ed] more serious conduct than that actually suggested in the' judicial proceeding") (citation and quotation omitted).

### 4.    *1AP Plausibly Alleges Actual Malice*

"The existence of actual malice may be shown in many ways.  As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert v. Lando*, 441 U.S. 153, 164 fn. 12 (1979).

Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle*, 209 F.3d at 183 (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.").

1AP's amended complaint plausibly alleges multiple facts, which, accepted as true, sufficiently allege actual malice, including (1) facts that show the inherent improbability of the Statements [*St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently

improbable that only a reckless man would have put them in circulation."); *Celle*, 209 F.3d at 183 (in assessing a defendant's subjective doubts as to the truth of the publications, a Court may look at "the defendant's own actions or statements [and] the inherent improbability of the story.")]; (2) facts that show the events never happened and that 1AP's involvement in the Capitol attacks was fabricated as part of a political narrative that also involved General Flynn [*see Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'")]; (3) facts that show NYT and Feuer purposefully avoided the truth – they ignored known, readily available, credible sources, including the FBI, who investigated 1AP, cleared it of any wrongdoing and never initiated any criminal charge or proceeding against 1AP or any of its officers; and (4) NYT and Feuer continued to publish the false and defamatory Statements after they learned that 1AP contended in a lawsuit that the Statements were false and defamatory. *Nunes v. Lizza, supra*.

1AP plausibly alleges sufficient facts to show that NYT and Feurer published the Statements with actual malice. *See Bolden v. Morgan Stanley & Co.*, 765 F.Supp. 830, 834 (S.D.N.Y. 1991) (the "aggregate of plaintiff's evidence" showed actual malice).

**5.**   ***The Statements Are Not Pure Opinions***

"[U]nder New York law, pure opinion ... is not actionable because expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Davis v. Boeheim*, 24 N.Y.3d 262, 269, 998 N.Y.S.2d 131, 22 N.E.3d 999 (2014).  "This is because a statement of opinion is not an assertion of fact that can be proven false, and '[a]n assertion that cannot be proved false cannot be held

libelous.'" *Biro*, 883 F.Supp.2d at 459 (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2nd Cir. 1977)).  "While a pure opinion cannot be the subject of a defamation claim, an opinion that implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, ... is a mixed opinion and is actionable". *Davis*, 24 N.Y.3d at 269, 998 N.Y.S.2d at 136, 22 N.E.3d at 1004 (internal quotation marks omitted); *compare Lewis*, 2023 WL 3323009, at * 9-10 ("First Amendment protections for a speaker's interpretation of disclosed facts play an essential role in fostering the sort of "free expression and interchange of ideas that the First Amendment is designed to promote … courts must take special care to impose liability only for those statements that, viewed in context, 'reasonably would be understood to declare or imply provable assertions of fact,' and not those statements that simply offer one of several possible interpretations of disclosed facts.").  "What differentiates an actionable mixed opinion from a privileged, pure opinion is the implication that the speaker knows certain facts, unknown to the audience, which support the speaker's opinion and are detrimental to the person being discussed." *Davis*, 24 N.Y.3d at 269, 998 N.Y.S.2d at 136, 22 N.E.3d at 1004.

In determining whether a statement is a factual assertion – as opposed to a nonactionable pure opinion – the Court considers three factors: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." Application of these three factors is not rigid and mechanical, and no single factor is dispositive. *Brian v. Richardson*, 87 N.Y.2d 46, 637 N.Y.S.2d 660 N.E.2d 1126, 1129 (1995) (quoting *Gross*, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167; *see Flamm v. American*

*Ass'n of University Women*, 201 F.3d 144, 152 (2nd Cir. 2000) ("Exaggerated rhetoric may be commonplace in labor disputes, but a reasonable reader would not expect similar hyperbole in a straightforward directory of attorneys and other professionals.  Indeed, the opposite is true.  A reasonable reader is more likely to treat as fact the description of Flamm as an 'ambulance chaser' because there is nothing in the otherwise fact-laden directory to suggest otherwise.").

None of the Statements is pure opinion.  The specific language in issue has a precise meaning which is readily understood.  Whether 1AP had no involvement or was at the vanguard of the attack on the Capitol are matters capable of being proven true or false.  The full context of the Statements, including that they were written and spoken by a reporter (Feuer) who covers "**extremism and political violence**" and that the Statements appeared in the storied *New York Times*, and the broader social discussion about the important historic acts and misdeeds that occurred on January 6 signaled to readers or listeners that what was being read or heard was likely to be fact, not opinion.

### 6.     *1AP Has Pled Special Damages*

The "classical definition of special damage in a defamation case" is "business loss suffered by the plaintiff as a result of damage to [its] reputation". *O'Hara v. Storer Communications*, 231 Cal.App.3d 1101, 1112, 282 Cal.Rptr. 712 (1991) (citing *Terwilliger v. Wands*, 17 N.Y. 54, 60 (1858)).  In pleading special damages a plaintiff "need only allege what *type* of special damages [she] seeks (lost support and services) to put Defendant on notice of the claim." *Yergey v. Brinker Florida, Inc.*, 2020 WL 10817751, at * 2 (M.D. Fla. 2020) (emphasis in original); *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F.Supp.3d 16, 31-32 (D. D.C. 2019).  In *Conejo*, the plaintiff alleged that he "suffered and continues to suffer career damage, loss of consideration for career advancement, personal and professional embarrassment

and humiliation, and emotional pain and suffering."  The Court held that plaintiff adequately alleged "special damages". 377 F.Supp.3d at 32.

In its complaint, 1AP alleges that it lost income, future earnings and suffered diminished earning capacity and injury to its standing, good will and reputation as a result of Defendants' defamation and defamation by implication. [*Am. Compl., ¶¶ 42, 48*].

### 7. *1AP's Claims Are Timely*

1AP timely filed this action on January 3, 2023 within one-year of the publication of the J/3 Article. C.P.L.R. § 215(3).  Upon filing the complaint, the statute of limitations was tolled. *Wilson v. Diocese of New York Episcopal Church*, 1998 WL 82921, at * 8 (S.D.N.Y. 1998).

## B.  **1AP Plausibly States A Claim of Defamation By Implication**

Defamation by implication "is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, 380-381, 625 N.Y.S.2d 477, 649 N.E.2d 825 (1995); *see Herbert v. Lando*, 781 F.2d 298, 307 (2nd Cir. 1986) (a defamatory implication might be actionable where "a combination of individual statements which in themselves may not be defamatory might lead the reader to draw an inference that is damaging to the plaintiff").  In order to state a claim of defamation by implication under New York law, Courts require an "especially rigorous showing" that "(1) the language may be reasonably read to impart the false innuendo, and (2) the author intends or endorses the inference." *Biro*, 883 F.Supp.2d at 466 (citing and quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092-1093 (4th Cir. 1993)); *Nunes*, 12 F.4th at 899 ("Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor.  The complaint points to the article's 'click-bait headline' that Nunes is hiding a 'politically explosive secret,' its discussion

of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs undocumented labor.  The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication.").

1AP states a claim of defamation by implication.  With regard to the J3 Article, the 3/29 Article, Defendants' tweets, and the 7/11 Article, each communication as a whole may be read to impart a false inuendo about 1AP – that 1AP was involved, played a role, participated in, aided, abetted or conspired and colluded with others to plan and undertake the violent seditious attack on the United States Capitol on January 6, 2021.  For instance, the J/3 Article juxtaposes a series of facts that, viewed together and in context, imply that 1AP participated in the attack on the Capitol as part of former Trump's effort to overturn the 2020 election results.  1AP points out that NYT reporter Robert Draper understood the J/3 Article to convey the defamatory implication that 1AP had a "role in 1/6".  [*Am. Compl., ¶ 14*].  Similarly, the juxtaposition of facts in the 3/29 Article reasonably imparted the false impression that 1AP was one of the extremist groups that "played a central role in the storming the Capitol."  Finally, the Statements in the 7/11 Article reasonably imply that 1AP was one of the "violent far-right extremist groups" that former President Trump "and his allies", including General Flynn, turned to after "Mr. Trump's many efforts to overturn the 2020 election had failed".  The 7/11 Article states that Trump succeeded in "galvanizing and unifying the dangerous extremists of the country", including 1AP, and that January 6 was a "coming-out party for a lot of extremist, antigovernment groups and white nationalist groups that had never worked together before".  Taken together, these statements imply that 1AP was involved in the violent events of January 6, which is false, and "worked together" with other extremist groups, which is false.  As in *Nunes v. Lizza*, the

words used by the Defendants to describe 1AP, *i.e., "violent", "far-right", "extremist", "paramilitary", "dangerous", "storming"*, the use of a literary device or artifice – "reciprocation" – [*Id., ¶ 20*] to repeatedly imply that 1AP was one of the "extremist groups" galvanized into action on January 6, and the overall narrative that there were "links" between 1AP and former President Trump and other "far-right militia groups" involved in the attack on the Capitol permit a plausible inference that NYT and Feuer intended or endorsed the implication. *See Roberti v. Schroder Inv. Management North America, Inc.*, 2006 WL 647718, at * 9 (S.D.N.Y. 2006) ("the Court, mindful of its obligation to construe all allegations of the complaint in the light most favorable to the Plaintiff as well as of the liberal pleading standard set by Rule 8(a)(2) … finds that Plaintiff's allegation that Schroder published an account of the error that suggested that its own participant in the erroneous transaction must have blamed the counterparty is sufficient to withstand the instant motion for judgment on the pleadings"); *Keough v. Texaco, Inc.*, 1999 WL 61836, at * 6-7 (S.D.N.Y. 1999) ("Even absent the press reports, however, reasonable minds could look independently at Texaco's statements and find a defamatory connotation—that Keough was a party to racist conversation … As to the question of whether or not Texaco affirmatively intended to endorse such a defamatory inference, the answer cannot be determined absent discovery.").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, 1AP respectfully requests the Court to deny Defendants' motion to dismiss.


DATED:        August 10, 2023

Respectfully Submitted,

1ST AMENDMENT PRAETORIAN

By:    */s/ Anthony C. Carlini, Jr.*
       Anthony C. Carlini, Jr., Esquire
       (New York Bar # 2648374)
       Handel & Carlini, LLP
       1984 Hackensack Road
       Poughkeepsie, NY 12603
       Telephone:  (845) 454-2221
       Facsimile:  (845) 471-1005
       Email: anthony@handelcarlini.com

       Steven S. Biss (VSB # 32972)
       300 West Main Street, Suite 102
       Charlottesville, Virginia 22903
       Telephone:  (804) 501-8272
       Facsimile:  (202) 318-4098
       Email:  stevenbiss@earthlink.net
       (*Motion for Admission Pro Hac Vice*
          *To be Filed*)

       *Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 10, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.


By: *  /s/ Anthony C. Carlini, Jr.*

Anthony C. Carlini, Jr., Esquire
(New York Bar # 2648374)
Handel & Carlini, LLP
1984 Hackensack Road
Poughkeepsie, NY 12603
Telephone:  (845) 454-2221
Facsimile:  (845) 471-1005
Email: anthony@handelcarlini.com

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net
(*Motion for Admission Pro Hac Vice
          To be Filed*)

*Counsel for the Plaintiff*

26