**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1ST AMENDMENT PRAETORIAN, ) ) ) Plaintiff, ) ) v. ) ) THE NEW YORK TIMES COMPANY ) ) -and- ) ) ALAN FEUER, ) ) Defendants. ) ) | Civil Action No. 1:23-cv-00012  The Hon. Mary Kay Vyskocil  ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION BY DEFENDANTS THE NEW YORK TIMES COMPANY AND
ALAN FEUER TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 1

    I.    1AP *STILL* DOES NOT ALLEGE THAT THE CHALLENGED STATEMENTS ARE FALSE OR "OF AND CONCERNING" 1AP. .................... 1

        A.    1AP Does Not Allege that the Challenged Statements Are False. .............. 1

        B.    1AP Still Cannot Show The Challenged Statements Are "Of and Concerning" It. ................................................................................................. 2

    II.    1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS. .................... 4

    III.    MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR AND TRUE REPORTS OF AN OFFICIAL PROCEEDING. ............................... 6

    IV.    1AP DOES NOT DISPUTE THAT THE ACTUAL MALICE STANDARD APPLIES BUT HAS FAILED TO MEET IT .......................................................... 7

    V.    MANY CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION ................................................................................................................. 8

    VI.    1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES. ........... 9

    VII.    1AP'S CLAIMS ARE PARTIALLY TIME-BARRED. ........................................ 10

CONCLUSION ................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Boyle v. Stiefel Labs., Inc.*,
204 A.D.2d 872 (3d Dep't 1994) ............................................................................................... 10

*Celle v. Filipino Reporter Enters.*,
209 F.3d 163 (2d Cir. 2000) ........................................................................................................ 7

*Cianci v. New Times Publ'g Co.*,
639 F.2d 54 (2nd Cir. 1980) ........................................................................................................ 6

*Conejo v. AFGE*,
377 F. Supp. 3d 16 (D.D.C. 2019) .............................................................................................. 9

*Flynn v. CNN*,
No. 21-cv-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021) ..................................... 10

*Greenberg v. Spitzer*,
155 A.D.3d 27 (2nd Dep't 2017) ................................................................................................ 6

*Keough v. Texaco Inc.*,
97 Civ. 5981 (LMM), 1999 WL 61836 (S.D.N.Y. Feb. 10, 1999) ............................................. 5

*Lewis v. Abramson*,
No. 22-cv-126-PB, 2023 WL 3322009 (D.N.H. May 9, 2023) ............................................. 2, 9

*In re Nigeria Charter Flights Contract Litig.*,
520 F. Supp. 2d 447 (E.D.N.Y. 2007) ........................................................................................ 2

*Nunes v. Lizza*,
12 F.4th 890 (8th Cir. 2021) ................................................................................................... 5, 6

*Nunez v. A-T Fin. Info.*,
957 F. Supp. 438 (S.D.N.Y. 1997) ........................................................................................... 10

*O'Hara v. Storer Commc'ns*,
231 Cal. App. 3d 1101 (1991) .................................................................................................... 9

*Roberti v. Schroder Investment Management North America, Inc.*,
No. 04 Civ. 2404(LTS)(THK), 2006 WL 647718 (S.D.N.Y. Mar. 14, 2006) ........................... 5

*Silsdorf v. Levine*,
59 N.Y.2d 8 (1983) ..................................................................................................................... 4

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (1st Dep't 2014) ...................................................................................5

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017)................................................................................1, 2, 4

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010)........................................................................10

*Wilson v. Diocese of New York of the Episcopal Church*,
   No. 96 Civ. 2400(JGK), 1998 WL 82921 (S.D.N.Y. Feb. 26, 1998) .......................10

*Yergey v. Brinker Fla.*,
   No. 6:20-cv-917-Orl-37LRH, 2020 WL 10817751 (M.D. Fla. Aug. 6, 2020).........9

**Other Authorities**

Fed. R. Civ. P. 4(m) ........................................................................................................10

**PRELIMINARY STATEMENT**

Defendants' Motion to Dismiss (ECF 14, "Motion") explained how the FAC does not make out the most basic elements of a defamation claim, including pleading that the Statements are "of and concerning" 1AP and are materially false. Now, with the benefit of one amendment already and the Motion's flagging of specific deficiencies with 1AP's claims, 1AP responds with little more than a summary of the FAC and cases setting out the standards for various aspects of a defamation claim. It makes no attempt to connect the cited law to the allegations or the arguments in the Motion. Although the Court can and should dismiss the entire case for failure to adequately allege falsity – the most basic requirement of a defamation complaint –1AP's claims can also be dismissed because they challenge nonactionable opinions and fair reports of official proceedings, fail to adequately allege damages, and are partially time-barred. 1AP also concedes that the actual malice standard applies and makes no effort to rehabilitate its woefully deficient factual allegations regarding actual malice. On that basis, too, the entire FAC can be dismissed. Perhaps recognizing the futility of future amendments, 1AP does not seek leave to file a further amended pleading. The Court should therefore dismiss 1AP's claims with prejudice.

**ARGUMENT**

**I.     1AP *STILL* DOES NOT ALLEGE THAT THE CHALLENGED STATEMENTS ARE FALSE OR "OF AND CONCERNING" 1AP.**

**A.  1AP Does Not Allege that the Challenged Statements Are False.**

The Motion explained that 1AP has failed to allege what it is in any of the 24 statements that makes them materially false. Mot. 6-9. The essential requirement of a libel claim is to say what is true so the Court can know what is false. Under New York law, 1AP needed to "plead facts that, if proven, would establish that the defendant's statements were not substantially true," but did not. *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir.

1

2017).¹ Nor did 1AP dispute the Articles' many descriptions of its activities and involvement with the efforts to overturn the results of the 2020 election, or its ties to other groups and individuals. *See* Mot. 6-9. Instead of addressing these arguments, the Opposition points the Court back to the FAC, which 1AP incorrectly claims "explains why" the statements are materially false, and then simply repeats the same conclusory labels, including that "1AP did not work together with any 'extremist, antigovernment groups and white nationalist groups'" and that "1AP did not aid and abet former President Trump in his efforts to overturn the results of the 2020 Presidential Election." Opp. 14. 1AP fails to connect these broad assertions to the individual statements at issue and show how the particular statements that were actually made were false. *See id.* These conclusory denials are insufficient, as explained in the Motion, and 1AP's further argument that it "was providing security detail for the press" on January 6, 2021 is irrelevant to any of the challenged Statements.² The Court should dismiss 1AP's claims in their entirety for failure to adequately allege falsity.

### B. 1AP Still Cannot Show the Challenged Statements Are "Of and Concerning" It.

The Motion also explained that Statements 9-10, 12-16, 18-19, and 20-23³ refer to other identified groups or are not reasonably read to refer to 1AP. Mot. 9-10. 1AP has two responses,

---

¹ By failing to contest the application of New York law, 1AP has waived any argument that another state's law applies. *See, e.g.*, *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 458 (E.D.N.Y. 2007).

² In a footnote, 1AP points to three statements (out of 41 challenged statements) that survived a motion to dismiss in *Lewis v. Abramson*, No. 22-cv-126-PB, 2023 WL 3322009 (D.N.H. May 9, 2023). Opp. 10 n.7. None of the Statements in this case describe 1AP as a "domestic insurgent," or accuse it of engaging in "seditious activity" or of playing a "support role" in "Insurrection Day." *Id.* at *16, *18-19 & n.22. The Motion also explained (at 8 n.7) how 1AP has cited *Lewis* to avoid alleging falsity, an argument 1AP entirely ignores in the Opposition.

³ All references to numbered Statements are to those set out in Exhibit 10 to the Blaisdell Declaration (ECF 15), which connects each challenged statement with the paragraph(s) of the

2

neither of which is sufficient to survive dismissal. First, 1AP argues that, because the articles mention it by name elsewhere, the statements regarding "extremist groups" or "militia groups" must refer to it. Opp. 15. The March 29 Article, which contains Statements 9-10 and 12 and was linked to in the tweets that are Statements 13-15, is primarily about the Proud Boys and Oath Keepers, which are referred to more than a dozen times, and it mentions 1AP just once, near the bottom of page three. Blaisdell Decl. Ex. 2. The challenged statements, Statements 9, 10, and 12, are many paragraphs away. *Id.* 1AP is not mentioned in the three tweets containing Statements 13-15. Blaisdell Decl. Exs. 7-9. Similarly, the July 11 Article, which contains Statements 20-23, contains a single two-paragraph section about 1AP (Blaisdell Decl. Ex. 4 at 2); 1AP cannot explain how statements that expressly refer to other groups are reasonably read to instead refer to it.

      1AP's other argument is that references in Statements 16, 18, and 19 to "extremist groups" or "militia groups" that are connected to Michael Flynn would be understood to convey a defamatory meaning about 1AP. But all three of these statements refer to a call between Mark Meadows and both Michael Flynn and Roger Stone and to militia groups connected to either or both men. Indeed, Statement 16 states that both men "had extensive ties to extremist groups like the Proud Boys and Oath Keepers," not 1AP. Blaisdell Decl. Ex. 3 at 1. The NPR Interview, which contains Statements 18 and 19, refers to the Proud Boys and Oath Keepers in the subheading, and uses the names of the two groups nearly *70 times*, but mentions 1AP just once. Blaisdell Decl. Ex. 5 at 3. 1AP's argument that Statements 16, 18, and 19 must refer to it because

---

FAC in which it is alleged. In the Opposition, 1AP adopts a separate numbering convention for 23 total statements from the four Times Articles and the NPR Interview, including separating Statements 10, 12, and 21 into two statements each. 1AP inexplicably does not include in its count of statements any of the four tweets (Statements 8 and 13-15), though they are referenced in the FAC (at ¶¶ 14, 17) and the Opposition (Opp. 15).

it was "commonly understood" (Opp. 15) that 1AP was the only group with ties to Michael Flynn is contrary to the text of Statement 16 and relies on an absurd reading of the NPR Interview and Statements 18 and 19. *Tannerite*, 864 F.3d at 243 ("When a court interprets a publication in an action for defamation, '[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.'") (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983)). 1AP's claims based on Statements 9-10, 12-16, 18-19, and 20-23 should be dismissed.

## II.   1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS.

The Motion showed that 1AP's claim of libel by implication fails because it did not allege that the implications were false (for instance, the alleged implication that it played a role in President Trump's effort to undo the 2020 election results) or because 1AP's reading of the article was so strained that it required the Court to look beyond the Articles' ordinary meaning (for instance, the claim that saying 1AP was among groups that were "present on Jan. 6" implied that 1AP played a role in storming the Capitol and was at the forefront of the violence that day). Mot. 10-14; *see also* Blaisdell Decl. Ex. 10 at 7 (chart of alleged defamatory implications). The Motion also pointed to the utter lack of allegations that would support the contention that the Times intended or endorsed any of the allegedly defamatory implications. Mot. 12-13.

In response, 1AP only offers more conclusions. 1AP argues that the January 3 and March 29 Articles "juxtapose[] a series of facts that, viewed together and in context" impart defamatory implications, without ever describing which facts supposedly lead to those implications. Opp. 23. 1AP also argues that a tweet by Robert Draper (stating "@alanfeuer with an excellent look at the murky security group 1st Amendment Praetorians and their role in 1/6" with a link to the January 3 Article (Blaisdell Decl. Ex. 6)) shows that Draper "understood" the January 3 Article to convey

the implication that "1AP had a 'role in 1/6.'" Opp. 23. But the "plain and ordinary meaning" of Draper's tweet is that the hyperlinked article concerned the scrutiny 1AP received for the role it played in "a less publicly visible yet still expansive effort to keep President Donald J. Trump in power," not that it stormed the Capitol. Blaisdell Decl. Ex. 1 at 1. 1AP's arguments about the July 11 Article are similarly conclusory, asserting without textual support that references to "extremists" and "antigovernment groups" must refer to 1AP. Opp. 23.

1AP cites three cases, none of which help it. In *Roberti v. Schroder Investment Management North America, Inc.*, the court found that there was a defamatory implication that a banker lied about a trade. No. 04 Civ. 2404(LTS)(THK), 2006 WL 647718, at *8-9 (S.D.N.Y. Mar. 14, 2006). But, as the court itself recognized, that case was decided when the New York courts had not "yet articulated a standard for evaluating such a claim in the context of a motion to dismiss." *Id.* at *9 (also applying the pre-*Iqbal* and *Twombly* federal pleading standards).[4] As 1AP concedes (Opp. 22), the standard that New York subsequently adopted is that the plaintiff "must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *See Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014). 1AP also relies on the Eighth Circuit's decision in *Nunes v. Lizza*, 12 F.4th 890, 897 (8th Cir. 2021). That case was decided under Iowa law, which did not require a plaintiff to make the "rigorous showing" required by New York law.  *See* 12 F.4th at 895-96,

---

[4] 1AP also cites *Keough v. Texaco Inc.*, 97 Civ. 5981 (LMM), 1999 WL 61836, at *6 (S.D.N.Y. Feb. 10, 1999), another pre-*Iqbal* and *Twombly* case decided before New York adopted the "rigorous showing" standard. The plaintiff in *Keough* was linked to participation in offensive, racist conversations described in the initial press release by a subsequent letter to Texaco employees that framed his termination as an action connected to the inquiry into those conversations, a far closer nexus than 1AP's argument that articles that discuss various "extremist groups" contain defamatory implications about 1AP. *Id.* at *7.

899. In any event, the entire article at issue in *Nunes* concerned Congressman Nunes and his family, and the Court found that the article's theme of a "politically explosive" secret "reasonably implies a connection among" the facts stated in the article. *Id.* at 896-97. Here, there is no overarching focus on 1AP that would lead a reader to see the individual statements implying something about 1AP.

### III. MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR AND TRUE REPORTS OF AN OFFICIAL PROCEEDING.

The Motion described in detail how Statements 1, 2, 9, 10, 13, 14, and 16 through 23 are legally privileged as fair and true reports of an official proceeding, the Committee's investigation of 1AP and other groups. Mot. 14-17. 1AP makes three arguments to avoid application of the fair report privilege, none of which have any merit.[5]

First, 1AP argues in a footnote that the privilege is an affirmative defense and, therefore, "the applicability of the privilege cannot be resolved on a motion to dismiss under Rule 12(b)(6)." Opp. 16 n.8. This is wrong. In fact, in the sole case 1AP cites, *Greenberg v. Spitzer*, 155 A.D.3d 27 (2nd Dep't 2017), the Second Department affirmed dismissal of multiple claims at the pleading stage based on the privilege. *Id.* at 51, 53. As the Motion explained, New York courts routinely use the privilege to dismiss claims at the motion-to-dismiss stage.[6] 1AP's second argument, made in conclusory fashion, is that all but two of the Statements are not reports of official proceedings. Opp. 17. But the actual text of the statements (which 1AP tried to hide in the FAC using ellipses)

---

[5] In a footnote, 1AP argues that the Times can be liable for republication of Rep. Raskin's remarks. Opp. 7 n.5 (citing *Cianci v. New Times Publ'g Co.*, 639 F.2d 54, 60-61 (2nd Cir. 1980)). Although a newspaper *can* be liable for republication of a defamatory statement, this generic principle says nothing about the applicability of the fair report privilege, as *Cianci* recognized. 639 F.2d at 67 (separately analyzing application of the fair report privilege).

[6] Mot. 17 (citing seven such cases dismissing defamation claims under the fair report privilege).

6

shows that Statements 1, 2, 9, 13, and 14 refer to 1AP being "scrutinized" and an examination by "congressional investigators" or "Federal prosecutors and congressional investigators," which are clearly references to official proceedings. Blaisdell Decl. Ex. 10. The remaining statements (Statements 10 and 16 through 23) either relay statements made by the lead investigator, Representative Raskin, or testimony and documents gathered as part of the investigation. *Id*. Finally, 1AP argues that Statements 17 and 23 (which 1AP refers to as Statements 15 and 22) are not "substantially accurate" or "suggest more serious conduct than that actually suggested in the official proceeding." Opp. 17. 1AP is wrong. The statements report what Representative Raskin said. 1AP does not dispute that the Article accurately captured his remarks. The fact that the Committee ultimately came to different conclusions does not strip The Times of the privilege in its report on Raskin's plans any more than a summary of a prosecutor's opening would cease to be privileged because the trial ends in an acquittal. As much as 1AP may want to litigate the truth of the claim that it played a "role" in the attack on the Capitol, the fair report privilege prevents it from doing so. Accordingly, the Court should dismiss the defamation claims for Statements 1, 2, 9, 10, 13, 14, and 16 through 23.

### IV. 1AP DOES NOT DISPUTE THAT THE ACTUAL MALICE STANDARD APPLIES BUT HAS FAILED TO MEET IT.

The Motion explained how the actual malice standard applies to 1AP, both because 1AP is a public figure and under New York's anti-SLAPP law. Mot. 17-19. The Opposition does not dispute that conclusion and instead focuses on trying to show that the FAC satisfies the actual malice standard. Opp. 18-19. 1AP first argues that actual malice can be "shown by an 'accumulation' of evidence and inferences." Opp. 18 (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000)). What *Celle* actually stands for is that "a court typically will infer actual malice from objective facts" and that "[t]hese facts should provide evidence of

'negligence, motive and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice.'" 209 F.3d at 183.

Contrary to 1AP's arguments, the FAC does not plead *any* objective facts that would, with appropriate inferences, support the existence of actual malice. The facts alleged in the FAC, along with those that are contained in the Articles that 1AP has not challenged as false, do not show that the challenged statements are inherently improbable—they show the opposite. Nor has 1AP pleaded facts "that show the events never happened" or "that 1AP's involvement in the Capitol attacks was fabricated as part of a political narrative that also involved General Flynn," as it argues. Opp. 19. The Times's reporters had every reason to believe what they were writing was true. 1AP says (without substantiation) that it "had been thoroughly investigated by the FBI, and cleared of any wrongdoing." FAC ¶ 12. But the analysis on actual malice turns on the subjective awareness of the publisher, not on whether there was information that the reporters could have known. 1AP does not allege that The Times was aware of this "fact" about the FBI. Finally, 1AP repeats the argument that The Times acted with actual malice because it "learned that 1AP contended in a lawsuit that the Statements were false and defamatory" (Opp. 19) while ignoring the arguments made in the Motion, that it has not shown the Times was aware of the lawsuit and that, even if it could, the plaintiff's denial is insufficient to show actual malice. Mot. 20-21. In short, instead of an accumulation of objective evidence to support a finding of actual malice, 1AP has none. Accordingly, its defamation claims should be dismissed with prejudice.

### V.  MANY CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION

1AP fares no better in countering The Times's argument that words like "far-right group" or "right-wing paramilitary group" (Statements 1 and 2) are opinions. Also in the scope of opinion are statements using such words as "extremist," "far-right," "paramilitary," "violent,"

8

"dangerous," "antigovernment," "white nationalist," or "militia" (Statements 9 through 23), although most actually refer to others and not to 1AP. These terms have no single, precise meaning that would render them falsifiable statements of fact. Mot. 21-22. The Opposition makes no effort to explain how any of these terms could be the subject of a defamation action, nor does it try to explain why the Court here should not dismiss these claims as the District of New Hampshire did with similar claims brought by 1AP President Robert Patrick Lewis. Mot. 22 (citing *Lewis*, 2023 WL 3322009, at *7-14). Instead, 1AP points to different language in Statement 19, which refers to "militia groups that, ultimately, were at the vanguard of the attack on the Capitol," and Alan Feuer's byline, which describes him in part as a reporter that "covers extremism and political violence." Opp. 21. As explained above (at 3-4), 1AP's interpretation of Statement 19 relies on a strained reading of the NPR Interview. And 1AP makes no serious argument that the description of Mr. Feuer's reporting beat in his byline is a defamatory statement "of and concerning" it.

## VI. 1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES.

To state a defamation claim, 1AP must either prove that the statements constitute defamation per se or that it suffered special damages as a result of the statements. Mot. 23-24. 1AP makes no argument that its claims are for defamation per se, thus abandoning that argument. Opp. 21-22. Instead, relying on inapposite cases applying the laws of California, Florida, and D.C., 1AP argues that it need only allege types of special damages it seeks, not facts that would support its entitlement to damages. Id.[7] 1AP hopes that merely listing boilerplate legal

---

[7] *O'Hara v. Storer Commc'ns*, 231 Cal. App. 3d 1101, 1112 (1991), decided under California law, involved an appeal challenging a jury award of special damages, not a pleading issue. *Yergey v. Brinker Fla.*, No. 6:20-cv-917-Orl-37LRH, 2020 WL 10817751, at *2 (M.D. Fla. Aug. 6, 2020), was a wrongful death claim brought under Florida law. In *Conejo v. AFGE*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019), decided under District of Columbia law, the adequacy of the

9

categories of actual damages can carry the day. That is not the law in New York. Under New York law, "[t]o satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) (citing *Boyle v. Stiefel Labs., Inc.*, 204 A.D.2d 872 (3d Dep't 1994)). "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010); *Flynn v. CNN*, No. 21-cv-2587-GHW, 2021 WL 5964129, at *5-6 (S.D.N.Y. Dec. 16, 2021). Since it has failed to meet this standard, 1AP's claims should be dismissed here as well.

### VII.   1AP'S CLAIMS ARE PARTIALLY TIME-BARRED.

The Motion explained that 1AP's claims are partially time-barred because, having waited until the last day of the limitations period to file its complaint, 1AP failed to serve it within the time period mandated by Rule 4(m) and the limitations period was not tolled either by the Court's Order or under *Wilson v. Diocese of New York of the Episcopal Church*, No. 96 Civ. 2400(JGK), 1998 WL 82921 (S.D.N.Y. Feb. 26, 1998). Mot. 24-25. The Opposition invokes *Wilson* again without responding to the Motion at all. Opp. 22. 1AP's claims based on the January 3 Article and tweet should be dismissed as time-barred.

### CONCLUSION

For the reasons set forth above and in the Motion, The Times respectfully requests that the Court dismiss the FAC with prejudice, reject any belated attempts to seek leave to amend, and grant other and further relief as the Court deems just and proper.

---

damages allegations was not disputed and, even so, the court denied the motion to dismiss in part because the claims "may be actionable as defamation or libel per se, which requires no showing of special harm."

10

Dated: New York, NY
       August 17, 2023

/s/ Demetri Blaisdell
Demetri Brumis Blaisdell
David McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com
david.mccraw@nytimes.com

*Attorneys for Defendants The New York Times Company and Alan Feuer*

**CERTIFICATE OF SERVICE**

I certify that on August 17, 2023, the foregoing Motion was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Demetri Blaisdell
Demetri Blaisdell
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com

*Counsel for Defendants*