IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x
1ST AMENDMENT PRAETORIAN              :
                                     :
    Plaintiff,                       :
                                     :
v.                                   :     Case No. 1:23-cv-00012-MKV
                                     :
                                     :     **AMENDED COMPLAINT**
THE NEW YORK TIMES COMPANY           :     [refiled per Court instructions at
                                     :     Dkt. Nos. 29 and 32]
-and-                                :
                                     :
ALAN FEUER                           :
                                     :
    Defendants.                      :
--------------------------------------------------------x

Plaintiff, 1ST Amendment Praetorian ("Plaintiff" or "1AP"), by counsel, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure (the "Rules"), files the following Amended Complaint against defendants, The New York Times Company ("NYT") and Alan Feuer ("Feuer"), jointly and severally.

Plaintiff seeks (a) compensatory damages and punitive damages in the sum of **$100,000,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from January 3, 2023 to the date Judgment is entered pursuant to New York Civil Practice Law and Rules ("CPLR") § 5001, and (c) costs incurred – arising out of the Defendants' defamation and defamation by implication.

## I.  <u>INTRODUCTION</u>

1.  Between January 3, 2022 and July 11, 2022, Defendants published a series of articles (which were republished to NYT's 54,700,000+ social media followers) that falsely state 1AP played a role in the January 6, 2021 attack on the United States Capitol.

The articles promote a false narrative[1] that 1AP was among the domestic violent extremist groups that planned, coordinated and executed the January 6 attacks on the United States Capitol. The articles paint a picture of 1AP that is plainly untrue and defamatory.

2.      1AP seeks presumed damages, actual damages and punitive damages as a result of Defendants' defamation and defamation by implication.

## II.  PARTIES

3.      1AP is a private Delaware corporation with a principal place of business in Calabasas, California.

4.      NYT is a New York corporation headquartered in New York. NYT publishes *The New York Times* newspaper and www.nytimes.com. NYT is a well-known "Democratic Party broadsheet". *Tah v. Global Witness Publishing, Inc.*, 2021 WL 1045205, at * 17 (D.C. Cir. 2021) (Silberman, J., dissenting). In addition to its print and digital products, NYT targets advertisers, subscribers and viewers via social media. NYT now has over 55,000,000 followers on Twitter alone. [https://twitter.com/nytimes].

5.      Feuer is a citizen of New York. He joined NYT in 1999. In the January 3, 2022 article at issue in this action (identified below), NYT represented to its viewers that Feuer covered "courts and criminal justice for the Metro desk." In the remaining articles at issue (identified below), NYT changed its description of Feuer to conspicuously advise readers that "**Alan Feuer covers extremism and political violence**." This biographical language conveyed to readers that "extremism and political violence" was Feuer's

---

[1]      Upon information and belief, in pushing the "domestic violent extremism" (DVE) narrative, NYT and Feuer were acting upon instructions and at the direction of one or more government agencies, including the Federal Bureau Investigation ("FBI").

2

specialty, which, in the overall context of the articles at issue, endorsed and reinforced the defamatory gist and meaning:  that 1AP is an extremist group that participated in the violence of January 6, 2021.

### III.  JURISDICTION AND VENUE

6.      The United States District Court for the Southern District of New York has subject matter jurisdiction over this action pursuant to Title 28 U.S.C. § 1332 (Diversity).  The parties are citizens of different States.  There is complete diversity.  The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

7.      NYT and Feuer are at home in New York and subject to the Court's general personal jurisdiction.

8.      Venue is proper in this Court pursuant to Title 18 U.S.C. §§ 1391(b)(1) and (b)(2).  NYT and Feuer reside and are subject to personal jurisdiction in New York. A substantial part of the events or omissions giving rise to the claims in this case occurred in New York.

### IV.  STATEMENT OF MATERIAL FACTS

9.      Robert Patrick Lewis ("Lewis") is a decorated United States Army Green Beret, who received a Bronze Star and Purple Heart in the service of his Country.  He possessed a TS-SCI security clearance and received an Honorable Discharge.  In 2020, Lewis founded 1AP to provide pro bono security and protective services at grassroots events.  Lewis created 1AP to ensure that every American can freely associate, freely gather and freely speak on matters of public concern to them without threat or fear of intimidation, retribution, bodily harm or death. [https://1apraetorian.com/].

10.    January 6, 2021 was one of the most dangerous days in the modern history of our republic.

11.    On January 6, 2021, 1AP provided security detail for members of the press, including a Washington D.C. ABC affiliate.

12.    Neither 1AP, Lewis, nor any of 1AP's security professionals engaged in violence or played any part or role or had any involvement in the planning, coordination or the attacks on the United States Capitol on January 6, 2021.  Prior to publication of the articles at issue in this case, NYT and Feuer knew that 1AP had been thoroughly investigated by the FBI, and cleared of any wrongdoing.  NYT and Feuer also knew that no charges had ever been brought against 1AP or any of its members by any law enforcement agency.  NYT and Feuer knew the truth, but chose to publish egregious lies in a series of articles, tweets and public appearances between January and July 2022.

A.    **The J3 Article**

13.    On January 3, 2022, NYT published an online article written by Feuer entitled, "***Another Far-Right Group Is Scrutinized About Its Efforts to Aid Trump***" [https://www.nytimes.com/2022/01/03/us/politics/first-amendment-praetorian-trump-jan-6.html (the "J3 Article")].  On January 4, 2022, a version of the J3 Article appeared in print, on Section A, Page 1 of the New York edition of *New York Times* with the headline: "***Jan. 6 Inquiry Turns Its Focus To New Group***".

14.    The J3 Article was republished millions of times by third-parties, who clearly understood the Article to convey a defamatory meaning about 1AP, including, as NYT's Robert Draper expressly represented to his 28,500+ Twitter followers, that 1AP had a "role in 1/6", *see, e.g.*:

https://twitter.com/DraperRobert/status/1478164037926010884;
https://twitter.com/SethAbramson/status/1480578218881171468;
https://twitter.com/PiperK/status/1478212384774787073;
https://twitter.com/jilevin/status/1478156996008370179;
https://twitter.com/AramRoston/status/1478223154539601920;
https://twitter.com/morgfair/status/1478157023745249281.

15.     The J/3 Article contains the following materially false statements of fact and defamatory implications:

a.      1AP engaged in "Efforts to Aid Trump" in overturning the results of the 2020 Presidential Election;

b.      1AP was "was involved in a less publicly visible yet still expansive effort to keep President Donald J. Trump in power";

c.      "1AP … spent much of the postelection period working in the shadows with pro-Trump lawyers, activists, business executives and military veterans to undermine public confidence in the election and to bolster Mr. Trump's hopes of remaining in the White House";

d.      1AP "had men on the ground outside the building on Jan. 6 and others at the Willard Hotel, near some of Mr. Trump's chief allies";

e.      "On the day of the Capitol attack, at least one of Mr. Lewis's lieutenants, Geoffrey Flohr, a former Michigan police officer, was outside the building walking the grounds and talking on his cellphone just before the riot erupted";[2]

f.      "Another member of 1AP posted on Twitter that afternoon, claiming he was in an 'overwatch position' in Arlington County, Va., where prosecutors say the Oath

---

[2]     *See Lewis v. Abramson*, 2023 WL 3323009, at * 17-18 (D. N.H. 2023) (statement in tweet that "1AP members don't appear to have stormed the Capitol, but at least one operative—Geoffrey Flohr—circled it as the attack was underway, talking covertly via an earpiece" and [a]nother—Philip Luelsdorff—observed from a war room led by Giuliani and Eastman" was actionable).

Keepers had placed at a hotel an armed 'quick reaction force' that was prepared to move into Washington if needed";[3] and

g.    "As for Mr. Lewis [President of 1AP] … '[t]oday is the day the true battles begin,' he wrote on Twitter just as the Capitol was breached."

16.    The J3 Article, viewed in its entirety, states or implies that 1AP was involved in the events of January 6, 2021.  The defamatory gist of the J/3 Article is that 1AP, a "right-wing paramilitary group" like "high-profile extremist" and "far-right nationalist Proud Boys and Oath Keepers militia", was involved in President Donald Trump's postelection plot to interfere with the certification of the 2020 vote count and to stay in power, which included the January 6 attacks on the Capitol.  The ordinary meaning of the words used and the context in which they were employed in the J3 Article makes them susceptible to a defamatory implication.

**B.    The 3/29 Article**

17.    On March 29, 2022, NYT published an online article written by Feuer entitled, "***New Focus on How a Trump Tweet Incited Far-Right Groups Ahead of Jan. 6***" [https://www.nytimes.com/2022/03/29/us/politics/trump-tweet-jan-6.html  (the "3/29 Article")].  Feuer and other NYT employees tweeted out the 3/29 Article in tandem, falsely stating to their Twitter followers and readers that 1AP "stormed the Capitol" on January 6, 2021. [*See, e.g.,*  https://twitter.com/alanfeuer/status/1508750495518801929 ("Federal prosecutors and congressional investigators have homed in on how a tweet by

---

[3]    Members of 1AP were staying at a Holiday Inn in Arlington (7.5 miles away from the Capital) because of the favorable room rates.  There was no line of sight from the Holiday Inn to the Capitol.  1AP had no knowledge that the Oath Keepers were staying at a hotel and/or that the Oath Keepers had "placed an armed 'quick reaction force'" at any hotel.  NYT and Feuer implied a connection between 1AP and the activities of the Oath Keepers that was knowingly false and defamatory.

Donald Trump was a crucial call to action to far-right extremist groups that stormed the Capitol on Jan. 6"); https://twitter.com/nytmike/status/1508746178996936708 ("Fed prosecutors and congressional investigators have gathered growing evidence of how Trump's 'wild' tweet in Dec '20 served as a crucial catalyst and call to action for extremist groups, which immediately started military style planning for Jan 6."); https://twitter.com/peterbakernyt/status/1509208274595459078 ("'Be there, will be wild!' How Trump's middle-of-the-night tweet on Dec. 19, 2020, inflamed nationalist groups that ultimately stormed the Capitol a few weeks later")]. On March 30, 2022, a version of the 3/29 Article appeared in print in Section A, Page 1 of the New York edition of the *New York Times* with the headline: "***Evidence Grows That Dec. 19 Trump Tweet Paved Way for Jan. 6***".

18.     The 3/29 Article was republished millions of times by third-parties, who clearly understood the Article to convey a defamatory meaning about 1AP, *see, e.g.*:

> https://twitter.com/MuellerSheWrote/status/1508901845929914368;
> https://twitter.com/kylegriffin1/status/1508866579479552002;
> https://twitter.com/stengel/status/1508778799881756674;
> https://twitter.com/NoahBookbinder/status/1508918167929765897;
> https://twitter.com/CREWcrew/status/1508813755710382090;
> https://twitter.com/Women4Biden/status/1509134960162222082;
> https://twitter.com/freedlander/status/1509185089204326404;
> https://twitter.com/RobertMaguire_/status/1508805448387997699.

19.     The 3/29 Article contains the following materially false statements of fact:

a.     "[A] [December 19, 2020] tweet by President Donald J. Trump less than three weeks before Jan. 6, 2021, served as a crucial call to action for extremist groups that played a central role in storming the Capitol";

b.     "Extremist groups almost immediately celebrated Mr. Trump's Twitter message, which they widely interpreted as an invitation to descend on the city in force";

7

c.      "Extremists began to set up encrypted communications channels, acquire protective gear and, in one case, prepare heavily armed 'quick reaction forces' to be staged outside Washington";

d.      "The event on Dec. 12, 2020, which Mr. Trump flew over in Marine One, showed his ability to draw huge crowds of ordinary people in support of his baseless assertions that the election had been stolen.  But it also brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian, who would be present on Jan. 6";

e.      "Mr. Trump's message arguably landed with the greatest impact among members of the same extremist groups that had been in Washington on Dec. 12"; and

f.      "Once the call came, early on Dec. 19, the extremists were ecstatic".

20.     The 3/29 Article, viewed in its entirety, states or implies that 1AP was one of the extremists and paramilitary groups that played a role in storming the Capitol on January 6, 2021.  The 3/29 Article intentionally engages in reciprocation; that is, it reciprocates between generally referring to "extremists" and specifically identifying examples of such "extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian".  As a result of this literally device employed by Defendants, the ordinary meaning of the words used in the 3/29 Article is capable of a defamatory meaning and is susceptible to a defamatory implication.

## C.      **The 6/29 Article**

21.     On June 29, 2022, NYT published an online article written by Feuer entitled, "**_Jan. 6 Panel Explores Links Between Trump Allies and Extremist Groups_**" [https://www.nytimes.com/2022/06/29/us/politics/trump-flynn-stone-jan-6-extremist.html

(the "6/29 Article")].  A version of the 6/29 Article appeared in print on June 30, 2022, on Section A, Page 17 of the New York edition of the *New York Times* with the headline: "***Testimony of Trump Allies And Extremists at Hearing***".

22.     The 6/29 Article was republished millions of times by third-parties, who clearly understood the Article to convey a defamatory meaning, *see, e.g.*:

> https://twitter.com/CREWcrew/status/1542606257638572034;
> https://twitter.com/illinoisdems/status/1543240583992442881;
> https://twitter.com/JesseFFerguson/status/1542672880252723200;
> https://twitter.com/jordangreennc/status/1542597981484060674;
> https://twitter.com/juliarobbmar/status/1542356153597923329;
> https://twitter.com/jilevin/status/1542514757596377089.

23.     The 6/29 Article contains the following materially false statements of fact:

a.      "Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a pair of allies [Flynn and Stone] who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence"; and

b.      "Jamie Raskin, Democrat of Maryland, has said he intends to lead a presentation that will focus on the roles far-right groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian played in the Capitol attack".

24.     The 6/29 Article, viewed in its entirety, states that 1AP was at the "forefront of the violence" on January 6.  The J6 Article also republishes Raskin's false and defamatory statement that 1AP played a role in "the Capitol attack".  The ordinary meaning of the words used and the context in which they were employed demonstrates that the 6/29 Article is capable of a defamatory meaning.

**D.      The NPR Statements**

25.      On June 30, 2022, NPR host Terry Gross published an article entitled, "***Did the Trump camp help far-right militia groups plan the Jan. 6 attack?***", and aired an interview with Feuer.      [https://www.npr.org/2022/06/30/1108913337/did-the-trump-camp-help-far-right-militia-groups-plan-the-jan-6-attack (the "NPR Statements")].

26.      During the NPR interview, Feuer published the following materially false statements of fact (the "NPR Statements"):

a.      "[w]hile we don't know what Meadows may have said to Stone and Flynn, what we do know is that Stone and Flynn[4] both have extensive contacts to far-right militia groups that were intimately involved in the attack on the Capitol"; and

b.      The call from Meadows to Stone and Flynn "is a potential conduit in which Trump could be connected directly to these militia groups that, ultimately, were at the vanguard of the attack on the Capitol."

27.      The NPR Statements are materially false because 1AP was not involved in any way in the "attack on the Capitol."  The ordinary meaning of the words used by Feuer and the context in which they were employed demonstrates that the NPR Statements are defamatory per se.

**E.      The 7/11 Article**

28.      On July 11, 2022, NYT published an online article written by Luke Broadwater entitled, "***Raskin Brings Expertise on Right-Wing Extremism to Jan. 6 Inquiry***" [https://www.nytimes.com/2022/07/11/us/jamie-raskin-jan-6-hearing.html (the "7/11 Article")].  A version of the 7/11 Article appeared in print on July 12, 2022, on

---

[4]      Of the "militia groups" identified by Feuer during the NPR interview, NYT and Feuer knew that General Flynn had contacts with only one:  1AP.

10

Section A, Page 13 of the New York edition of the *New York Times* with the

headline: "***Raskin Faces Major Moment in 5-Year Crusade Against Extremism***".

29.     The 7/11 Article was republished millions of times by third-parties, who

clearly understood the Article to convey a defamatory meaning about 1AP, *see, e.g.*:

> https://twitter.com/SIfill_/status/1546649044277133315;
> https://twitter.com/dancohen3000/status/1546850058649346048;
> https://twitter.com/CultExpert/status/1546834093991772162;
> https://twitter.com/mkorman/status/1546808125822537734;
> https://twitter.com/RepLloydDoggett/status/1546928567505895425.

30.     The 7/11 Article contains the following materially false statements of fact

and defamatory implications:

a.      "[A]fter Mr. Trump's many efforts to overturn the 2020 election had

failed, he and his allies turned to violent far-right extremist groups";

b.      "There were Proud Boys, Oath Keepers, Three Percenters, the QAnon

network, Boogaloo Boys, militia men and other assorted extremist and religious cults that

assembled under the banner of 'Stop The Steal'";

c.      "This was quite a coming-out party for a lot of extremist, antigovernment

groups and white nationalist groups that had never worked together before";

d.      "Donald Trump's tweet urging everyone to descend upon Washington for

a wild protest on Jan. 6 succeeded in galvanizing and unifying the dangerous extremists

of the country";

e.      The J6 "panel plans to detail known links between the political operative

Roger Stone, a longtime ally of Mr. Trump's, the former national security adviser,

Michael T. Flynn, and the extremist groups"; and

f. "Mr. Flynn has ties to the 1st Amendment Praetorian paramilitary group, which provided him with security when he appeared as a speaker at a pro-Trump march in Washington in December 2020. Joining the group in a security role at the event were members of the Oath Keepers, including Mr. Rhodes".

31. The 7/11 Article, viewed in its entirety, states or implies that 1AP was one of the "violent far-right extremist groups" that were involved in efforts to overturn the 2020 election. The 7/11 Article also falsely states or implies that 1AP "assembled" and/or "worked together" with or is linked to other "extremist, antigovernment groups and white nationalist groups". The ordinary meaning of the words used and the context in which they were employed in the 7/11 Article renders them capable of a defamatory meaning and susceptible of a defamatory implication.

32. The J3 Article, the 3/29 Article, Defendants' tweets, the 6/29 Article, the NPR Statements and the 7/11 Article contain statements or implications that are materially false. 1AP is not a violent, dangerous, paramilitary, extremist group. 1AP played no role whatsoever in the planning, coordination or execution of the January 6 attacks on the United States Capitol, and certainly did not storm the Capitol. NYT and Feuer falsely linked or attributed to 1AP a relationship with other "extremist groups", including Oath Keepers, Proud Boys and QAnon, that never existed. Oath Keepers never joined 1AP in any "security" or other role at the rally in Washington in December 2020. Indeed, there are no links between 1AP and the "extremist groups" identified by Defendants. Comparing the false statements and implications to the truth, it is beyond peradventure that Defendants' representations are materially false. *Flynn v. Cable News Network, Inc.*, 2022 WL 3334716, at * 5 (S.D.N.Y. 2022) ("given the extreme negative

12

connotations of being a QAnon follower, the Flynns have adequately alleged that being labeled a QAnon follower would have a different effect on the mind of a viewer than the pleaded truth."); *Nunes v. W.P. Company*, 2021 WL 3550896, at * 4 (D. D.C. 2021) ("A reasonable juror could conclude that there is a material difference between stating that Nunes had made a claim supported by evidence (that the Obama administration had undertaken intelligence activities related to individuals involved in the Trump campaign) and stating that Nunes had made a baseless claim (that the Obama administration had wiretapped Trump Tower).  A reasonable juror could therefore conclude that the article was materially false because it stated that Nunes had made such a baseless claim (when he had not)."); *see also Bustos v. A&E Networks*, 646 F.3d 762, 767 (10th Cir. 2011) (Gorsuch, J.) ("Comparing the challenged defamatory statement (membership in the Aryan Brotherhood) to the truth (conspiring with and aiding and abetting the Aryan Brotherhood), we cannot see how any juror could find the difference to be a material one—that is, likely to cause a reasonable member of the general public to think significantly less favorably of Mr. Bustos").

33.    The respective statements and implications in the J3 Article, the 3/29 Article, Defendants' tweets, the 6/29 Article, the NPR Statements and the 7/11 Article are defamatory per se. *Flynn v. Cable News Network, Inc.*, 2021 WL 5964129, at * 4 (S.D.N.Y. Dec. 16, 2021) ("[F]alsely implying a connection to a violent extremist group can be defamatory."); *see id. Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world.").

13

34. An accumulation of facts and evidence demonstrates that NYT and Feuer published the false and defamatory statements and implications with knowledge of falsity or reckless disregard for the truth. In assessing a defendant's subjective doubts as to the truth of the publications, a Court may look at "the defendant's own actions or statements [and] the inherent improbability of the story." *Celle v. Filipino Reporter Enterprises, Inc.*, 209 F.3d 163, 183 (2nd Cir. 2000). Given 1AP's stature and the fact that they were fully and thoroughly investigated and never charged with any crime related to the attack on January 6, 2021, the statements and implications are inherently improbable. The inherent improbability of the statements and implications is prima facie evidence of reckless disregard for the truth. *See, e.g., St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, … when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *US Dominion, Inc. v. Powell*, 554 F.Supp.3d 42, 63 (D. D.C. 2021) ("a reasonable juror could conclude that the existence of a vast international conspiracy that is ignored by the government but proven by a spreadsheet on an internet blog is so inherently improbable that only a reckless man would believe it."); *Stern v. Cosby*, 645 F.Supp.2d 258, 279 (S.D.N.Y. 2009) ("printing a claim that Birkhead and Stern had sex would be a way to make it to the top of the bestseller list, and a reasonable jury could find that Cosby ignored the inherently improbable nature of the Statement in her zeal to write a blockbuster book"); *Zuckerbrot v. Lande*, 75 Misc.3d 269, 167 N.Y.S.3d 313, 335-336 (N.Y.Sup. 2022) (defendant leveled "inherently improbable" accusations, like the claim that "Zuckerbrot and her family dispatched 'people' to follow, intimidate, and potentially 'physically harm'" defendant). In truth, the

14

repeated statements and implications that 1AP played a role in the January 6 insurrection is completely fabricated.  NYT and Feuer published the false statements and implications as part of a preconceived government narrative that "domestic violent extremists" were involved in the attack on the Capitol. *St. Amant*, 390 U.S. at 732 ("Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant [or] is the product of his imagination").  By repeatedly publishing and republishing the defamatory statements and implications, NYT and Feuer knowingly abandoned all journalistic standards and integrity and principles of ethical journalism. *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 161 (1967) ("Where a publisher's departure from standards of press responsibility is severe enough to strip from him the constitutional protection our decision acknowledges, we think it entirely proper for the State to act not only for the protection of the individual injured but to safeguard all those similarly situated against like abuse").  NYT and Feuer did not seek the truth or report it.  Rather, they betrayed the truth in a misguided CNN-like quest to sensationalize news about the January 6 insurrection. *Tomblin v. WCHS-TV8*, 2011 WL 1789770, at \* 5 (4th Cir. 2011) (unpublished) ("on the question of whether WCHS-TV8 deliberately or recklessly conveyed a false message to sensationalize the news and thus to provide factual support for a finding of malice, there are disputed facts").  Finally, NYT and Feuer knew from their examination of a defamation lawsuit filed by 1AP in April 2022 that 1AP contended that the statements and implications were false and defamatory.  In spite of this knowledge, NYT and Feuer brazenly republished the implications about 1AP with reckless disregard for the truth. *Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff

contends that it is false and defamatory may be treated as evidence of reckless disregard.' Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977)).

35.    On December 15, 2022, 1AP served Defendants with written notice advising Defendants that the statements and implications in the various Articles, tweets and NPR interview were false and defamatory and demanding that the false statements and implications be retracted, and removed from the Internet.  Defendants refused to retract.

## COUNT I – <u>DEFAMATION</u>

36.    1AP restates paragraphs 1 through 35 of this Amended Complaint, and incorporates them herein by reference.

37.    1AP is a private company.  It is not a public figure.

38.    NYT and Feuer published and republished false statements of fact of or concerning 1AP, including that 1AP played a "role" in the January 6 attack and that 1AP stormed the United States Capitol on January 6, 2021.

39.    NYT and Feuer published the false statements without privilege of any kind.

40.    NYT and Feuer lacked reasonable grounds for a belief in the truth of the defamatory statements, and acted negligently in failing to determine the true facts. Defendants linked 1AP to other violent extremist groups.  Given the certain opprobrium and harm that Defendants knew would result to 1AP from being associated with the violent attack on the Capitol on January 6, 2021, Defendants were grossly negligent in publishing the false statements.  Defendants failed to exercise reasonable care, abandoned ethical duties to report the truth and minimize harm, and, in their desire to publish a

scandalous story about 1AP, violated the codes of ethics and journalistic integrity, customs and standards in the industry applicable to the media.

41. NYT and Feuer's statements constitute express defamation published with actual malice.

42. As a direct result of Defendants' defamation, 1AP suffered damage and loss, including, but not limited to, special damage, loss of income, lost future earnings and diminished earning capacity, injury to standing, good will and reputation, costs and other out-of-pocket expenses, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.

### COUNT II – <u>DEFAMATION BY IMPLICATION</u>

43. Plaintiff restates paragraphs 1 through 42 of this Amended Complaint, and incorporates them herein by reference.

44. The strong defamatory gist and false implication of the J3 Article, the 3/29 Article, Defendants' tweets, and the 7/11 Article is that 1AP was involved, played a role, participated in or conspired and colluded with others to plan and undertake the violent seditious attack upon the United States Capitol on January 6, 2021. The Articles imply that 1AP engaged in conduct that is criminal, dishonest, deceitful, immoral, unethical, and that, at the very least, they knowingly aided and abetted such misconduct.

45. NYT and Feuer carefully chose their words and purposefully misrepresented facts. In the J3 Article, the 3/29 Article, Defendants' tweets, d the 7/11 Article, NYT and Feuer juxtaposed a series of true facts so as to imply a defamatory connection between them, and to create the false impression that 1AP was one of the violent extremist groups involved in the attack on the Capitol. NYT and Feuer linked

facts to convey the false impression that 1AP and other "extremists" were connected and engaged in a coordinated effort to attack the Capitol on January 6, 2021. NYT and Feuer also intentionally omitted facts in a way that conveyed a false meaning and that rendered the challenged Articles defamatory by implication.

46.     Defendants intended and endorsed the defamatory implication by, *inter alia*, using incendiary and suggestive phrases and discussions of 1AP's involvement in criminal activity on January 6, 2021, including the violence and attack on the Capitol building. NYT held out Feuer as a reporter that covered "extremism and political violence" since 1999, implying that Feuer was an expert and adding credibility to the defamatory implication. The manner in which NYT and Feuer presented the discussion, including 1AP's relationship with General Flynn, also demonstrates that they intended or endorsed the defamatory implication.

47.     The J3 Article, the 3/29 Article, Defendants' tweets, and the 7/11 Article constitute defamation by implication.

48.     As a direct result of Defendants' defamation by implication, 1AP suffered damage and loss, including, but not limited to, special damage, loss of income, lost future earnings and diminished earning capacity, injury to standing, good will and reputation, costs and other out-of-pocket expenses, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.

Plaintiff alleges the foregoing based upon personal knowledge, public statements of others, and records in its possession. Plaintiff believes that substantial additional evidentiary support, which is in the exclusive possession of NYT and Feuer and their agents and other third-parties, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Plaintiff reserves the right to amend this Complaint upon discovery of additional instances of the Defendants' wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Plaintiff, 1st Amendment Praetorian, respectfully requests the Court to enter Judgment against NYT and Feuer, jointly and severally, as follows:

A.      Compensatory damages in the amount of $75,000,000.00 or such greater amount as is determined by the Jury;

B.      Punitive damages in the amount of $25,000,000.00 or the maximum amount allowed by New York;

C.      Prejudgment interest from January 3, 2023 until the date Judgment is entered at the maximum rate allowed by law;

D.      Postjudgment interest at the maximum rate allowed by law;

E.      Costs and such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED:      February 16, 2024

19

1ST AMENDMENT PRAETORIAN

By: ___/s/ *Jason C. Greaves*_____
           Jason C. Greaves (*pro hac vice*)
           Binnall Law Group
           717 King Street, Suite 200
           Alexandria, VA 22314
           Telephone:  (703) 888-1943
           Facsimile:  (703) 888-1930
           Email: jason@binnall.com

           *Counsel for the Plaintiff*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2024 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendants and all interested parties receiving notices via CM/ECF.

By:    */s/ Jason C. Greaves*
        Jason C. Greaves (*pro hac vice*)

*Counsel for the Plaintiff*

21