**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| 1ST AMENDMENT PRAETORIAN,<br><br>      Plaintiff,<br><br> v.<br><br>THE NEW YORK TIMES COMPANY<br><br>-and-<br><br>ALAN FEUER,<br><br>      Defendants. | Civil Action No. 1:23-cv-00012<br><br>The Hon. Mary Kay Vyskocil<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION BY DEFENDANTS THE NEW YORK TIMES COMPANY AND**
**ALAN FEUER TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 2

LEGAL STANDARD........................................................................................................ 4

ARGUMENT ...................................................................................................................... 5

    I.    1AP DOES NOT ALLEGE THAT THE CHALLENGED STATEMENTS
        ARE FALSE OR "OF AND CONCERNING" 1AP. ...............................................6

        A.    1AP Does Not Allege that the Challenged Statements Are False. .............6

        B.    Many of the Challenged Statements Are Not "Of and Concerning"
            1AP. ........................................................................................................9

    II.    1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS. .................10

    III.    MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR
        AND TRUE REPORTS OF AN OFFICIAL PROCEEDING..............................14

    IV.    1AP HAS NOT PLAUSIBLY ALLEGED THAT THE TIMES PUBLISHED
        THE STATEMENTS WITH ACTUAL MALICE................................................18

        A.    New York Law Requires Actual Malice, Even For Non-Public
            Figures........................................................................................................18

        B.    1AP is at Least a Limited-Purpose Public Figure.....................................18

        C.    The FAC Does Not Plausibly Allege Actual Malice. ...............................19

    V.    THE CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION ...21

    VI.    1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES.........23

    VII.    1AP'S CLAIMS ARE PARTIALLY TIME-BARRED. ......................................24

CONCLUSION.................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)..............................................................5, 8, 9, 15

*Atas v. N.Y. Times Co.*,
   No. 22-CV-853 (JPO), 2023 WL 5715617 (S.D.N.Y. Sep. 5, 2023) ....................................15

*Agnant v. Shakur*,
   30 F. Supp. 2d 420 (S.D.N.Y. 1998).....................................................................................23

*Aronson v Wiersma*,
   65 N.Y.2d 592 (1985) .....................................................................................................10, 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................4, 5, 20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................4

*Biro v. Condé Nast*,
   807 F.3d 541 (2d Cir. 2015)......................................................................................... *passim*

*Biro v. Condé Nast*,
   883 F. Supp. 2d 441 (S.D.N.Y. 2012)...................................................................................15

*Bordoni v. N.Y. Times Co.*,
   400 F. Supp. 1223 (S.D.N.Y. 1975).....................................................................................11

*Bose Corp. v. Consumers Union of U.S.*,
   466 U.S. 485 (1984).............................................................................................................19

*Bostic v. The Daily Dot, LLC*,
   No. 22-CV-158-RP, 2023 WL 2317789 (W.D. Tex. Mar. 1, 2023)......................................19

*Brady v. Ottaway Newspapers, Inc.*,
   84 A.D.2d 226 (2d Dep't 1981) ........................................................................................9, 10

*Brimelow v. The N.Y. Times Co.*,
   No. 20-cv-222 (KPF), 2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020) ....................9, 10, 21, 22

*Celle v. Filipino Reporter Enters.*,
   209 F.3d 163 (2d Cir. 2000)................................................................................................20

*Cheng v. Neumann*,
   51 F.4th 438 (1st Cir. 2022)................................................................................................22

*Cheng v. Neumann*,
No. 2:21-cv-00181-LEW, 2022 WL 326785 (D. Me. Feb. 3, 2022) ...................................19

*Cholowsky v. Civiletti*,
69 A.D.3d 110 (2d Dep't 2009) ........................................................................................16

*Church of Scientology of Cal. v. Cazares*,
638 F.2d 1272 (5th Cir. 1981) ..........................................................................................22

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) ...............................................................................18

*Croce v. N.Y. Times Co.*,
930 F.3d 787 (6th Cir. 2019) ............................................................................................14

*D'Annunzio v. Ayken, Inc.*,
876 F. Supp. 2d 211 (E.D.N.Y. 2012) ...............................................................................17

*Dameron v. Washington Magazine, Inc.*,
779 F.2d 736 (D.C. Cir. 1985) ..........................................................................................15

*Davis v. Costa-Gavras*,
580 F. Supp. 1082 (S.D.N.Y. 1984) ....................................................................................7

*Edwards v. Nat'l Audubon Soc'y, Inc.*,
556 F.2d 113 (2d Cir. 1977) ..............................................................................................21

*Feaster v. City of N.Y.*,
No. 18-cv-5021 (GBD), 2020 WL 2485984 (S.D.N.Y. Mar. 2, 2020) ...................................3

*Flynn v. CNN*,
No. 21-cv-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021) ...............................24

*Franklin v. Daily Holdings, Inc.*,
135 A.D.3d 87 (1st Dep't 2015) ........................................................................................23

*Frasca v. United States*,
921 F.2d 450 (2d Cir. 1990) ..............................................................................................24

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
669 F. Supp. 2d 405 (S.D.N.Y. 2009) ...............................................................................17

*Garfinkle v. Conf. on Jewish Material Claims Against Ger., Inc.*,
No. 19-CV-7007 (JPO), 2020 WL 6323462 (S.D.N.Y. Oct. 28, 2020) .................................7

*Garrison v. Louisiana*,
379 U.S. 64 (1964) ............................................................................................................21

*Glob. Relief Found., Inc. v. N.Y. Times Co.*,
   390 F.3d 973 (7th Cir. 2004) ................................................................14

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
   49 N.Y.2d 63 (1979) ...........................................................................16

*IBM v. Liberty Mut. Ins. Co.*,
   363 F.3d 137 (2d Cir. 2004)...................................................................7

*Idema v. Wager*,
   120 F. Supp. 2d 361 (S.D.N.Y. 2000)....................................................22

*Jacob v. Lorenz*,
   626 F. Supp. 3d 672 (S.D.N.Y. 2022)........................................7, 20, 21

*Jeanty v. City of Utica*,
   No. 6:16-cv-00966, 2017 WL 6408878 (N.D.N.Y. Aug. 18, 2017)...................17

*Kenney v. Scripps Howard Broad. Co.*,
   259 F.3d 922 (8th Cir. 2001) ...............................................................14

*Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*,
   No. 08-cv-588 (KMK), 2012 WL 1638326 (S.D.N.Y. May 7, 2012) ...................3

*Kinsey v. The N.Y. Times Co.*,
   991 F.3d 171 (2d Cir. 2021)...........................................................7, 15

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)...................................................................9

*United States ex rel. Kolchinsky v. Moody's Corp.*,
   No. 12-cv-1399, 2018 WL 1322183 (S.D.N.Y. Mar. 13, 2018)......................16

*Ladany v. William Morrow & Co.*,
   465 F. Supp. 870 (S.D.N.Y. 1978)...........................................11, 12, 13

*Lan Sang v. Ming Hai*,
   951 F. Supp. 2d 504 (S.D.N.Y. 2013)...............................................15, 17

*Lee v. TMZ Prods., Inc.*,
   710 F. App'x 551 (3d Cir. 2017) ...........................................................14

*Lewis v. Abramson*,
   No. 22-cv-126-PB, 2023 WL 3322009 (D.N.H. May 9, 2023) .................7, 8, 22, 23

*Liberman v. Gelstein*,
   80 N.Y.2d 429 (1992) ...........................................................................23

*McDougal v. Fox News Network, LLC*,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ............................................................19, 20

*McGregor v. United States*,
    933 F.2d 156 (2d Cir. 1991) ...........................................................................24

*Meloff v. N.Y. Life Ins. Co.*,
    240 F.3d 138 (2d Cir. 2001) ...........................................................................23

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.*,
    326 F. Supp. 3d 26 (S.D.N.Y. 2018) ..............................................................8, 9

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ...................................................................................18, 21

*Nat'l Rifle Ass'n v. Cuomo*,
    350 F. Supp. 3d 94 (N.D.N.Y. 2018) ...............................................................22

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) .............................................................................5

*Oakley v. Dolan*,
    833 F. App'x 896 (2d Cir. 2020) .....................................................................23

*Ocasio v. Fashion Inst. of Tech.*,
    9 F. App'x 66 (2d Cir. 2001) ..........................................................................24

*Palin v. N.Y. Times Co.*,
    482 F. Supp. 3d 208 (S.D.N.Y. 2020) .............................................................23

*Palin v. N.Y. Times Co.*,
    940 F.3d 804 (2d Cir. 2019) ...........................................................................23

*In re Phila. Newspapers, LLC*,
    690 F.3d 161 (3d Cir. 2012) .............................................................................8

*Rangel v. Boehner*,
    20 F. Supp. 3d 148 (D.D.C. 2013) ...................................................................16

*Rappaport v. VV Publ'g Corp.*,
    163 Misc. 2d 1 (Sup. Ct. N.Y. Cnty. 1994) ............................................10, 11, 12

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) ........................................................................................21

*Standing Comm. on Discipline v. Yagman*,
    55 F.3d 1430 (9th Cir. 1995) ...........................................................................22

*Stepanov v. Dow Jones & Co.*,
  120 A.D.3d 28 (1st Dep't 2014) ........................................................10, 11, 12

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)....................................................................6, 7

*Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*,
  603 F. Supp. 2d 584 (S.D.N.Y. 2009)........................................................17

*Thomas v. City of N.Y.*,
  17-cv-06079 (ARR) (JO), 2018 WL 5791965 (E.D.N.Y. Nov. 5, 2018) .........15, 17

*Wash. Post Co. v. Keogh*,
  365 F.2d 965 (D.C. Cir. 1966) ..................................................................5

*Wilson v. Diocese of New York Episcopal Church*,
  No. 96 Civ. 2400(JGK), 1998 WL 82921 (S.D.N.Y. 1998) ...........................25

*Wolston v. Reader's Digest Ass'n*,
  443 U.S. 157 (1979)................................................................................18

*Zappin v. NYP Holdings, Inc.*,
  No. 16 Civ. 8838 (KPF), 2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018) ...............17

*Zapata v. City of N.Y.*,
  502 F.3d 192 (2d Cir. 2007) .....................................................................24

**Statutes**

Cal. Civ. Code § 47.......................................................................................15

N.Y. Civ. Rights Law § 74 .............................................................................15

N.Y. Civ. Rights Law § 76-a ..........................................................................18

Tex. Civ. Prac. & Rem. Code § 73.002 ............................................................15

**Other Authorities**

Fed. R. Civ. P. 4.....................................................................................6, 24, 25

Fed. R. Civ. P. 12...............................................................................1, 4, 5, 10

N.Y. C.P.L.R. § 215.....................................................................................24

U.S. Const. amend. I ........................................................................... *passim*

Defendants The New York Times Company and Alan Feuer (collectively, "The Times") respectfully submit this memorandum of law in support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing with prejudice the Amended Complaint (ECF 37, "FAC") of Plaintiff 1st Amendment Praetorian ("1AP").[1]

## PRELIMINARY STATEMENT

1AP brings this defamation action to challenge The Times's truthful reporting on the work of the House January 6 Committee (the "Committee")—specifically, the Committee's decision to look into 1AP's actions intended to overturn the results of the 2020 presidential election. 1AP's discomfort with being investigated, and as a result becoming the subject of media attention, is understandable. But discomfort does not translate into a legitimate claim for libel. 1AP does not and cannot dispute the central claims of The Times's reporting: that 1AP provided security for Michael T. Flynn at "Stop the Steal" rallies and on January 6, 2021, that 1AP's president gave a speech at a pro-Trump rally on January 5, 2021 in Washington, D.C., that he and other 1AP members were at the Willard Hotel near the "war room" where Mr. Trump's allies were scheming to stop the certification of the vote the next day, that a 1AP member was outside the Capitol on January 6, and that 1AP's president bragged on his own podcast about playing a small role in the effort to persuade Mr. Trump to declare martial law. 1AP also cannot dispute that its leaders received subpoenas from the Committee. Unable to dispute these truths, 1AP instead seeks to challenge a concocted series of implications—never stated in any of the

---

[1] In response to The Times's pre-motion letter preceding this motion (ECF 8), the Court allowed 1AP to amend its original complaint. 1AP deficiently filed an amended complaint on July 6, 2023 (ECF 12) and ignored a deficiency notice. On July 20, 2023, The Times moved to dismiss that pleading (ECF 13). On January 4, 2024, the Court denied without prejudice The Times's motion (ECF 29), holding that it was improperly addressed to 1AP's deficient pleading. The Court gave 1AP leave to file an amended complaint, which it did on February 16, 2024 (ECF 37). The FAC is nearly identical to 1AP's errantly filed complaint.

articles, tweets, or the interview by The Times, let alone adopted or endorsed by The Times—including that "1AP stormed the United States Capitol on January 6, 2021" (FAC ¶ 38) or was at the "forefront of the violence" on that day (FAC ¶ 24). But The Times's reporting on the lead-up to "one of the most dangerous days in the modern history of our republic" (FAC ¶ 10) is fully protected by the First Amendment and New York law, and the defects in 1AP's pleading are plentiful, even after amendment. 1AP's FAC should be dismissed because (a) it has failed to adequately allege that the identified statements are false, (b) many of the statements at issue are not "of and concerning" 1AP or are protected statements of opinion, (c) it has failed to meet the substantial burden required to plead a libel-by-implication claim, (d) the fair report privilege immunizes The Times from liability for its coverage of an official investigation, (e) 1AP's allegations of actual malice are patently deficient as are its claims of damages, and (f) many of 1AP's claims are time-barred. The Court should dismiss 1AP's slipshod pleading with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

1AP is a Delaware corporation founded by U.S. Army veteran Robert Patrick Lewis in 2020 "to provide pro bono security and protective services at grassroots events." FAC ¶¶ 3, 9. In its original Complaint, filed on January 3, 2023 (ECF 1, "Complaint"), 1AP alleged that its principal place of business was Dallas, Texas (Compl. ¶ 3) and, in 1AP's letter brief opposing this motion filed June 13, 2023 (ECF 9, "Pre-Motion Letter" at 3), it claimed that "1AP suffered the brunt of the injury to its reputation in Texas." However, it now pleads that its principal place of business is in Calabasas, California (FAC ¶ 3). Alan Feuer is an experienced reporter who has covered courts and criminal justice, extremism and political violence, among other topics for *The New York Times*, where he has worked since 1999. FAC ¶ 5. The Times is a newspaper and media company headquartered in New York. FAC ¶ 4.

On January 6, 2021, "[m]embers of 1AP were staying at a Holiday Inn in Arlington (7.5 miles away from the Capital [sic])" in the same hotel as an organization called the Oath Keepers, a group with armed members. FAC ¶ 15 n.3. 1AP states that "1AP provided security detail for members of the press" on January 6. FAC ¶ 11. In the Complaint, 1AP had also alleged: "Philip Luelsdorff ('Luelsdorff'), a member of 1AP, was briefly present in the so-called war room at the Willard Hotel simply to drop someone off. He had no conversations with anyone. He left without any substantive interaction." Compl. ¶ 33. In that room, the June 29, 2022 article explained, "pro-Trump lawyers, including Mr. Giuliani and John Eastman, had set up shop to plan the objections to the certification of the Electoral College vote count[.]" Compl. ¶ 23(e). 1AP now asserts this statement is false, a contradictory allegation the Court can disregard. FAC ¶ 15.d.[2]

1AP alleges that a series of four articles published by The Times on January 3, March 29, June 29, and July 11, 2022, tweets by various individuals (most non-parties) containing links to the articles, and an interview given to NPR by Defendant Feuer on June 30, 2022 defamed 1AP by publishing a series of "false statement[s] of fact" concerning its role in "President Donald Trump's postelection plot to interfere with the certification of the 2020 vote count and to stay in power" (FAC ¶ 16) and the January 6 attack (FAC ¶ 38).[3] The express defamation claim in the

---

[2] For purposes of a motion to dismiss, the Court "may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings." *Feaster v. City of N.Y.*, No. 18-cv-5021 (GBD), 2020 WL 2485984, at *3 (S.D.N.Y. Mar. 2, 2020), *aff'd*, 2021 U.S. App. LEXIS 30317 (2d Cir. Oct 7, 2021) (quoting *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-cv-588 (KMK), 2012 WL 1638326, at *5 (S.D.N.Y. May 7, 2012)).

[3] The January 3, 2022 article, titled "Another Far-Right Group Is Scrutinized About Its Efforts to Aid Trump" (the "January 3 Article") is attached as **Exhibit 1** to the Declaration of Demetri Blaisdell dated March 14, 2024, submitted herewith (the "Blaisdell Decl."). The March 29, 2022 article, titled "New Focus on How a Trump Tweet Incited Far-Right Groups Ahead of Jan. 6" (the "March 29 Article") is attached as **Exhibit 2**. The June 29, 2022 article, titled "Jan. 6 Panel Explores Links Between Trump Allies and Extremist Groups" (the "June 29 Article"), is attached as **Exhibit 3**. The June 30, 2022 interview with National Public Radio ("NPR")

original Complaint was limited to three tweets linking to the March 29 Article. Compl. ¶ 39

("NYT and Feuer published false statements of fact of or concerning 1AP, including in multiple

tweets on March 29, 2022 and March 30, 2022 that 1AP stormed the United States Capitol on

January 6, 2021."). The FAC now contends that 24 statements were materially false statements

of fact that form the basis of its express defamation claim. *See* Blaisdell Decl. Ex. 10.[4]

1AP's other claim is that, through an unspecified "series of true facts" contained in the

January 3 Article, March 29 Article, "Defendants' tweets," and the July 11 Article, the Times

defamed 1AP by implication (FAC ¶ 45), the alleged implications being that it: (1) "was

involved in President Donald Trump's postelection plot to interfere with the certification of the

2020 vote count and to stay in power" (*id.* ¶ 16); (2) "played a role in storming the Capitol on

January 6, 2021" (*id.* ¶ 20); (3) "was at the 'forefront of the violence' on January 6" (*id.* ¶ 24);

and (4) that it is a "violent far-right extremist group" linked to "extremist, anti-government

groups and white nationalist groups" (*id.* ¶ 31). *See* Blaisdell Decl. Ex. 10 at 7 (chart of alleged

implications). 1AP seeks $100 million dollars in compensatory and punitive damages.  FAC at 1.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim to relief

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)). That standard is met "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

---

involving Defendant Feuer (the "June 30 NPR Interview") is attached as **Exhibit 5**. The July 11,
2022 article, titled "Raskin Brings Expertise on Right-Wing Extremism to Jan. 6 Inquiry" (the
"July 11 Article") is attached as **Exhibit 4**.

[4] All alterations in the statements in the chart are shown as they appear in the FAC.  Where the
alleged statements differ from what is in the source materials, the actual statement is below.

misconduct alleged." *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).[5] The plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully" and may not rely on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  In resolving The Times's motion, the Court may consider the documents incorporated by reference in the FAC, including the Articles, the tweets, and the June 30 NPR Interview. *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

## ARGUMENT

Early disposition of defamation claims is particularly favored. "Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Adelson v. Harris*, 973 F. Supp. 2d 467, 481 (S.D.N.Y. 2013) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)) (internal marks omitted), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

Here, the Court has several independent grounds on which it may dismiss the FAC.

First, because 1AP has failed to adequately plead that the statements and other reporting by The Times are false—the most fundamental component of a defamation claim—the Court should dismiss them outright.

Second, 1AP's implication claims are fatally flawed for various reasons: the alleged implications are not the natural and ordinary meaning of The Times's statements; the alleged implications are indistinguishable from true statements made by The Times that 1AP does not

---

[5] The Times accepts the truth of 1AP's well-pleaded allegations solely for the purposes of this Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678.

challenge as untrue; and 1AP cannot make the "rigorous showing" that the challenged statements imparted a defamatory meaning that The Times intended or endorsed, as the law requires.

Third, The Times's publication of many of the challenged statements is absolutely privileged as a fair and true report of an official proceeding, the Committee's investigation of the events leading up to the January 6 Capitol attack. The Times's reporting accurately summarizes those proceedings and makes it clear that it was doing so.

Fourth, because New York's anti-SLAPP law applies (and because 1AP is a limited-purpose public figure), 1AP must – and fails to – plausibly plead that The Times published the challenged statements with actual malice, *i.e.*, with knowledge that they were false or with serious doubts about their truth.

Fifth, since this case does not involve defamation per se, 1AP is required to plead specific damages to maintain a claim. 1AP's boilerplate damages allegations are insufficient.

Finally, 1AP's delay in serving the Complaint beyond the time authorized by Rule 4 means that claims based on the January 3 Article and tweet must be dismissed as time-barred.

## I.   1AP DOES NOT ALLEGE THAT THE CHALLENGED STATEMENTS ARE FALSE OR "OF AND CONCERNING" 1AP.

### A.  1AP Does Not Allege that the Challenged Statements Are False.

The FAC alleges that 24 statements contained in the articles or tweets were "materially false statements of fact."  *See* FAC ¶¶ 15, 19, 23, 26, 30; Blaisdell Decl. Ex. 10.[6] However, other than conclusory labels, the FAC does not challenge the factual assertions in the statements or explain which aspect of each statement is alleged to be false. As a result of that pleading failure, any claim of direct defamation arising from the articles must be dismissed. *Tannerite Sports,*

---

[6] Inexplicably, the express defamation claim in 1AP's original Complaint was limited to three tweets made in connection with the March 29 Article. Compl. ¶ 39.

*LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("Because falsity is an

element of New York's defamation tort, and 'falsity' refers to material not substantially true, the

complaint in this case must plead facts that, if proven, would establish that the defendant's

statements were not substantially true"); *Garfinkle v. Conf. on Jewish Material Claims Against*

*Ger., Inc.*, No. 19-CV-7007 (JPO), 2020 WL 6323462, at *3 (S.D.N.Y. Oct. 28, 2020)

(dismissing defamation claim because plaintiff "identifies no statement in this letter that is

explicitly false").[7] This deficiency is all the more glaring in light of the fact that, prior to the

filing of the FAC, 1AP had similar claims dismissed for failure to allege falsity. *See Lewis v.*

*Abramson*, No. 22-cv-126-PB, 2023 WL 3322009, at *13-14 (D.N.H. May 9, 2023) (dismissing

claims concerning Lewis's statement that he drove Flynn, Powell, and Byrne to the White House

the night of December 18, 2020).

 The January 3 Article

  The FAC identifies seven statements (Statements 1-7) that are the basis of its claim about

the January 3 Article. FAC ¶ 15; *see also* Blaisdell Decl. Ex. 10. However, 1AP does not

challenge the truthfulness of any of them. It makes no attempt whatsoever to identify what

exactly is false about the statements, even when they do no more, for instance, than quote

accurately what 1AP's leader wrote on Twitter (*see* Statement 7, FAC ¶ 16.g). Similarly, the

---

[7] New York law governs in this case because "New York has strong policy interests in regulating the conduct of its citizens and its media." *Kinsey v. The N.Y. Times Co.*, 991 F.3d 171, 178 (2d Cir. 2021); *Jacob v. Lorenz*, 626 F. Supp. 3d 672, 685 (S.D.N.Y. 2022) (applying New York law in light of the state's strong interest in regulating the conduct of its citizens and media, despite the Plaintiff being domiciled in California); *see also Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1092 (S.D.N.Y. 1984) ("New York, as the national center of the publishing industry, has a significant interest in assuring that the risks and liabilities flowing from publishing . . . will be uniform."). The Court can also apply New York law without a choice of law analysis where there is no conflict. *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("In the absence of substantive difference, … a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.").

FAC does not and cannot deny that 1AP was "scrutinized" about its efforts to aid Trump and that congressional investigators were "examining the role" it played "in a less publicly visible yet still expansive effort to keep President Donald J. Trump in power" (*see* Statements 2 and 3, FAC ¶¶ 15.b, 15.c). 1AP also does not challenge Statements 4 through 7 (FAC ¶¶ 15.d-15.g) regarding actions taken by its members on January 6, who were outside the Capitol and at the Willard Hotel on January 6 and made the referenced posts on social media.[8] 1AP provides no facts that would establish that the statements in the January 3 Article were not substantially true.[9]

The March 29 Article

1AP's claims concerning the March 29 Article, which describes how various extremist groups reacted to a December 19, 2020 tweet by President Trump, fare no better. The FAC does not deny that 1AP was at the same December 12, 2020 event with the Proud Boys and Oath Keepers (Statement 11, FAC ¶ 19.d), nor does 1AP say anything at all about President Trump's

---

[8] Instead of denying that any of its members were present at the Willard hotel or outside the Capitol, 1AP misleadingly cites *Lewis v. Abramson*. *See* FAC ¶ 15.e n.2. But the statement the *Lewis* court found actionable was that a 1AP member "Luelsdorff '*observed*' the attack on the Capitol," which "could be understood to mean that Luelsdorff was in the Willard room for a substantial amount of time." 2023 WL 3322009, at *17 (emphasis added). 1AP does not dispute Mr. Luelsdorff was ***present***. Compl. ¶ 33. The allegations regarding Geoffrey Flohr's presence outside the Capitol were allowed to proceed in *Lewis* due to a "misquote from a third-party article" that was not the Times's coverage, as well as the court apparently missing a hyperlink to a video provided in support for the allegation in the underlying article. *Compare* 2023 WL 3322009, at *17-18 & n.20 *with Lewis*, No. 22-cv-00126 (D.N.H.), Dkt. No. 20-14 (Guardian article) at 4 (containing hyperlink to video on text stating "Geoffrey Flohr circled the Capitol as the attack was underway talking covertly with an earpiece") (red text and underlining original).

[9] Statement 8 is a tweet by non-party journalist Robert Draper that linked to the January 3 Article and stated, "@alanfeuer with an excellent look at the murky security group 1st Amendment Praetorians and their role in 1/6[.]" Blaisdell Decl. **Ex. 6**. This accurate thumbnail summary with a hyperlink to the article is not actionable. *Mirage Ent., Inc. v. FEG Entretenimientos S.A.*, 326 F. Supp. 3d 26, 39 (S.D.N.Y. 2018) ("[T]hough a link and reference may bring readers' attention to the existence of an article, they do not republish the article.") (quoting *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012)); *Adelson*, 973 F. Supp. 2d at 484 (holding that a "hyperlink instantaneously permits the reader to verify an electronic article's claims").

December 19 tweet or how various organizations reacted to it (Statements 9, 10, and 12, FAC ¶¶ 19.a, 19.b, and 19.e). The failure to plead that the latter group of statements was false also dooms 1AP's claims based on three tweets summarizing and linking to the March 29 Article (Statements 13-15, FAC ¶ 17), none of which name 1AP. *See also Mirage Ent.*, 326 F. Supp. 3d at 39; *Adelson*, 973 F. Supp. 2d at 484.

<u>The June 29 Article, NPR Interview, and July 11 Article</u>

1AP also fails to dispute the truth of the statements from the June 29 Article, NPR Interview, and July 11 Article.  The FAC says nothing about what is false in the statements about communications and ties among President Trump, Michael Flynn, Roger Stone, Mark Meadows, the Proud Boys, and Oath Keepers even as 1AP claims they are defamatory (Statements 16 and 18, FAC ¶ 23.a, 26.a), and 1AP does not dispute the statements about other groups' involvement in the January 6 attack (Statements 19-23, FAC ¶¶ 26.b, 30.a-30.e). Nor does 1AP deny that The Times accurately summarized the statement by Rep. Raskin that he intended to "lead a presentation that will focus on the roles far-right groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian played in the Capitol attack" (Statement 17, FAC ¶ 23.b).

As was true with its original pleading, 1AP cannot proceed with express defamation claims based on statements it has not challenged as false and its claims are subject to dismissal.

**B.  Many of the Challenged Statements Are Not "Of and Concerning" 1AP.**

"To state a claim for defamation, a plaintiff must establish 'that the [challenged] matter is published of and concerning the plaintiff.'" *Brimelow v. The N.Y. Times Co.*, No. 20-cv-222 (KPF), 2020 WL 7405261, at *9 (S.D.N.Y. Dec. 16, 2020) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006), *aff'd*, No. 21-66-cv, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); *see also Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 228 (2d Dep't 1981)

(holding that a plaintiff must show that "the allegedly defamatory comment refer[s] to the plaintiff."). "Whether a plaintiff has adequately alleged that the defamatory statements are 'of and concerning' him is a question appropriately considered by a court on a Rule 12(b)(6) motion." *Brimelow*, 2020 WL 7405261, at *9. The following statements are subject to dismissal on that basis alone: Statements 9-10, 12-16, 18-19, and 20-23.

Statements 9-10, 12-16, and 20-23 (FAC ¶¶ 17, 19.a-19.c, 19.e-19.f, 23.a, 30.a-30.e) talk about groups that were involved in challenging the results of the 2020 presidential election, but do not refer to 1AP. Statements 12, 16, and 21 expressly refer to the Oath Keepers, the Three Percenters Original groups, Proud Boys, the QAnon network, Boogaloo Boys, militia men and other assorted extremist and religious cults, but not 1AP. As for Statements 18 and 19 (FAC ¶ 26) derived from the NPR interview, Mr. Feuer makes no mention of 1AP at all. 1AP's theory (FAC ¶ 26.a n.4) that a reference to General Flynn would be understood by a reasonable NPR listener as a reference to 1AP is specious. These claims must be dismissed as well.

## II.    1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS.

Unable to attack the truthfulness of the statements as published or to show that they are even about 1AP, 1AP instead makes a misbegotten effort to lodge a claim for defamation by implication. To bring defamation-by-implication claims, a plaintiff must meet two requirements: it "must make a rigorous showing that the language of the communications as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014). "In evaluating plaintiff's assertions, this court is constrained to interpret the challenged language from the viewpoint of the average reader, without straining to find a defamatory meaning beyond the natural and ordinary meaning of the language at issue."

*Rappaport v. VV Publ'g Corp.*, 163 Misc. 2d 1, 6 (Sup. Ct. N.Y. Cnty. 1994), *aff'd*, 223 A.D.2d

515 (1st Dep't 1996) (citing *Aronson v. Wiersma*, 65 N.Y.2d 592, 593-594 (1985)); *Stepanov*,

120 A.D.3d at 37 ("[I]t is not a subjective standard like the 'actual malice' test, but an objective

one that asks whether the plain language of the communication itself suggests that an inference

was intended or endorsed").[10]

  The FAC first alleges that the statements in the January 3 Article implied that 1AP "was

involved in President Donald Trump's postelection plot to interfere with the certification of the

2020 vote count and to stay in power, which included the January 6 attacks on the Capitol." FAC

¶ 16. But what is significant is what 1AP does not deny from that Article. 1AP does not deny that

the article was truthful in reporting other activities of 1AP in support of overturning the election:

that 1AP provided security for Michael Flynn at the December 12, 2020 rally, that Mr. Lewis

gave a speech at a pro-Trump rally on January 5 in Washington, that he was in a room at the

Willard Hotel near the "war room" where Mr. Trump's allies were scheming to stop the

certification of the vote, and that he conceded on his own podcast to playing a small role in the

effort to persuade Mr. Trump to declare martial law by driving Sidney Powell and Michael Flynn

to meet with Mr. Trump for a meeting to plot martial law. *See* Blaisdell Decl. Ex. 1 at 4. Those

unchallenged statements are fatal to the implication claim. They establish that the claimed

implication of the Article is "substantially true": 1AP *was* involved in the effort to overturn the

election. 1AP cannot both concede statements establishing that truth and then complain that other

statements implying the very same truth give rise to a defamation-by-implication claim.

---

[10] *See also Ladany v. William Morrow & Co.*, 465 F. Supp. 870, 876 (S.D.N.Y. 1978) ("The
Court will not pick out and isolate particular phrases; nor will it strain to place a particular
interpretation on the published words. Rather, the words are given their natural import, and their
plain and ordinary meaning." (cleaned up)); *Bordoni v. N.Y. Times Co.*, 400 F. Supp. 1223, 1227
(S.D.N.Y. 1975) (similar).

1AP next alleges that statements in the March 29 Article imply that 1AP "played a role in storming the Capitol on January 6, 2021" (FAC ¶ 20). 1AP's reading strains the text of the Article well beyond what an "average reader" would understand to be the "natural and ordinary meaning of the language." *Rappaport*, 163 Misc. 2d at 6. The Article, as the title suggests, explores Federal prosecutors and congressional investigators' "new focus on how a Trump tweet incited far-right groups ahead of Jan. 6," and largely discusses events prior to January 6. Blaisdell Decl. Ex. 2 at 1 (capitalization removed). 1AP is mentioned just once, when it states that a December 12, 2020 rally, which 1AP does not dispute that it attended, "brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian, who would be present on Jan. 6." Blaisdell Decl. Ex. 2 at 3. The "natural import" and "plain and ordinary meaning" of the words "present on Jan. 6" are not that 1AP "storm[ed] the Capitol on January 6, 2021." *Ladany*, 465 F. Supp. at 876.

There is a second fatal flaw in 1AP's claims based on the March 29 Article. To make an implication case, plaintiffs are required to show that an article "affirmatively suggest[s] that the author intended or endorsed that inference." *Stepanov*, 120 A.D.3d at 37-38. Put differently, publishers are responsible in an actual malice case only for the meanings they intended, and the court on a motion to dismiss examines whether the article itself communicates to readers the publishers' intent to embrace those alleged meanings. That showing has not been made. Indeed, the plain language of the article suggests no more than some militant groups were under investigation: specifically, it states that investigators were still "trying to establish whether there was any coordination beyond [President Trump's] post" and includes two sentences quoting lawyers for unspecified militant groups that claimed that the groups were "acting defensively" and preparing for "leftist counterprotesters." Blaisdell Decl. Ex. 2 at 3. That falls far short of

implying that 1AP overran the Capitol. 1AP alleges the same specious implication arose from the NPR Interview (FAC ¶ 27), and the case is even more preposterous. None of the statements complained of mention 1AP at all. *See* Blaisdell Ex. 5 at 2–4; *id.* Ex. 10.

Next, 1AP argues that the June 29 Article implies that 1AP was at the "forefront of the violence" on January 6 (FAC ¶ 24). Once again, 1AP fails to show either that such a reading of the article is reasonable or that The Times intended that implication. The phrase "forefront of the violence" expressly describes the Proud Boys and the Oath Keepers—not 1AP—and the other two organizations are the only groups mentioned in the Article's subheading. Blaisdell Ex. 3 at 1 ("[White House aide Cassidy Hutchinson's] testimony was the first time it was revealed that Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a pair of allies who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence."). The first reference to 1AP is five paragraphs later, when the Article discusses that "[i]t is possible" that a future presentation by Representative Raskin "will focus on the roles far-right groups," including 1AP, "played in the Capitol attack." Blaisdell Ex. 3 at 2. The Article goes on to describe in detail actions that 1AP took on January 6 that were outside the Capitol (which 1AP does not dispute) belying any suggestion that The Times intended to convey that 1AP was at the "forefront of the violence." *Id.* at 3. This demonstrates that 1AP impermissibly seeks to "pick out and isolate particular phrases" and reject their "plain and ordinary meaning." *Ladany*, 465 F. Supp. at 876.

Finally, 1AP contends that the July 11 Article implies that 1AP was a "violent far-right extremist group" linked to "extremist, anti-government groups and white nationalist groups" (FAC ¶ 31). The July 11 Article implies nothing of the sort. It is an account of what the January

6 Committee intended to investigate about 1AP. Reports on investigations do not imply that the subject of the investigation has been found guilty; they are reasonably read to state only that there is an investigation. *Croce v. N.Y. Times Co.*, 930 F.3d 787, 794 (6th Cir. 2019) (reporting on allegations against the subject of an ethics investigation did not necessarily imply guilt); *Lee v. TMZ Prods., Inc.*, 710 F. App'x 551, 558 (3d Cir. 2017) (same for drug and prostitution investigation, even if charges against the subject were later dropped); *Glob. Relief Found., Inc. v. N.Y. Times Co.*, 390 F.3d 973, 990 (7th Cir. 2004) (reporting on a terrorism investigation into an organization was substantially true, regardless of whether the investigation was justified); *Kenney v. Scripps Howard Broad. Co.*, 259 F.3d 922, 924 (8th Cir. 2001) (media outlet was not liable for broadcasting a police investigation report naming the plaintiff as a kidnapping suspect, even though she disputed the charge). Tellingly, 1AP does not dispute the statements in the Article that "members of the Oath Keeper, including [its founder] Mr. Rhodes" joined 1AP in providing security to Mr. Flynn at a December 2020 rally and that "[a] few members of 1st Amendment Praetorian were also protecting Mr. Flynn on January 6," which contradicts its efforts to distance itself from the Oath Keepers and the broader campaign to dispute the 2020 election results. As above, 1AP has pointed to no statements in the article that would give rise to the belief that The Times endorsed the claimed implication. Because 1AP has failed to make the "rigorous showing" required for its defamation-by-implication claims, they should be dismissed.

### III.    MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR AND TRUE REPORTS OF AN OFFICIAL PROCEEDING.

Since 1AP has failed to allege falsity or made a sustainable claim for libel by implication, the Court need not reach the issue of the fair report privilege. However, if it does so, Statements 1, 2, 9, 10, 13, 14, and 16 through 23 are fair and true reports of an official proceeding, the January 6 Committee's investigation of 1AP and other groups. New York's fair report privilege statute

dictates that a plaintiff cannot bring a civil action over "the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding[.]" N.Y. Civ. Rights Law § 74.[11] The privilege is "absolute," meaning, as a matter of law, publication is legally protected regardless of whether the underlying statements from that proceeding are accurate. *See, e.g.*, *Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 520 (S.D.N.Y. 2013) (quoting *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)); *Thomas v. City of N.Y.*, 17-cv-06079 (ARR) (JO), 2018 WL 5791965, at *9 (E.D.N.Y. Nov. 5, 2018) ("[A] newspaper is protected by the § 74 privilege even if the published allegations later turn out to be false.").

Reporting on an official proceeding is absolutely privileged as long as two requirements are met. The first is that it must be "apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents and proceedings." *Adelson*, 973 F. Supp. 2d at 482 (quoting *Dameron v. Washington Magazine, Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985)); *Atas v. N.Y. Times Co.*, No. 22-CV-853 (JPO), 2023 WL 5715617, at *10 (S.D.N.Y. Sep. 5, 2023) ("To determine whether the privilege applies, courts consider whether 'the ordinary viewer or reader can determine from the publication itself that the publication is reporting on [a judicial] proceeding.'") (quoting *Kinsey*, 991 F.3d at 178).[12] It is well established that Congressional committee investigations such as that of the

---

[11] The full text of Section 74 reads: "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published. [¶] This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof."

[12] California has also codified the fair report privilege at California Civil Code § 47(d) and (e), as has Texas at Texas Civil Practice and Remedy Code § 73.002. Even if the Court were to apply the laws of either of these states in which 1AP has claimed to be domiciled, The Times's reporting would still be protected by the privilege.

House Select Committee to Investigate the January 6th attack are considered "legislative or other official proceedings" for purposes of the fair report privilege. *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67-68 (1979). And The Times's reporting clearly cites testimony, documents, and interviews from the Committee as sources for the contested statements. Tellingly, in portions of Statements 2, 9, 10, and 16 through 23, 1AP purposely and deceptively omit through ellipses in the FAC the citations written by The Times to official proceedings or documents.  *See* Blaisdell Decl. Ex. 10 (setting out statements as alleged in the FAC and actual statements).

The second requirement is that the report accurately relays the facts of the proceeding. A report is "fair and true" if the "substance of the article [is] substantially accurate." *Cholowsky v. Civiletti*, 69 A.D.3d 110, 114 (2d Dep't 2009) (quoting *Holy Spirit Ass'n*, 49 N.Y.2d at 67); *see Holy Spirit Ass'n*, 49 N.Y.2d at 68 ("[N]ewspaper accounts of legislative or other official proceedings must be accorded some degree of liberality."). Here again, 1AP's failure to dispute the accuracy of the statements—*i.e.*, the ways in which they do not accurately report the activities of the Committee—means the second requirement is fulfilled. Statements 1 and 2 are accurate descriptions of the subpoena that the Committee issued to 1AP founder Robert Patrick Lewis on November 23, 2021, which is cited in the January 3 Article. *See* Bennie G. Thompson, 117th Cong., Subpoena for Robert Patrick Lewis (2021), Blaisdell Decl. Ex. 11.[13] Statements 9, 10, 13, 14, 16, and 17 from the March 29 Article correctly summarize findings from a report that the Committee released on March 27, 2022, which is also cited in the Article. H.R. Rep No. 117-

---

[13] On a motion to dismiss, the Court may take judicial notice of public records, including those from a congressional investigation. *United States ex rel. Kolchinsky v. Moody's Corp.*, No. 12-cv-1399, 2018 WL 1322183, at *4 (S.D.N.Y. Mar. 13, 2018); *Rangel v. Boehner*, 20 F. Supp. 3d 148, 162 n.13 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015).

284 (2022), Blaisdell Decl. Ex. 12. Statement 10 cites court filings and Committee interviews, while Statements 16 and 18 faithfully recount former White House aide Cassidy Hutchinson's testimony before the Committee. Finally, Statements 17, 19, 21, 22, and 23 all reference or quote comments from U.S. Representative Raskin about his work leading the Committee's investigation. Overall, these statements accurately reflect the Committee's activities and communications and are thus protected by the fair report privilege.

Application of the fair report privilege is a matter of law. *See Zappin v. NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF), 2018 WL 1474414, at *6 (S.D.N.Y. Mar. 26, 2018), *aff'd*, 769 F. App'x 5 (2d Cir. 2019). Courts in this circuit therefore regularly dismiss defamation claims at the pleading stage if they find that the requirements for the privilege have been met. *See, e.g.*, *id.* at *6-9; *Lan Sang*, 951 F. Supp. 2d at 524 (statements reporting on default judgment entered in state court); *Thomas*, 2018 WL 5791965, at *10 (articles "accurately summariz[ing] the arrest report, criminal complaint, and statements from police sources"); *Test Masters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588-89 (S.D.N.Y. 2009) (report of state agency investigation); *Jeanty v. City of Utica*, No. 6:16-cv-00966 (BKS/TWD), 2017 WL 6408878, at *20 (N.D.N.Y. Aug. 18, 2017) (report of District Attorney's statements about plaintiff's arrest and prosecution), *aff'd sub nom. Jeanty v. Cerminaro*, No. 21-1974-cv, 2023 WL 325012 (2d Cir. Jan. 20, 2023); *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 415 (S.D.N.Y. 2009) (statements accurately recounting contents of legal complaint); *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 220 (E.D.N.Y. 2012) (same).  Accordingly, the Court should dismiss the defamation claims for Statements 1, 2, 9, 10, 13, 14, and 16 through 23.

IV.    **1AP HAS NOT PLAUSIBLY ALLEGED THAT THE TIMES PUBLISHED THE STATEMENTS WITH ACTUAL MALICE.**

The FAC fails in another way. 1AP has not plausibly alleged that The Times acted with actual malice, as it is required to do by the First Amendment and New York state law.

**A.  New York Law Requires Actual Malice, Even For Non-Public Figures.**

As amended in 2020, New York's anti-SLAPP law applies to suits, like this one, that target "lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a)(2); *Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021). The Times's reporting about the Committee's investigation of the January 6 attacks, which, as 1AP concedes, "was one of the most dangerous days in the modern history of our republic" (FAC ¶ 10), was connected with an issue of public interest. Since 1AP's defamation claims challenge that reporting, whether or not it is a public figure, 1AP must show The Times acted with actual malice. *Coleman*, 523 F. Supp. 3d at 257-59.

**B.  1AP is at Least a Limited-Purpose Public Figure.**

In addition, under *Times v. Sullivan* and its progeny, "[l]imited-purpose public figures who seek damages for defamatory statements must show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity." *Biro*, 807 F.3d at 544 (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). The limited-purpose public figure status applies if someone voluntarily "draw[s] attention to himself" or allows himself to become part of a controversy "as a fulcrum to create public discussion." *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157, 168 (1979). As explained above, 1AP does not dispute that its members played a very public role in events in December 2020 and early January 2021, including 1AP President Lewis's speech at a pro-Trump rally, his podcast regarding his effort to persuade President Trump to declare martial law, and his public

involvement with Sidney Powell, Michael Flynn, and other election deniers. In light of these facts, 1AP's conclusory allegations (FAC ¶ 37) that it is "a private company" and "not a public figure" fail.[14] For articles about the effort to overturn the election, 1AP is a public figure. Other courts have found that persons who were outspoken about efforts to overturn the results of the 2020 election were limited purpose public figures. *Cheng v. Neumann*, No. 2:21-cv-00181-LEW, 2022 WL 326785, at *7 (D. Me. Feb. 3, 2022) (holding under New York law that founder of online newspaper that had given radio interviews and podcasts regarding January 6 attacks "certainly is" a limited-purpose public figure), *aff'd*, 51 F.4th 438 (1st Cir. 2022); *Bostic v. The Daily Dot, LLC*, No. 22-CV-158-RP, 2023 WL 2317789, at *5 (W.D. Tex. Mar. 1, 2023) (holding that filmmaker was a limited-purpose public figure based on his "role in Stop the Steal, speaking out on election controversies, and broadcasting his own attendance at parts of the January 6 events"). 1AP, which has been similarly outspoken, is also a limited-purpose public figure, which is a separate and legally sufficient reason to apply the actual malice standard.

### C. The FAC Does Not Plausibly Allege Actual Malice.

To allege actual malice, a plaintiff must plead "plausible grounds to infer actual malice by alleging enough facts to raise a reasonable expectation that discovery will reveal evidence of actual malice." *Biro*, 807 F.3d at 546 (cleaned up). Actual malice requires "clear and convincing evidence that the defendant realized that his statement was false or that he subjectively entertained serious doubt as to the truth of his statement." *Bose Corp. v. Consumers Union of U.S.*, 466 U.S. 485, 511 n.30 (1984). Allegations that are "pure speculation" and "supported not

---

[14] The allegation that The Times's reporting caused $100 million in reputational harm (FAC at 1) also shows that 1AP believes itself to be a significant organization with a valuable reputation.

by facts but by only conclusory statements" cannot prove actual malice. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185 (S.D.N.Y. 2020). 1AP fails to meet that standard.

1AP does not contest the multiple statements establishing that it was involved in the efforts to set aside the 2020 election. *See* Section I above. As a result, 1AP's burden is heavy. It must plausibly allege that The Times knew 1AP was not involved with certain paramilitary groups and Trump allies in the efforts to overturn the election despite the uncontested facts set out in the FAC showing that it was. That is beyond implausible. *See Iqbal*, 556 U.S. at 678. The Times's knowledge of those true and undisputed facts gave it every reason to believe that all the statements at issue, implied or explicitly set out, about 1AP's involvement in challenging the election, including its participation in the events of January 5 and 6, were true. The Times, knowing those facts, had no reason to doubt the truthfulness of the statements it was making.

1AP gamely tries to make a case for actual malice in a rant-filled paragraph that runs over two pages and consists mostly of case citations. 1AP claims without support that The Times "betrayed the truth in a misguided CNN-like quest to sensationalize news about the January 6 insurrection." FAC ¶ 34.[15] But even if The Times had shown bias (which it did not), bias is not actual malice. *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000) ("Standing alone, however, evidence of ill will is not sufficient to establish actual malice."). Nor is actual malice established because 1AP contended in some other libel suit that similar statements were false and defamatory. It is well-settled in the Second Circuit that a story subject's "denial of the

---

[15] 1AP also alleges The Times printed the statements "as part of a preconceived government narrative" (FAC ¶ 34) and was "acting upon instructions and at the direction of one or more government agencies, including the Federal Bureau Investigation" (FAC ¶ 1 n.1). Prior to filing the FAC, 1AP stated: "**Release of the Durham Report and Twitter files demonstrates that 1AP's allegations are likely true and certainly cannot be rejected out of hand**." ECF 9 at 3 n.2 (bold in original). In light of 1AP's failure to cite either source in the FAC or provide any further support for its claim, 1AP has apparently abandoned this argument.

veracity of allegedly defamatory information is not enough, as 'such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error.'" *Jacob*, 626 F. Supp. 3d at 693 (quoting *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977)). In any event, that suit was filed in April 2022—after most of the statements at issue here—and actual malice is a determination of the publisher's subjective views as of the time of the publication. *Biro*, 807 F.3d at 546 (rejecting allegations that "relate only to events that occurred after publication of the Article and therefore 'cannot be relevant to the publisher's state of mind [regarding] his alleged malice at the time of publication.'"). Showing a serious misunderstanding of actual malice, 1AP also argues that "NYT and Feuer knowingly abandoned all journalistic standards and integrity and principles of ethical journalism." FAC ¶ 34. That is patently not so, but, in any event, actual malice is "not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his [statements]," *id.*, or had a "high degree of awareness of their probable falsity," *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). A failure to meet professional standards is, at most, negligence, and negligence is not actual malice. *Sullivan*, 376 U.S. at 288 (holding negligence "is constitutionally insufficient to show the recklessness that is required for a finding of actual malice"). The FAC pleads labels and conclusions, not allegations that if proved would show actual malice. This is fatal to the entire pleading.

## V.    THE CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION

1AP's libel claim also fails because many of the statements are not statements of facts. Statements with "a debatable, loose and varying meaning in contemporary discourse," are "non-

actionable opinion" because "there is no single, precise understanding" of the terms "that is

falsifiable . . . [and] as such constitutes a statement of fact." *Brimelow*, 2020 WL 7405261, at *6

(so ruling for description of plaintiff as "white nationalist") (cleaned up), *aff'd on other grounds*,

No. 21-66-cv, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); *Idema v. Wager*, 120 F. Supp. 2d 361,

366 (S.D.N.Y. 2000) (term "militant" was protected opinion because it has "many meanings and

shades of meaning"), *aff'd*, 29 F. App'x 676 (2d Cir. 2002); *Nat'l Rifle Ass'n v. Cuomo*, 350 F.

Supp. 3d 94, 133 (N.D.N.Y. 2018) ("statement that '[plaintiff] is an extremist organization' is

clearly an expression of his opinion"); *Cheng v. Neumann*, 51 F.4th 438, 446 (1st Cir. 2022)

("'Right-wing,' 'far-right,' and 'conspiracy theorist' are vague, judgement-based terms that

admit of numerous interpretations and are not objectively provable as false"); *Standing Comm.*

*on Discipline v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (statement that judge was "right-

wing fanatic" was hyperbole and therefore protected opinion); *Church of Scientology of Cal. v.*

*Cazares*, 638 F.2d 1272, 1289 (5th Cir. 1981) (similar for "paramilitary organizations").[16]

    Accordingly, the following statements are opinions protected under the First Amendment

and New York law: Statements 1 and 2, referring to 1AP as a "far-right group" and/or a "right-

wing paramilitary group"; Statement 8, referring to 1AP as a "murky security group"; Statements

9 through 23 which, to the extent they concern 1AP, variously refer to it as among "extremist,"

"far-right," "paramilitary," "violent," "dangerous," "antigovernment," "white nationalist," or

"militia" groups; and Statement 24, which refers to 1AP as a "paramilitary group."

    1AP knows that as well. The District of New Hampshire recently dismissed nearly all of

the similar claims brought by 1AP President Robert Patrick Lewis as nonactionable statements of

---

[16] In fact, 1AP's claim that it was harmed by the implication that it "'assembled' and/or 'worked
together' with" groups described with those terms (FAC ¶ 31) is weaker even than the plaintiffs
in these cases, who were directly described.

opinion. *Lewis*, 2023 WL 3322009, at *7-14.  This Court should hold the same and dismiss

claims based on Statements 1, 2, and 8 through 24 as nonactionable opinion.

## VI.    1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES.

In order to state a defamation claim, 1AP must plead either that the challenged statements

constitute defamation per se or that it suffered special damages (*i.e.*, actual economic harm) as a

result of the statements. *Palin v. N.Y. Times Co.*, 482 F. Supp. 3d 208, 214 (S.D.N.Y. 2020);

*Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *Oakley v. Dolan*, 833 F. App'x 896,

900 (2d Cir. 2020). New York law recognizes four categories of defamation per se: statements

"that impute unchastity to a woman, assert that a plaintiff has a loathsome disease, tend to injure

him in his profession, or charge a plaintiff with a serious crime." *Oakley*, 833 F. App'x at 900

(cleaned up) (citing *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992)); *Meloff v. N.Y. Life Ins.*

*Co.*, 240 F.3d 138, 145 (2d Cir. 2001). In determining whether statements are defamatory per se,

the Court must examine them as published, without "reference to extrinsic facts." *Agnant v.*

*Shakur*, 30 F. Supp. 2d 420, 426 (S.D.N.Y. 1998) ("[i]t is well established in New York, … that

statements cannot be libelous per se if reference to extrinsic facts is necessary to give them a

defamatory import, or if innuendo is needed to enlarge their meaning beyond the significance

expressed by the words themselves" (internal marks and citation omitted)); *Franklin v. Daily*

*Holdings, Inc.*, 135 A.D.3d 87, 92 (1st Dep't 2015) ("The need for extrinsic facts to render the

statement defamatory conclusively dictates that it cannot be libel per se."). The FAC twice labels

the challenged statements "defamatory per se" but never sets forth any basis for this claim. *See*

FAC ¶¶ 27, 33. Since none of the challenged statements concern 1AP's "profession" or charge it

with a serious crime (or any crime), they cannot constitute defamation per se.

That means 1AP must allege special damages. But 1AP's sole allegation concerning damages, repeated twice in similar language, is:

> As a direct result of Defendants' defamation [and defamation by implication], 1AP suffered damage and loss, including, but not limited to, special damage, loss of income, lost future earnings and diminished earning capacity, injury to standing, good will and reputation, costs and other out-of-pocket expenses, in the sum of $75,000,000.00 or such greater amount as is determined by the Jury.

FAC ¶¶ 42, 48. A nearly identical claim for damages was recently rejected by this court as conclusory and insufficient to plead special damages. *Flynn v. CNN*, No. 21-cv-2587-GHW, 2021 WL 5964129, at *5-6 (S.D.N.Y. Dec. 16, 2021). Since 1AP has not alleged any actual harm, let alone facts to support the $75 million it seeks, its claims must be dismissed.

## VII.   1AP'S CLAIMS ARE PARTIALLY TIME-BARRED.

The statute of limitations for 1AP's defamation and defamation-by-implication claims is one year, commencing from the first date of publication. C.P.L.R. § 215(3). Represented by New York counsel, 1AP filed its Complaint on January 3, 2023, the last day of the limitations period for claims based on the January 3, 2022 article and tweet (Statements 1-7). Having waited until the last day, it was incumbent on 1AP to serve the Complaint within the 90-day tolling period authorized by Rule 4, which elapsed on April 3, 2023. After the 90-day period, the limitations period began to run again. *Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990), *abrogated on other grounds by Zapata v. City of N.Y.*, 502 F.3d 192 (2d Cir. 2007); *see also McGregor v. United States*, 933 F.2d 156, 161 (2d Cir. 1991) ("[T]he filing of a complaint does not toll the applicable statute of limitations beyond the [90]-day period for service provided by Rule 4[m]."), *abrogated on other grounds by Zapata v. City of N.Y.*, 502 F.3d 192 (2d Cir. 2007); *see also Ocasio v. Fashion Inst. of Tech.*, 9 F. App'x 66, 68 (2d Cir. 2001) (affirming dismissal of claims as time-barred, holding that statute began to run from expiration of Rule 4 period).

24

The Court sua sponte raised the issue of 1AP's failure to serve the Complaint on April 5, 2023, warning that the case would be dismissed for failure to prosecute if it was not served before April 19, 2023.  ECF 3 (Order).[17] 1AP finally effectuated service on April 10, 2023 by requesting a waiver under Rule 4(d). However, the limitations period for claims based on the January 3, 2022 article and tweet expired on April 4, 2023. In its Pre-Motion Letter, 1AP made no argument that there was "good cause" for its failure to serve, nor could it, in light of the fact that The Times readily agreed to waive service when it was finally requested. *See* ECF 4 (waiver of service returned executed). Instead, 1AP argues that "[u]pon filing of the complaint, the statute of limitations was tolled," citing *Wilson v. Diocese of New York Episcopal Church*, No. 96 Civ. 2400(JGK), 1998 WL 82921, at *8 (S.D.N.Y. 1998). ECF 9. Not so. In *Wilson*, the plaintiff amended the complaint and served the amended pleading within the period specified by Rule 4(m). 1998 WL 82921 at *9 ("***[S]o long as the amended complaint is filed and served within 120 days of filing the original complaint*** and does not add any causes of action barred by the statute of limitations, it does not matter that it is the amended summons and complaint that is served on a defendant named in the original complaint." (emphasis added)). 1AP did not amend its Complaint in the 90-day period permitted by Rule 4(m), let alone serve the amended pleading, so the limitations period was not tolled. Therefore, The Times respectfully requests that the Court dismiss as time-barred all claims based on the January 3, 2022 article and tweet.

## CONCLUSION

For the reasons set forth above, The Times respectfully requests that the Court dismiss the FAC with prejudice and grant other and further relief as the Court deems just and proper.

---

[17] Although the Court's Order allowed Plaintiff two additional weeks to serve the complaint without being "dismissed for failure to prosecute," it did not toll the limitations period.  *Id.*

Dated: New York, NY
      March 14, 2024

/s/ Demetri Blaisdell
Demetri Brumis Blaisdell
David McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com
david.mccraw@nytimes.com

*Attorneys for Defendants The New York Times Company and Alan Feuer*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 14, 2024, the foregoing Motion was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Demetri Blaisdell
Demetri Blaisdell
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com

*Counsel for Defendants*