**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

1ST AMENDMENT PRAETORIAN,    :
    :
              Plaintiff,    :
    :
- against -    :        **Case No. 23-cv-00012 (MKV)**
    :
THE NEW YORK TIMES COMPANY    :        ORAL ARGUMENT REQUESTED
and ALAN FEUER,    :
    :
              Defendants.    :
    :
------------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Jason C. Greaves
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
jason@binnall.com

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

LEGAL STANDARD .....................................................................................1

ARGUMENT .................................................................................................2

    I.    The claims are not time-barred. ........................................................2

    II.   The statements were not a fair report. ............................................3

    III.  The statements were not opinion. ....................................................5

    IV.  The statements were of and concerning 1AP....................................7

    V.   The statements were false and defamatory.......................................7

    VI.  The statements were made with the requisite level of intent. ......................8

    VII.  Each statement is actionable...........................................................11

    VIII. Libel by implication......................................................................21

    IX.  1st Amendment Praetorian has adequately pled special damages. ............24

CONCLUSION ............................................................................................25

CERTIFICATE OF SERVICE ......................................................................1

## TABLE OF AUTHORITIES

### Cases

*Armstrong v. Simon & Schuster, Inc.,*

    85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 829 (1995)...............................21

*Ashcroft v. Iqbal,*

    556 U.S. 662, 678 (2009) ...........................................................................................1

*Bacon v. Nygard,*

    189 A.D.3d 530, 530 (N.Y. App. Div. 2020) .............................................................7

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544, 570 (2007) ...........................................................................................1

*Bilinski v. Keith Haring Foundation, Inc.,*

    96 F. Supp. 3d 35, 48–49 (S.D.N.Y. 2015) (Cote, J.) .............................................4, 5

*Biro v. Conde Nast,*

    883 F. Supp. 2d 441, 463–64 (S.D.N.Y. 2012) .........................................................21

*Bolden v. Morgan Stanley & Co.,*

    765 F. Supp. 830, 834 (S.D.N.Y. 1991) ...................................................................11

*Bose Corp. v. Consumers Union of the United States,*

    692 F.2d 189, 196 (1st Cir. 1982)...............................................................................9

*Cafferty v. Southern Tier Pub. Co.,*

    226 N.Y. 87, 93 (1919) ...............................................................................................8

*Celle v. Filipino Rep. Enterprises Inc.,*

    209 F.3d 163, 183 (2d Cir. 2000) ....................................................................9, 10

*Chau v. Lewis,*

    771 F.3d 118, 129 (2d Cir. 2014) ..........................................................................2

*Chiavarelli v. Williams,*

    256 A.D.2d 111, 112 (1st Dep't 1998) ....................................................................8

*Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO,*

    377 F.Supp.3d 16, 31-32 (D.D.C. 2019) .........................................................24, 25

*Conopco, Inc. v. Roll Int'l,*

    231 F.3d 82, 86 (2d Cir. 2000) ..............................................................................1

*Daniel Goldreyer, Ltd. v. Van de Wetering,*

    217 A.D.2d 434, 435 (1st Dep't 1995) ....................................................................5

*Davis v. Boeheim,*

    24 N.Y.3d 262, 269 (2014) ............................................................................5, 6, 7

*Dillon v. City of New York,*

    261 A.D.2d 34, 39 (1st Dep't 1999) ........................................................................2

*Franklin v. Daily Holdings, Inc.,*

    135 A.D.3d 87, 94 (1st Dep't 2015) ........................................................................8

*Frechtman v. Gutterman,*

    115 A.D.3d 102, 104 (1st Dep't 2014) ................................................................6, 7

*Goldfarb v. Channel One Russia,*

    663 F. Supp. 3d 280, 298 n. 7 (S.D.N.Y. 2023) ....................................................21

iii

*Goldwater v. Ginzburg,*

    414 F.2d 324, 342 (2nd Cir. 1969)..............................................................................9

*Golub v. Enquirer/Star Group,*

    89 N.Y.2d 1074, 1076 (1997) ...................................................................................8

*Gottwald v. Sebert,*

    40 N.Y.3d 240, 251 (2023) .......................................................................................9

*Gross v. New York Times Co.,*

    82 N.Y.2d 146, 153 (1993) .......................................................................................2

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.,*

    49 N.Y.2d 63, 67 (1979) ...........................................................................................4

*Julian v. American Bus. Consultants,*

    2 N.Y.2d 1, 17, 155 N.Y.S.2d 1, 137 N.E.2d 1 (1956)............................................7

*Karedes v. Ackerley Group, Inc.,*

    423 F.3d 107, 119 (2d Cir. 2005)..............................................................................4

*Keough v. Texaco, Inc.,*

    No. 97 Civ. 5981 LMM, 1999 WL 61836, at * 6-7 (S.D.N.Y. 1999) ......................24

*Kesner v. Buhl,*

    590 F.Supp.3d 680, 692 (S.D.N.Y. 2022) ................................................................9

*Krauss v. Globe Intl., Inc.,*

    251 A.D.2d 191, 194, 674 N.Y.S.2d 662 (1st Dept. 1998) ......................................9

*Mann v. Abel,*

    10 N.Y.3d 271, 276 (2008) .......................................................................................5

*Misek-Falkoff v. Am. Lawyer Media, Inc.,*

    300 A.D.2d 215, 216 (1st Dep't 2002) ........................................................4

*Nanyonga v. I.N.S.,*

    200 F.R.D. 503, 506 (M.D. Pa. 2001) ........................................................3

*New York Times Co. v. Sullivan,*

    376 U.S. 254, 279-280 (1964) ...................................................................8

*Nunes v. Lizza,*

    12 F. 4 th 890, 901 (8th Cir. 2021) .....................................................10, 23

*O'Hara v. Storer Communications,*

    231 Cal.App.3d 1101, 1112, 282 Cal.Rptr. 712 (1991)............................24

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE,*

    763 F.3d 198, 208-209 (2d Cir. 2014)........................................................1

*Rinaldi v. Holt, Rinehart & Winston,*

    42 N.Y.2d 369, 379 (1977) ........................................................................2

*Roberti v. Schroder Inv. Management North America, Inc.,*

    No. 04 Civ. 2404 (LTS/THK), 2006 WL 647718, at * 9 (S.D.N.Y. 2006)................24

*St. Amant v. Thompson,*

    390 U.S. 727, 732 (1968) .........................................................................10

*Steinhilber v. Alphonse,*

    68 N.Y.2d 283, 289 (1986) .....................................................................5, 6

*Stepanov v. Dow Jones & Co.,*

    120 A.D.3d 28, 987 N.Y.S.2d 37, 44 (App. Div. 2014)............................21

*Stepanov v. Dow Jones & Co., Inc.,*

    120 A.D.3d 28, 34 (1st Dep't 2014) ............................................................................8

*Tannerite Sports, LLC v. NBCUniversal News Group,*

    864 F.3d 236, 247 (2d Cir. 2017) ..............................................................................8

*Terwilliger v. Wands,*

    17 N.Y. 54, 60 (1858) ..............................................................................................24

*Three Amigos SJL Rest., Inc. v. CBS News Inc.,*

    28 N.Y.3d 82, 86 (2016) ............................................................................................7

*Weyrich v. New Republic, Inc.,*

    235 F.3d 617, 627 (D.C. Cir. 2001) ........................................................................10

*Yergey v. Brinker Florida*, Inc.,

    Case No. 6:20-cv-917-Orl-37LRH, 2020 WL 10817751, at * 2 (M.D. Fla. 2020) ....24

### Statutes

N.Y. Civ. Rights Law § 74 ..............................................................................................4

### Other Authorities

Prosser & Keeton, Torts § 111 at 783 (5th ed. 1984) ....................................................7

### Rules

*Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 573 (Apr. 22, 1993)

    .................................................................................................................................3

Defendants, the New York Times and Alan Feuer, wrote and published defamatory falsehoods about an organization dedicated to protecting the freedom of the press they so cherish. They engaged in this conduct to increase readership and did so at the expense of Plaintiff by sensationalizing details of the January 6 Committee's investigation and adding additional, defamatory allegations. Contrary to Defendants' baseless arguments, the statements at issue are both false and concerning Plaintiff. In addition, they are not protected fair reports or opinion because they are verifiable and go far beyond a fair report on the investigations. Moreover, Defendants made these allegations with knowledge of their falsity or with reckless disregard for the truth and an intentional blindness to the truth of the allegations. Therefore, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208-209 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

1

"Allegations of defamation present, in the first instance, an issue of law for judicial determination." *Dillon v. City of New York*, 261 A.D.2d 34, 39 (1st Dep't 1999). Courts assess a defamation claim "by looking at the full context of the communication in which the statement appears . . . ." *Chau v. Lewis,* 771 F.3d 118, 129 (2d Cir. 2014); *accord Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993).

Defamation is defined as "the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society.'" *Foster v. Churchill*, 87 N.Y.2d 744, 751 (1996) (quoting *Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d 369, 379 (1977)). "The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se." *Dillon*, 261 A.D.2d at 38 (citing Restatement of Torts, Second § 558).

## ARGUMENT

### I.    The claims are not time-barred.

Defendant argues that the statute of limitations bars any of the defamatory statements from the January 3, 2022, article. *See* Dkt. No. 39 ("Def. Mem.") at 24–25. Defendant argues only that Plaintiff failed to serve the Complaint within the applicable 90-day window, and, therefore, the statute of limitations began to run again and elapsed. *Id.* at 24-25. This is not so.

2

There is good cause for the delay in serving Defendant. Plaintiff's prior counsel, Steven Biss, was a single-attorney firm with no support staff. Mr. Biss was litigating multiple high-profile defamation cases around the country at that time, and he apparently failed to calendar the date to serve Defendant. In addition, prior counsel's lack of calendaring the deadline was noticed by the Court, which ordered that he serve the summons by April 19, 2023. *See* Dkt. No. 3. In this Order, the Court utilized its power under Rule 4 of the Federal Rules of Civil Procedure to grant additional time to comply with the service requirement. Plaintiff then timely served the Complaint within that deadline. The Advisory Committee Notes to Rule 4(m) states that this rule allows district courts to relieve plaintiffs of the consequences of Rule 4(m). *Amendments to Federal Rules of Civil Procedure*, 146 F.R.D. 401, 573 (Apr. 22, 1993). The Middle District of Pennsylvania has even granted a motion to extend, in part, to avoid the running of the statute of limitations. *Nanyonga v. I.N.S.*, 200 F.R.D. 503, 506 (M.D. Pa. 2001). Thus, if a court grants an extension of time to serve the complaint, this alleviates any statute of limitations consequences.

Any violation was addressed and resolved by the Court's extension of the deadline on April 5; therefore, there is good cause to allow this case to proceed. In addition, opposing counsel took no steps to notify Plaintiff of these issues. Rather, they waited to include this as a basis on which to dismiss the case.

## II.     The statements were not a fair report.

The statute governing New York's fair report privilege states: "A civil action cannot be maintained against any person, firm or corporation, for the publication of

3

a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." N.Y. Civ. Rights Law § 74. "Whether or not the fair reporting privilege applies requires a determination of whether or not the report is 'substantially accurate.'" *Bilinski v. Keith Haring Foundation, Inc.,* 96 F. Supp. 3d 35, 48–49 (S.D.N.Y. 2015) (Cote, J.).

"A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Karedes v. Ackerley Group, Inc.,* 423 F.3d 107, 119 (2d Cir. 2005). "A fair and true report admits . . . some liberality." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.,* 49 N.Y.2d 63, 67 (1979). The exact words of every proceeding are not required if the substance of the proceeding is "substantially stated." *Id.*

When considering whether a report is privileged, "the language used therein should not be dissected and analyzed with a lexicographer's precision." *Id.* at 68 (affirming summary judgment when there was no showing that the defendant misquoted any material contained in intelligence reports). Therefore, minor inaccuracies are "not serious enough to remove [a party's] reportage from the protection of Civil Rights Law §74." *Misek-Falkoff v. Am. Lawyer Media, Inc.,* 300 A.D.2d 215, 216 (1st Dep't 2002). Nevertheless, "[a]pplication of the fair reporting privilege is inappropriate at the motion to dismiss stage if a reasonable jury could conclude that the report suggest[ed] more serious conduct than that actually

suggested in the . . . proceeding." *Bilinski*, 96 F. Supp. 3d at 49 (citation omitted) (quotation marks omitted).

Here, as outlined below in response to the statements where Defendants have raised the fair report privilege, the reporting by Defendants often went far beyond the scope of the investigation relied upon as basis for the report, and, therefore, Defendants exceeded the scope of the privilege with major inaccuracies and allegations not supported by the investigation.

### III.    The statements were not opinion.

"Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). Only pure opinions are fully protected. "A pure opinion may take one of two forms. It may be 'a statement of opinion which is accompanied by a recitation of the facts upon which it is based,' or it may be 'an opinion not accompanied by such a factual recitation' so long as 'it does not imply that it is based upon undisclosed facts.'" *Davis v. Boeheim*, 24 N.Y.3d 262, 269 (2014) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)). In addition, statements of "imaginative expression" or "rhetorical hyperbole" are also "entitled to constitutional protection as opinion." *Daniel Goldreyer, Ltd. v. Van de Wetering,* 217 A.D.2d 434, 435 (1st Dep't 1995).

The difference between a pure opinion and an actionable mixed opinion is "the implication that the speaker knows certain facts, unknown to the audience, which support the speaker's opinion and are detrimental to the person being discussed."

*Davis,* 24 N.Y.3d at 269 (citation omitted) (brackets omitted). When a "statement of opinion implies that it is based upon facts which justify the opinion but are unknown to those reading or hearing it, it is a 'mixed opinion' and is actionable." *Steinhilber,* 68 N.Y.2d at 289.

New York courts weigh three factors to decide whether the disputed statement is fact-based or non-actionable opinion: (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact. *Frechtman v. Gutterman*, 115 A.D.3d 102, 105 (1st Dep't 2014) (quotation marks omitted). In weighing the factors, courts are required to consider "the content of the whole communication, its tone and apparent purpose . . . ." *Id.* at 106. Courts must look to the overall context, rather than focusing on the statements in isolation. *Id.* "The essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion." *Steinhilber*, 68 N.Y.2d at 290. "Distinguishing between fact and opinion is a question of law for the courts, to be decided based on what the average person hearing or reading the communication would take it to mean." *Bacon v. Nygard*, 189 A.D.3d 530, 530 (N.Y.

App. Div. 2020) (citing *Davis,* 24 N.Y.3d at 269, 998 N.Y.S.2d 131, 22 N.E.3d 999)).

As described in detail below, the statements were not protected opinion.

## IV.    The statements were of and concerning 1AP.

Under New York law, a plaintiff "must show that the matter published is 'of

and concerning'" the plaintiff. *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 28

N.Y.3d 82, 86 (2016) (citing *Julian v. American Bus. Consultants,* 2 N.Y.2d 1, 17, 155

N.Y.S.2d 1, 137 N.E.2d 1 (1956)). This standard does not require the plaintiff to be

identified by name, a plaintiff "must plead and prove that the statement referred to

them and that a person hearing or reading the statement reasonably could have

interpreted it as such." *Id.* (citing *Julian*, 2 N.Y.2d at 17; Prosser & Keeton, Torts §

111 at 783 (5th ed. 1984)). This is a question of law for the court to decide. *Id.*

Here, this is a straightforward endeavor requiring a simple comparison of the

articles, in their full context, with the statements to determine whether each refers

to Plaintiff. As outlined below, the statements are of and concerning Plaintiff.

## V.    The statements were false and defamatory.

"A statement is defamatory on its face when it suggests improper performance

of one's professional duties or unprofessional conduct." *Frechtman v. Gutterman*, 115

A.D.3d 102, 104 (1st Dep't 2014). "In order to be libelous per se, the challenged

statements 'must be more than a general reflection upon the plaintiff's character or

qualities', and must suggest improper performance of his duties or unprofessional

conduct." *Chiavarelli v. Williams*, 256 A.D.2d 111, 112 (1st Dep't 1998) (brackets omitted; quoting *Golub v. Enquirer/Star Group*, 89 N.Y.2d 1074, 1076 (1997)).

"Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense." *Stepanov v. Dow Jones & Co., Inc.*, 120 A.D.3d 28, 34 (1st Dep't 2014). "A statement is substantially true if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Franklin v. Daily Holdings, Inc.*, 135 A.D.3d 87, 94 (1st Dep't 2015) (quotation marks omitted). "Courts typically compare the complained of language with the alleged truth to determine whether the truth would have a different effect on the mind of the average reader. *Id.* "When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done." *Cafferty v. Southern Tier Pub. Co.*, 226 N.Y. 87, 93 (1919). Again, determining whether a statement is substantially true is an issue of law properly decided on a motion to dismiss, provided that the Court limits its consideration to materials appropriately considered on such a motion. *Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 247 (2d Cir. 2017).

## VI.    The statements were made with the requisite level of intent.

A public official or entity may not recover damages for defamation related to his official conduct unless he proves "that the statement was made with 'actual malice' – that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964). "In

New York, the accepted standard for private figures is negligence." *Gottwald v. Sebert*, 40 N.Y.3d 240, 251 (2023) (citing *Krauss v. Globe Intl., Inc.,* 251 A.D.2d 191, 194, 674 N.Y.S.2d 662 (1st Dept. 1998); *see also Kesner v. Buhl*, 590 F.Supp.3d 680, 692 (S.D.N.Y. 2022)).

1AP does not concede that it is a public figure or a limited purpose public figure. Contrary to Defendants arguments, 1AP was dragged into the public vortex, it did not seek it out. Therefore, the heightened standard of actual malice does not apply. Defendants were clearly negligent in publishing the false and defamatory statements about 1AP when it could have obtained the truth in numerous ways before publication. In addition, 1AP can show actual malice, meeting the standard regardless of the standard applied.

Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.").

1AP's amended complaint plausibly alleges multiple facts, which, accepted as true, sufficiently allege actual malice, including (1) facts that show the inherent improbability of the Statements, *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) ("Professions of good faith will be unlikely to prove persuasive, for example, . . . when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation."); *Celle*, 209 F.3d at 183 (in assessing a defendant's subjective doubts as to the truth of the publications, a Court may look at "the defendant's own actions or statements . . . [and] the inherent improbability of the story." (citation omitted)); (2) facts that show the events never happened and that 1AP's involvement in the Capitol attacks was fabricated as part of a political narrative that also involved General Flynn, *see Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'"); (3) facts that show NYT and Feuer purposefully avoided the truth–they ignored known, readily available, credible sources, including the FBI, who investigated 1AP, cleared it of any wrongdoing and never initiated any criminal charge or proceeding against 1AP or any of its officers; and (4) NYT and Feuer continued to publish the false and defamatory Statements after they learned that 1AP contended in a lawsuit that the Statements were false and defamatory. *Nunes v. Lizza*, 12 F. 4 th 890, 901 (8th Cir. 2021). 1AP plausibly alleges sufficient facts to show that NYT and Feuer published the Statements with actual malice. *See Bolden v. Morgan Stanley & Co.,*

10

765 F. Supp. 830, 834 (S.D.N.Y. 1991) (the "aggregate of plaintiff's evidence" showed actual malice).

## VII.    Each statement is actionable.[1]

### a.    1AP engaged in "Efforts to Aid Trump" in overturning the results of the 2020 Presidential Election.

Defendants seek to limit the scope of Statement 1, which is the headline of the Article. It reads: "Another Far-Right Group Is Scrutinized About its Efforts to Aid Trump." The subheadline specifically defines the so-called far-right group: "The organization, called 1st Amendment Praetorian" making it clear to any reasonable reader that the headline refers to 1AP. Moreover, the entire gist of the Article, as demonstrated by the remaining statements at issue, is that "Aid Trump" refers to alleged efforts to overturn the 2020 election results and the January 6, 2021 Capitol riots. This is false. *See* Dkt. No. 37 at ¶ 12 ("Neither 1AP, Lewis, nor any of 1AP's security professionals engaged in violence or played any part or role or had any

──────────────

[1] The first 24 statements considered are the ones specifically argued by Defendants in their chart found at Exhibit 10 to the Blaisdell Declaration. Not every defense was raised as to every statement by Defendants. To the extent that defenses were not raised, they are forfeited and, therefore, Plaintiff is not responding to arguments not raised for specific statements. To the extent these defenses are not waived, Plaintiff incorporates his arguments to each defense.

involvement in the planning, coordination or the attacks on the United States Capitol on January 6, 2021.").

Statement 1 is not a fair report because it creates a different effect on the reader than the truth, which is that 1AP was *not* involved in any attempt to aid President Trump to overturn the results of the 2020 election or in the January 6 riots. Indeed, 1AP was even investigated by the FBI, which found no wrongdoing. *See* Dkt. No. 37 at ¶12. Statement 1 is also not an opinion because it uses precise language, readily understood, it can be proven false, and it was published by Defendants as a news story and not under the opinion section.

### b. 1AP was "was involved in a less publicly visible yet still expansive effort to keep President Donald J. Trump in power."

Statement 2 is of and concerning 1AP as noted in Section (a) above. It is false because 1AP did not have any role in the alleged effort to keep President Trump in power and was even investigated by the FBI, which found no wrongdoing. *See* Dkt. No. 37 at ¶ 12. It cannot be a fair report because of the obvious difference in effect on the reader of the statement from the truth. Moreover, this is not an opinion because it uses precise language which is readily understood, it can be proven false, and it was published by Defendants as a news story and not under the opinion section.

     c.    **"1AP . . . spent much of the postelection period working in the shadows with pro-Trump lawyers, activists, business executives and military veterans to undermine public confidence in the election and to bolster Mr. Trump's hope of remaining in the White House."**

Statement 3 is of and concerning 1AP as noted in Section (a) above. It is also false because 1AP did not have a role in the alleged effort to keep President Trump in the White House. *See* Dkt. No. 37 at ¶ 12. Working "in the shadows" with individuals to bolster President Trump's hopes of remaining in office would fit within this allegation.

     d.    **1AP "had men on the ground outside the building on Jan. 6 and others at the Willard Hotel, near some of Mr. Trump's chief allies."**

Statement 4 is of and concerning 1AP as noted in Section (a) above. It is also false because 1AP did not have a role in the alleged effort to keep President Trump in the White House, nor did it have multiple men outside the White House or near President Trump's chief allies. *See* Dkt. No. 37 at ¶ 12. As Defendant admits, the truth is that one member of 1AP was near the capitol and that one person was briefly in the Willard Hotel. *See* Dkt. No. 39 at 3. The defamatory gist of this statement is that 1AP had multiple men on the ground at the Capitol and near President Trump during January 6, 2021, as if they had planned to assist in whatever plans other groups may have had to act. This is false and defamatory.

13

      e.    **"On the day of the Capitol attack, at least one of Mr. Lewis's lieutenants, Geoffrey Flohr, a former Michigan police officer, was outside the building walking the grounds and talking on his cellphone just before the riot erupted."**

Statement 5 is false because while Mr. Flohr was temporarily present near the Capitol, he was there on his own accord at that time. He was not operating as part of 1AP at this time nor was he involved in any of the planning, coordination, or preparation for or the action of storming the Capitol, and Defendants' Article creates the false impression that he was.

      f.    **"The J3 Article was republished millions of times by third parties, who clearly understood the Article to convey a defamatory meaning about 1AP, including, as NYT's Robert Draper expressly represented to his 28,500+ Twitter followers, that 1AP had a 'role in 1/6.'"**

Statement 8, which claims that 1AP was involved in the January 6 riots, is false for the reasons referenced above, as the tweet links to and incorporates the entire Article. As properly alleged, 1AP did not have a role in alleged efforts to keep President Trump in the White House or the January 6 riots. *See* Dkt. No. 37 at ¶ 12. Moreover, this is not an opinion because it is precise language which is readily understood, it can be proven false, and it was published by Defendant Feuer on his X account, where he also tweets out links to his news articles, which readers would expect to be factual statements, not opinion.

g.   "[A] [December 19, 2020] tweet by President Donald J. Trump less than three weeks before Jan. 6, 2021, served as a crucial call to action for extremist groups that played a central role in storming the Capitol."

Statement 9 is of and concerning Plaintiff because the article alleges President Trump's tweet "brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian[.]" Blaisdell Decl., Exhibit 2, at 4. The use of extremist to define 1AP shows that the article plausibly intended to include 1AP among the extremist groups in the statement about storming the capitol. This is false, as alleged above. Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32 ("1AP . . . certainly did not storm the Capitol.").

In addition, this is not a fair report as it creates the effect in the readers mind that 1AP stormed the Capitol, and it is not opinion because it is precise language, which is readily understood, it can be proven false, it was published by Defendants as a news story and not under the opinion section.

h.   "Extremist groups almost immediately celebrated Mr. Trump's Twitter message, which they widely interpreted as an invitation to descend on the city in force." "Extremists began to set up encrypted communications channels, acquire protective gear and, in one case, prepare heavily armed 'quick reaction forces' to be staged outside Washington."

As outlined in Section (g), this allegation, Statement 10, is of and concerning Plaintiff and also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. In addition, this is not a fair report as it creates the effect in the reader's mind that 1AP was involved in the planning and coordination of the events on January 6, 2021, which it was not, and it is not opinion because it is precise language which is readily understood, it can

15

be proven false, and it was published by Defendants as a news story and not under the opinion section. In addition, referring to 1AP as extremists when specifically pointing to entities involved in those events is not opinion.

           i.     **"The event on Dec. 12, 2020, which Mr. Trump flew over in Marine One, showed his ability to draw huge crowds of ordinary people in support of his baseless assertions that the election had been stolen. But it also brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian, who would be present on Jan. 6."**

As outlined in Section (g), this allegation, Statement 11, is of and concerning Plaintiff and also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. Moreover, this statement directly mentions 1AP and falsely suggests they were brought together with other groups despite the fact that they were not. Dkt. No. 37 at ¶ 32 ("NYT and Feuer falsely linked or attributed to 1AP a relationship with other "extremist groups", including Oath Keepers, Proud Boys and QAnon, that never existed. Oath Keepers never joined 1AP in any "security" or other role at the rally in Washington in December 2020.").

In addition, Statement 11 is not opinion because it is precise language which is readily understood, it can be proven false, and it was published by Defendants as a news story and not under the opinion section. 1AP has alleged and can prove that it was not brought together with the Proud Boys or Oath Keepers.

j. **"Mr. Trump's message arguably landed with the greatest impact among members of the same extremist groups that had been in Washington on Dec. 12." "Once the call came, early on Dec. 19, the extremists were ecstatic."**

As outlined in Section (g), this allegation, Statement 12, is of and concerning Plaintiff. It is also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. Plaintiff was not brought together with other extremist groups at the December rally. *Id.*

In addition, Statement 12 is not opinion because it is precise language which is readily understood, it can be proven false, and it was published by Defendants as a news story and not under the opinion section. 1AP has alleged and can prove that it was not brought together with the Proud Boys or Oath Keepers. In addition, referring to 1AP as extremists, while explicitly lumping 1AP in with other groups like Oath Keepers and supposed involvement in the Capitol riots has a provably false factual connotation and is not simply opinion.

k. **"Federal prosecutors and congressional investigators have homed in on how a tweet by Donald Trump was a crucial call to action to far-right extremist groups that stormed the Capitol on Jan. 6."**

As outlined in Section (g), Statement 13 is of and concerning Plaintiff. It is also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. Plaintiff is not an extremist group and did not storm the Capitol. *Id.* In addition, this is not a fair report as it creates the effect in the reader's mind that 1AP was involved in storming the Capitol. This statement is also not opinion because it is precise language, which is readily understood, it can be proven false, it was published by Defendants in a news story and not under the opinion section. 1AP can prove it did not storm the Capitol.

l.    **"Fed prosecutors and congressional investigators have gathered growing evidence of how Trump's 'wild' tweet in Dec '20 served as a crucial catalyst and call to action for extremist groups, which immediately started military style planning for Jan 6."**

As outlined in Section (g), Statement 14 is of and concerning Plaintiff. It is also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. Plaintiff is not an extremist group and did not engage in military style planning for January 6. *Id.* In addition, this is not a fair report as it creates the effect in the reader's mind that 1AP was involved in such planning. This statement is also not opinion because it is precise language, which is readily understood, it can be proven false, it was published by Defendants' newspaper and not under the opinion section. 1AP can prove it did not engage in such planning.

m.    **"'Be there, will be wild!' How Trump's middle-of-the-night tweet on Dec. 19, 2020, inflamed nationalist groups that ultimately stormed the Capitol a few weeks later."**

As outlined in Section (g), Statement 15 is of and concerning Plaintiff. It is also false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32. Plaintiff is not a nationalist group and did not storm the Capitol. *Id.* In addition, this statement is not opinion because it is precise language, which is readily understood, it can be proven false, and it was published by Defendants in a news story and not under the opinion section. 1AP can prove it did not storm the Capitol.

18

> **n.** "Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a pair of allies [Retired Lieutenant General Michael T. Flynn ("General Flynn") and Roger Stone ("Stone")] who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence."

Statement 16 improperly attributes the actions of other entities onto 1AP. In light of the series of articles published by Defendants, and the full context of this article, which at multiple points reference 1AP as one of these "extremist" or "far-right" groups, it creates the false and defamatory implication that 1AP was involved in the planning or coordination of the storming of the Capitol or the action itself.

> **o.** "[w]hile we don't know what Meadows may have said to Stone and Flynn, what we do know is that Stone and Flynn 6 both have extensive contacts to far-right militia groups that were intimately involved in the attack on the Capitol."

During the June 30 interview, Alan Feuer decided to include 1AP in his discussion of groups that were involved with people near the Trump Campaign and other groups, like the Oath Keepers and Proud Boys. Blaisell Decl., Ex. 5 at 4. Ultimately, he then stated that these far-right militia groups were involved in the attack on the Capitol. It is plausible that a reader would include 1AP in that understanding given the choices that Mr. Feuer made in his words and his history of including 1AP as one of these "far-right" groups supposedly involved in the January 6 riots. This is both of and concerning 1AP, and it is false. *See* Dkt. No. 37 at ¶ 12; *see also id.* at ¶ 32.

In addition, Statement 18 is not a fair report as it creates the effect in the reader's mind that 1AP was involved in the attack on the Capitol. This statement is

also not opinion because it is precise language, which is readily understood, it can be proven false, and it was published by Defendant in an interview. 1AP can prove it was not involved in the attack on the Capitol.

      **p.**    **The call from Meadows to Stone and Flynn "is a potential conduit in which Trump could be connected directly to these militia groups that, ultimately, were at the vanguard of the attack on the Capitol."**

For the same reasons as in Section (o), Statement 19 is of and concerning 1AP, is false as to 1AP, and is neither a fair report nor opinion.

      **q.**    **"Mr. Flynn has ties to the 1st Amendment Praetorian paramilitary group, which provided him with security when he appeared as a speaker at a pro-Trump march in Washington in December 2020. Joining the group in a security role at the event were members of the Oath Keepers, including Mr. Rhodes."**

Statement 24 is false. *See* Dkt. No. 37 at ¶ 32 ("1AP is not a violent, dangerous, paramilitary, extremist group. . . . NYT and Feuer falsely linked or attributed to 1AP a relationship with other "extremist groups", including Oath Keepers, Proud Boys and QAnon, that never existed. Oath Keepers never joined 1AP in any 'security' or other role at the rally in Washington in December 2020. Indeed, there are no links between 1AP and the 'extremist groups' identified by Defendants.").

In addition, it is not opinion because it is precise language, which is readily understood, it can be proven false, and it was published by Defendants' newspaper and not under the opinion section. 1AP can prove that it is not a paramilitary organization and that it does not have ties with the other organizations.

20

## VIII.  Libel by implication.

New York distinguishes between "a defamatory connotation from statements . . . that are alleged to be expressly false . . . [and] '. . . false suggestions, impressions and implications arising from otherwise truthful statements.'" *See Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 298 n. 7 (S.D.N.Y. 2023) (citing *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 463–64 (S.D.N.Y. 2012) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 829 (1995)). This distinction has led to a different application of law for statements that are alleged to be false and have an additional defamatory implication from those that are true statements that when read together create a defamatory implication. *Id.*

For statements that are true, the plaintiff must "make 'a rigorous showing that the language of the communication [expressing truthful statements] as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Id.* (citing *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 987 N.Y.S.2d 37, 44 (App. Div. 2014)). This heightened standard does not apply in a case where the statements are false with inferences flowing from those false facts. *Id.* (citing *Armstrong*, 625 N.Y.S.2d 477, 649 N.E.2d at 829). If the statements are false, the plaintiff must "make the ordinary showing that [the] statements were reasonably susceptible to the defamatory connotation[.]" *Id.*

Here, as outlined above, the statements are largely false, meaning that this heightened standard would not apply. Instead, the ordinary standard would apply. Regardless, Plaintiff meets both standards. With regard to the J3 Article, the 3/29

Article, Defendants' tweets, and the 7/11 Article, each communication as a whole may be read to impart a false inuendo about 1AP—that 1AP was involved, played a role, participated in, aided, abetted or conspired and colluded with others to plan and undertake the violent seditious attack on the United States Capitol on January 6, 2021.

For instance, the J/3 Article juxtaposes a series of facts that, viewed together and in context, imply that 1AP participated in the attack on the Capitol as part of former Trump's effort to overturn the 2020 election results. 1AP points out that NYT reporter Robert Draper understood the J/3 Article to convey the defamatory implication that 1AP had a "role in 1/6". Dkt. No. 37 at ¶ 14. Similarly, the juxtaposition of facts in the 3/29 Article reasonably imparted the false impression that 1AP was one of the extremist groups that "played a central role in the storming the Capitol."

Moreover, the Statements in the 7/11 Article reasonably imply that 1AP was one of the "violent far-right extremist groups" that former President Trump "and his allies," including General Flynn, turned to after "Mr. Trump's many efforts to overturn the 2020 election had failed." The 7/11 Article states that Trump succeeded in "galvanizing and unifying the dangerous extremists of the country," including 1AP, and that January 6 was a "coming-out party for a lot of extremist, antigovernment groups and white nationalist groups that had never worked together before." Taken together, these statements imply that 1AP was involved in the violent events of

January 6, which is false, and "worked together" with other extremist groups, which is false.

In addition, Statements 6, 7, 17, and 20-23, all impute defamatory connotations to 1AP. Statements 6 and 7 are false because they create the false implications with readers, when read in combination with the rest of the Articles and their false association of 1AP with the Oath Keepers and other groups, that 1AP was staging some kind of military operation and was involved in the January 6 riots. Defendants utilized these statements to sensationalize the story and create this defamatory implication. In a similar way, Statement 17, about Mr. Raskin's comments, improperly attributes the same defamatory implication despite a public refutation by 1AP. And Statements 20-23, improperly attribute the actions of other entities onto 1AP. In light of the series of articles published by Defendants, these statements also create the false and defamatory implication that 1AP was involved in the planning or coordination of the storming of the Capitol or the action itself.

As in *Nunes v. Lizza*, the words used by the Defendants to describe 1AP, i.e., "violent", "far-right", "extremist", "paramilitary", "dangerous", "storming", the use of a literary device or artifice –"reciprocation" – *Id.*, ¶ 20, to repeatedly imply that 1AP was one of the "extremist groups" galvanized into action on January 6, and the overall narrative that there were "links" between 1AP and former President Trump and other "far-right militia groups" involved in the attack on the Capitol permit a plausible inference that NYT and Feuer intended or endorsed the implication. *See Roberti v. Schroder Inv. Management North America, Inc.*, No. 04 Civ. 2404 (LTS/THK), 2006

23

WL 647718, at * 9 (S.D.N.Y. 2006) ("the Court, mindful of its obligation to construe all allegations of the complaint in the light most favorable to the Plaintiff as well as of the liberal pleading standard set by Rule 8(a)(2) … finds that Plaintiff's allegation that Schroder published an account of the error that suggested that its own participant in the erroneous transaction must have blamed the counterparty is sufficient to withstand the instant motion for judgment on the pleadings"); *Keough v. Texaco, Inc.*, No. 97 Civ. 5981 LMM, 1999 WL 61836, at * 6-7 (S.D.N.Y. 1999) ("Even absent the press reports, however, reasonable minds could look independently at Texaco's statements and find a defamatory connotation—that Keough was a party to racist conversation … As to the question of whether or not Texaco affirmatively intended to endorse such a defamatory inference, the answer cannot be determined absent discovery.").

## IX.    1st Amendment Praetorian has adequately pled special damages.

The "classical definition of special damage in a defamation case" is "business loss suffered by the plaintiff as a result of damage to [its] reputation". *O'Hara v. Storer Communications*, 231 Cal.App.3d 1101, 1112, 282 Cal.Rptr. 712 (1991) (citing *Terwilliger v. Wands*, 17 N.Y. 54, 60 (1858)). In pleading special damages, a plaintiff "need only allege what type of special damages [she] seeks (lost support and services) to put Defendant on notice of the claim." *Yergey v. Brinker Florida*, Inc., Case No. 6:20-cv-917-Orl-37LRH, 2020 WL 10817751, at * 2 (M.D. Fla. 2020) (emphasis in original); *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F.Supp.3d 16, 31-32 (D.D.C. 2019). In *Conejo*, the plaintiff alleged that he "suffered and continues to suffer

career damage, loss of consideration for career advancement, personal and professional embarrassment and humiliation, and emotional pain and suffering." 377 F.Supp.3d at 32. The Court held that plaintiff adequately alleged "special damages". *Id.*

In its complaint, 1AP alleges that it lost income, future earnings and suffered diminished earning capacity and injury to its standing, good will and reputation as a result of Defendants' defamation and defamation by implication. Dkt. No. 37 at ¶¶ 42, 48.

## CONCLUSION

For the reasons stated above, 1AP respectfully requests the Court to deny Defendants' motion to dismiss.

Dated: March 28, 2024                   Respectfully submitted,

                                        /s/ Jason C. Greaves
                                        Jason C. Greaves
                                        BINNALL LAW GROUP, PLLC
                                        717 King Street, Suite 200
                                        Alexandria, Virginia 22314
                                        Phone: (703) 888-1943
                                        Fax: (703) 888-1930
                                        jason@binnall.com

                                        *Attorney for Plaintiff 1st Amendment Praetorian*

**CERTIFICATE OF SERVICE**

I certify that on March 28, 2024, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jason C. Greaves
Jason C. Greaves

*Attorney for Plaintiff 1st Amendment Praetorian*