**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| 1ˢᵀ AMENDMENT PRAETORIAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>THE NEW YORK TIMES COMPANY )<br>)<br>-and- )<br>)<br>ALAN FEUER, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:23-cv-00012<br><br>The Hon. Mary Kay Vyskocil<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**MOTION BY DEFENDANTS THE NEW YORK TIMES COMPANY AND**
**ALAN FEUER TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ...................................................................................................................................... 1

    I.     1AP'S EXPRESS DEFAMATION CLAIMS MUST BE DISMISSED. ................. 1

           A.     1AP *Still* Does Not Allege that the Challenged Statements Are False. ........ 2

           B.     1AP Still Cannot Show the Challenged Statements Are "Of and Concerning" It ................................................................................................ 3

    II.    1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS. ..................... 4

    III.   MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR AND TRUE REPORTS OF AN OFFICIAL PROCEEDING. .............................. 5

    IV.   THE ACTUAL MALICE STANDARD APPLIES AND 1AP HAS FAILED TO MEET IT. ................................................................................................ 7

    V.    MANY CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION .................................................................................................................. 8

    VI.   1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES. ........... 9

    VII.  1AP'S CLAIMS ARE PARTIALLY TIME-BARRED. ........................................ 10

CONCLUSION ................................................................................................................................. 10

CERTIFICATE OF SERVICE ......................................................................................................... 12

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bilinski v. Keith Haring Foundation, Inc.*,
    96 F. Supp. 3d 35 (S.D.N.Y. 2015) .................................................................................. 6

*Boyle v. Stiefel Labs., Inc.*,
    204 A.D.2d 872 (3d Dep't 1994) ..................................................................................... 10

*Celle v. Filipino Reporter Enters.*,
    209 F.3d 163 (2d Cir. 2000) ......................................................................................... 7, 8

*Conejo v. AFGE*,
    377 F. Supp. 3d 16 (D.D.C. 2019) ................................................................................... 9

*Flynn v. CNN*,
    No. 21-cv-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021) .......................... 10

*Gottwald v. Sebert*,
    40 N.Y.3d 240 (2023) ....................................................................................................... 7

*Keough v. Texaco Inc.*,
    97 Civ. 5981 (LMM), 1999 WL 61836 (S.D.N.Y. Feb. 10, 1999) .................................. 5

*Lewis v. Abramson*,
    No. 22-cv-126-PB, 2023 WL 3322009 (D.N.H. May 9, 2023) ....................................... 9

*Nanyonga v. INS*,
    200 F.R.D. 503 (M.D. Pa. 2001) .................................................................................... 10

*Nunes v. Lizza*,
    12 F.4th 890 (8th Cir. 2021) ............................................................................................ 5

*Nunez v. A-T Fin. Info.*,
    957 F. Supp. 438 (S.D.N.Y. 1997) ............................................................................. 9, 10

*O'Hara v. Storer Commc'ns*,
    231 Cal. App. 3d 1101 (1991) ......................................................................................... 9

*Roberti v. Schroder Investment Management North America, Inc.*,
    No. 04-cv-2404, 2006 WL 647718 (S.D.N.Y. Mar. 14, 2006) ................................... 4, 5

*Silsdorf v. Levine*,
    59 N.Y.2d 8 (1983) .......................................................................................................... 3

*Stepanov v. Dow Jones & Co.*,
   120 A.D.3d 28 (1st Dep't 2014) ................................................................................5

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
   864 F.3d 236 (2d Cir. 2017)..................................................................................2, 3

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010)......................................................................10

*Yergey v. Brinker Fla.*,
   No. 6:20-cv-917-Orl-37LRH, 2020 WL 10817751 (M.D. Fla. Aug. 6, 2020).........................9

**Other Authorities**

Fed. R. Civ. P. 4(m) ............................................................................................10

**PRELIMINARY STATEMENT**

Defendants' Motion to Dismiss (ECF 40, "Motion") explained how the FAC does not make out the most basic elements of a defamation claim, including pleading that the Statements are materially false. 1AP responds with a lengthy recitation of case law, conclusory declarations that statements are false or "of and concerning" 1AP, and a belated attempt to use its brief to replead several express defamation statements as defamatory by implication. But 1AP *still* has not disputed the truth of the central facts of The Times's reporting: that 1AP played a role in trying to keep Donald Trump in office and the congressional January 6 committee investigated the group to find out the extent of its participation. Although the Court can and should dismiss the entire case for failure to adequately allege falsity – 1AP's claims can also be dismissed because they challenge nonactionable opinions and fair reports of official proceedings, fail to adequately allege damages, and are partially time-barred. 1AP also fails to acknowledge that the actual malice standard applies as a matter of New York law and makes almost no effort to rehabilitate its woefully deficient factual allegations regarding actual malice. On that basis, too, the entire FAC can be dismissed. Perhaps recognizing the futility of future amendments, 1AP does not seek leave to file a further amended pleading. The Court should therefore dismiss 1AP's claims with prejudice.

**ARGUMENT**

**I.    1AP'S EXPRESS DEFAMATION CLAIMS MUST BE DISMISSED.**

The Motion explained that 1AP has failed to allege what it is in any of the 24 statements that makes them materially false. Mot. 6-9. The Opposition makes no argument that 1AP has stated a valid express defamation claim for seven of the statements (Statements 6, 7, 17, 20-23),[1]

---

[1] All references to numbered Statements are to those in Exhibit 10 to the Blaisdell Declaration (ECF 40), which connects each statement with the paragraph(s) of the FAC in which it is alleged.

so those claims must be dismissed. *See* Opp. 11-20. Also, for its claims against tweets (Statements 8 and 13-15), it concedes that "the tweet links to and incorporates the entire Article" (Opp. 14). This concession dooms 1AP's efforts to challenge isolated phrases out of context, such as the perfectly accurate statements that the January 3 Article was "an excellent look at [1AP] and their role in 1/6" (Statement 8) and that investigators had focused a tweet by Donald Trump and several far-right extremist groups that stormed the Capitol (Statements 13-15). An accurate thumbnail summary with a link to the article that provides further context cannot form the basis of a defamation claim. *See* Mot. 8 n.9. For the other statements, the Opposition repeats conclusions but does not explain why they are false or "of and concerning" 1AP.

### A. 1AP *Still* Does Not Allege that the Challenged Statements Are False.

The essential requirement of a libel claim is to say what is true so the Court can know what is false. 1AP needed to "plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). It did not do that. The Opposition repeats the empty statement that "1AP did not have any role in the alleged effort to keep President Trump in power" (Opp. 12, 14) but 1AP has never challenged the truth of the portions of the articles that outlined its role in that effort, including that it provided security for General Flynn at a "Stop the Steal" rally on December 12, 2020, that 1AP's president spoke at a pro-Trump rally on January 5, 2021, and that its personnel were in the "war room" at the Willard Hotel on January 6, 2021 and outside the Capitol. 1AP's acknowledgement that it attended the December 12 rally also renders meaningless its argument that it was not "brought together" with other groups that also attended (Opp. 16, 17). The statement that "1AP was even investigated by the FBI, which found no wrongdoing" (Opp. 12) is not a denial of any of the challenged statements and neither the FAC

nor the Opposition explains anything about this investigation. These conclusory denials are insufficient and the Court should dismiss 1AP's claims for failure to adequately allege falsity.

### B. 1AP Still Cannot Show the Challenged Statements Are "Of and Concerning" It.

The Motion also explained that Statements 9-10, 12-16, 18-19, and 20-23 refer to other identified groups or are not reasonably read to refer to 1AP. Mot. 9-10. 1AP's only response in the Opposition is that, because the articles mention it by name elsewhere, every statement regarding "extremist groups" or "far-right groups" must refer to it. Opp. 15, 17-20. But even a cursory look at the actual articles shows the absurdity of 1AP's strained interpretation. *Tannerite*, 864 F.3d at 243 ("When a court interprets a publication in an action for defamation, '[t]he entire publication, as well as the circumstances of its issuance, must be considered in terms of its effect upon the ordinary reader.'") (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983)).

The March 29 Article, which contains Statements 9-10 and 12 and was linked to in the tweets that are Statements 13-15, is primarily about the Proud Boys and Oath Keepers, which are referred to more than a dozen times, and it mentions 1AP just once, near the bottom of page three. Blaisdell Decl. Ex. 2. The challenged statements, Statements 9, 10, and 12, are many paragraphs away. *Id.* 1AP is not mentioned in the three tweets containing Statements 13-15. Blaisdell Decl. Exs. 7-9. Statement 16 from the July 29 Article refers to militia groups connected to Michael Flynn and Roger Stone and states that both men "had extensive ties to extremist groups like the Proud Boys and Oath Keepers," not 1AP. Blaisdell Decl. Ex. 3 at 1. The NPR Interview, which contains Statements 18 and 19, refers to the Proud Boys and Oath Keepers in the subheading, and uses the names of the two groups nearly *70 times*, but mentions 1AP just once. Blaisdell Decl. Ex. 5 at 3. Similarly, the July 11 Article, which contains Statements 20-23, contains a single two-paragraph section about 1AP (Blaisdell Decl. Ex. 4 at 2); 1AP cannot

explain how statements that expressly refer to other groups are reasonably read to instead refer to it. 1AP's claims based on Statements 9-10, 12-16, 18-19, and 20-23 should be dismissed.

## II.    1AP'S CLAIM OF LIBEL BY IMPLICATION LIKEWISE FAILS.

The Motion showed that 1AP's libel by implication claim fails because 1AP has not alleged that the implications were false (for instance, the implication that it played a role in President Trump's effort to undo the 2020 election results) or because 1AP's reading was so strained that it required the Court to look beyond the Articles' ordinary meaning (for instance, the claim that saying 1AP was among groups that were "present on Jan. 6" implied that 1AP played a role in storming the Capitol and was at the forefront of the violence). Mot. 10-14; *see* Blaisdell Decl. Ex. 10 at 7 (chart of alleged defamatory implications). The Motion also pointed to the lack of allegations that The Times intended or endorsed the implications. Mot. 12-13.

In response, 1AP only offers more conclusions. 1AP argues that the January 3 and March 29 Articles "juxtapose[] a series of facts that, viewed together and in context" impart defamatory implications, without ever describing which facts supposedly lead to them. Opp. 22. 1AP also argues that a tweet by Robert Draper (stating "@alanfeuer with an excellent look at the murky security group 1st Amendment Praetorians and their role in 1/6" (Blaisdell Decl. Ex. 6)) shows that Draper "understood" the linked article to convey the implication that "1AP had a 'role in 1/6.'" Opp. 23. And, of course, 1AP did have some role, as the stories show in unchallenged statements. But the "plain and ordinary meaning" of the tweet is that Draper liked the article and had the opinion that 1AP had a murky past. On the July 11 Article, 1AP argues without support that references to "extremists" and "antigovernment groups" must refer to 1AP. Opp. 22-23.

1AP cites three cases, none of which help it. In *Roberti v. Schroder Investment*, the court found that there was a defamatory implication that a banker lied about a trade. No. 04-cv-2404,

4

2006 WL 647718, at *8-9 (S.D.N.Y. Mar. 14, 2006). But, as the court itself recognized, that case was decided when the New York courts had not "yet articulated a standard for evaluating such a claim in the context of a motion to dismiss." *Id.* at *9 (also applying the pre-*Iqbal* and *Twombly* federal pleading standards).[2] As 1AP concedes (Opp. 21), the standard that New York subsequently adopted is that the plaintiff "must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014). 1AP also cites the Eighth Circuit's decision in *Nunes v. Lizza*, 12 F.4th 890, 897 (8th Cir. 2021). That case applied Iowa law, which did not require a plaintiff to make the "rigorous showing" New York law requires. *Id.* at 895-96, 899. In any event, the entire article concerned Congressman Nunes and his family, and the court found that the article's theme of a "politically explosive" secret "reasonably implies a connection among" the facts stated within it. *Id.* at 896-97. Here, 1AP is not the overarching topic of the stories – they dealt with various groups – and no reasonable reader would see every statement in them as implying something about 1AP when 1AP is not even mentioned.

### III. MANY CHALLENGED STATEMENTS ARE PRIVILEGED AS FAIR AND TRUE REPORTS OF AN OFFICIAL PROCEEDING.

The Motion described in detail how Statements 1, 2, 9, 10, 13, 14, and 16-23 are legally privileged as fair and true reports of an official proceeding, the Committee's investigation of 1AP

---

[2] 1AP also cites *Keough v. Texaco Inc.*, 97 Civ. 5981 (LMM), 1999 WL 61836, at *6 (S.D.N.Y. Feb. 10, 1999), another pre-*Iqbal* and *Twombly* case decided before New York adopted the "rigorous showing" standard. The plaintiff in *Keough* was linked to participation in offensive, racist conversations described in the initial press release by a subsequent letter to Texaco employees that framed his termination as an action connected to the inquiry into those conversations, a far closer nexus than 1AP's argument that articles that discuss various "extremist groups" contain defamatory implications about 1AP. *Id.* at *7.

and other groups. Mot. 14-17. 1AP concedes that the doctrine "admits . . . some liberality" and that a statement of the proceeding need only be "substantially stated." Opp. 4. 1AP broadly claims that "the reporting by Defendants often went far beyond the scope of the investigation relied upon as basis for the report" and contained "major inaccuracies." Opp. 5. But 1AP's Opposition makes no attempt to compare the official proceeding to what The Times's stories reported. *See* Opp. 12, 15, 17-19. There is no dispute that 1AP was investigated by the Committee, including that the Committee sent its leader a subpoena. Mot. 16. Statements 1 and 2 are fair reports that the committee was scrutinizing 1AP. Statements 9, 10, 13, and 14 all concern evidence gathered by federal investigators concerning the impact of Donald Trump's tweet on several extremist groups. Neither the FAC nor the Opposition dispute that the Committee was examining this evidence. Accordingly, The Times's report on the evidence is covered by the privilege. Opp. 15, 17-18. The remaining statements (Statements 16-23) either relay statements made by the lead investigator, Representative Raskin, or testimony and documents gathered during the investigation. Blaisdell Decl. Ex. 10. They are textbook examples of journalism protected by the fair report privilege.

      Faced with that reality, 1AP says a report might "suggest more serious conduct than that actually suggested in the official proceeding." Opp. 4-5.[3] Hypothetically, that is absolutely so – just not here. The challenged statements report what the Committee did and what Representative Raskin said, and 1AP does not say otherwise. The fact that the Committee ultimately came to different conclusions (or, as 1AP claims, that a different set of investigators chose not to charge it with a crime) does not strip The Times of the privilege. If that were how the privilege worked, a

---

[3] In *Bilinski v. Keith Haring Foundation, Inc.*, 96 F. Supp. 3d 35, 48–49 (S.D.N.Y. 2015), the plaintiff could point to specific language in the press release, the assertion that the lawsuit and settlement that it described concerned "fake" works of art that went beyond what was actually at issue in the underlying case. 1AP has not denied the fundamental factual point that it was investigated for the role it played in the attempt to overturn the results of the 2020 election.

newspaper's summary of a prosecutor's opening on day one of a trial would cease to be privileged when the trial ends in an acquittal. As much as 1AP may want to litigate whether it played a "role" in the attack on the Capitol, that is patently irrelevant to the existence of the fair report privilege. The privilege is designed to let readers know what official bodies are doing as they are doing it, no matter what truth ultimately emerges from those official deliberations. Accordingly, the Court should dismiss the defamation claims for Statements 1, 2, 9, 10, 13, 14, and 16-23.

### IV. THE ACTUAL MALICE STANDARD APPLIES AND 1AP HAS FAILED TO MEET IT.

The Motion explained how the actual malice standard applies, both because 1AP is a public figure and under New York's anti-SLAPP law. Mot. 17-19. 1AP never addresses the argument that the actual malice standard applies to The Times's reporting on an issue of public interest under the anti-SLAPP law. *See* Opp. 9.[4] 1AP weakly argues it is a private figure because it "was dragged into the public vortex, it did not seek it out." Opp. 9.[5] But the uncontroverted facts, that 1AP members gave speeches and provided security for notables at "Stop the Steal" rallies, show they engaged in "purposeful activity, by which" they "thrust themselves into the public spotlight and sought a continuing public interest in [their] activities." *Gottwald*, 40 N.Y.3d at 251. Either way, actual malice applies.

In trying to show that it has sufficiently alleged actual malice, 1AP first argues that actual malice can be "shown by an 'accumulation' of evidence and inferences." Opp. 9 (quoting *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 183 (2d Cir. 2000)). What *Celle* actually stands for is

---

[4] 1AP cites *Gottwald v. Sebert*, 40 N.Y.3d 240 (2023), for the negligence standard applying to private figures but fails to mention that Court of Appeals did not apply the anti-SLAPP law because the case was filed prior to enactment of the statute in 2020 and, in any event, concluded that the plaintiff was a limited purpose public figure. *Id.* at 247. There is no dispute that the law was in effect when 1AP filed this lawsuit.

[5] The FAC says even less. FAC ¶ 37 ("1AP is a private company. It is not a public figure.").

that "a court typically will infer actual malice from objective facts" and that "[t]hese facts should provide evidence of 'negligence, motive and intent such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice.'" 209 F.3d at 183.

The FAC does not plead *any* objective facts that would, with appropriate inferences, support the existence of actual malice. 1AP must show that The Times knew, or had substantial reason to believe, that 1AP was not involved in the efforts to keep Donald Trump in office on January 6 and the weeks leading up to it. But the facts alleged in the FAC and the facts undisputed by 1AP in the stories would give any reasonable person a basis for thinking that 1AP was involved. 1AP has failed to plead any facts that show the events involving 1AP never happened or "that 1AP's involvement in the Capitol attacks was fabricated as part of a political narrative that also involved General Flynn," as it argues. Opp. 10. Even if 1AP is right (although it gives no substantiation) that it was investigated by the FBI and "cleared of any wrongdoing" (FAC ¶ 12), that does not carry the day. The actual malice analysis turns on what defendants knew at publication, not what facts may have existed somewhere in the world.

Finally, 1AP argues that there is actual malice because The Times "learned that 1AP contended in a lawsuit that the Statements were false and defamatory." Opp. 10. It fails to counter the arguments that it has not credibly alleged that The Times was aware of the lawsuit and that a plaintiff's denial is insufficient to show actual malice. Mot. 20-21. In short, instead of an accumulation of proffered objective evidence to support a finding of actual malice, 1AP has none. Its defamation claims should be dismissed with prejudice.

## V. MANY CHALLENGED STATEMENTS ARE NONACTIONABLE OPINION

1AP fares no better in countering The Times's argument that words like "far-right group" or "right-wing paramilitary group" (Statements 1 and 2) are opinions. Also in the scope of

opinion are statements using such words as "extremist," "far-right," "paramilitary," "violent," "dangerous," "antigovernment," "white nationalist," or "militia" (Statements 9-23), although most actually refer to others and not to 1AP. These terms have no single, precise meaning that would render them falsifiable statements of fact. Mot. 21-22. The Opposition repeats like a mantra that each of the statements are not opinion because they use precise language and can be proven false. Opp. 11-20. As the Motion showed, numerous courts have found just the opposite to be the case. Nor does 1AP try to explain why this Court should not dismiss these claims as the District of New Hampshire did with similar claims brought by the president of 1AP. Mot. 22 (citing *Lewis*, 2023 WL 3322009, at *7-14). To the extent it bases its claim on being called an "extremist," "far-right," or "paramilitary" group, 1AP's defamation claims must be dismissed.

## VI.   1AP HAS FAILED TO ADEQUATELY PLEAD SPECIAL DAMAGES.

To state a defamation claim, 1AP must either prove that the statements are defamatory per se or that they caused it to suffer special damages. Mot. 23-24. 1AP does not argue its claims are for defamation per se, thus abandoning that theory. Opp. 24-25. Instead, citing inapposite cases applying the laws of California, Florida, and D.C., 1AP argues that it need only allege boilerplate categories of actual damages it seeks, not facts that would support its entitlement to damages. *Id.*[6] But under New York law, "[t]o satisfy the special damages requirement, a plaintiff must set forth an itemized account of her losses; round figures or a general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info.*, 957 F. Supp. 438, 441

---

[6] *O'Hara v. Storer Commc'ns*, 231 Cal. App. 3d 1101, 1112 (1991), decided under California law, involved an appeal challenging a jury award of special damages, not a pleading issue. *Yergey v. Brinker Fla.*, No. 6:20-cv-917, 2020 WL 10817751, at *2 (M.D. Fla. Aug. 6, 2020), was a wrongful death claim brought under Florida law. In *Conejo v. AFGE*, 377 F. Supp. 3d 16, 32 (D.D.C. 2019), decided under D.C. law, the adequacy of the damages allegations was not disputed and, even so, the court denied the motion to dismiss in part because the claims "may be actionable as defamation or libel per se, which requires no showing of special harm."

(S.D.N.Y. 1997) (citing *Boyle v. Stiefel Labs., Inc.*, 204 A.D.2d 872 (3d Dep't 1994)). "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010); *Flynn v. CNN*, No. 21-cv-2587, 2021 WL 5964129, at *5-6 (S.D.N.Y. Dec. 16, 2021). 1AP has not done so, so dismissal is warranted.

### VII.    1AP'S CLAIMS ARE PARTIALLY TIME-BARRED.

The Motion explained that 1AP's claims are partially time-barred because, having waited until the last day of the limitations period to file its complaint, 1AP failed to serve it within the period mandated by Rule 4(m). 1AP's conjecture that prior counsel "apparently failed to calendar the date to serve Defendant" and criticism that The Times "took no steps to notify Plaintiff of these issues" (Opp. 3) are not good cause. In 1AP's only case, *Nanyonga v. INS*, 200 F.R.D. 503 (M.D. Pa. 2001), the plaintiff served by certified mail within the period, a method not authorized by law, and cross-moved for an extension of time. 1AP took no steps to timely serve the complaint and never sought an extension. The Court allowed two additional weeks to serve the complaint without being "dismissed for failure to prosecute" (ECF 3) but did not toll the limitations period. 1AP cites nothing for the blanket proposition that "if a court grants an extension of time to serve the complaint, this alleviates any statute of limitations consequences." Opp. 3. The Court should dismiss claims based on the January 3 Article and tweet.

### CONCLUSION

For the reasons set forth above and in the Motion, The Times respectfully requests that the Court dismiss the FAC with prejudice, reject any belated attempts to seek leave to amend, and grant other and further relief as the Court deems just and proper.

Dated: New York, NY
April 4, 2024

/s/ Demetri Blaisdell
Demetri Brumis Blaisdell
David McCraw
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com
david.mccraw@nytimes.com

*Attorneys for Defendants The New York Times Company and Alan Feuer*

## **CERTIFICATE OF SERVICE**

I certify that on April 4, 2024, the foregoing Reply Memorandum of Law was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Demetri Blaisdell
Demetri Blaisdell
The New York Times Company
620 Eighth Avenue
New York, NY 10018
Tel: 800-698-4637
demetri.blaisdell@nytimes.com

*Counsel for Defendants*
