USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/28/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

1st AMENDMENT PRAETORIAN,

       Plaintiff,

   -against-

THE NEW YORK TIMES COMPANY and ALAN FEUER,

       Defendants.

---

1:23-cv-00012 (MKV)

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

**MARY KAY VYSKOCIL**, United States District Judge:

Plaintiff 1st Amendment Praetorian ("Plaintiff" or "1AP') filed this diversity action against Defendant New York Times Company ("NYT") and Defendant Alan Feuer asserting claims for defamation and defamation by implication. (Amended Complaint "Am. Compl.," [ECF No. 37]). Now before the Court is Defendants' motion to dismiss. [ECF No. 38]. In support of their motion, Defendants filed a memorandum of law in support, ("Defs. Mem.," [ECF No. 39]), and a declaration with 12 exhibits attached [ECF No. 40]. Plaintiff opposed. ("Pl. Opp.," [ECF No. 41]). Defendants replied. ("Defs. Reply.," [ECF No. 42]). For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED.

**BACKGROUND[1]**

**I. Factual Background**

1AP is a private Delaware corporation with its principal place of business in Calabasas, California. Am. Compl. ¶ 3. 1AP was founded by Robert Patrick Lewis to provide pro bono security and protective services at grassroots events. Am. Compl. ¶ 9. In particular, Mr. Lewis

---

[1] The facts as stated herein are taken from Plaintiff's Amended Complaint and are assumed to be true for the purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

created 1AP "to ensure that every American can freely associate, freely gather and freely speak on matters of public concern to them without threat or fear of intimidation, retribution, bodily harm or death."[2]  Am. Compl. ¶ 9.  On January 6, 2021, 1AP provided security detail for members of the press.  Am. Compl. ¶ 11.

NYT is a New York corporation with its headquarters in New York.  Am. Compl. ¶ 4. NYT publishes *The New York Times* newspaper, www.nytimes.com, and maintains social media accounts, including Twitter, which has 55,000,000 followers.  Am. Compl. ¶ 4.  Feuer is a citizen of New York and joined NYT as a reporter in 1999.  Am. Compl. ¶ 5.

*A. The January 3, 2022 Article*

On January 3, 2022, NYT published an online article written by Feuer entitled, "Another Far-Right Group Is Scrutinized About Its Efforts to Aid Trump."  Am. Compl. ¶ 13.  The next day, a version of the January 3, 2023 article appeared in print, on Section A, Page 1 of the New York edition of New York Times with the headline: "Jan. 6 Inquiry Turns Its Focus To New Group." Am. Compl. ¶ 13.   The Amended Complaint alleges that this article included the following materially false statements of fact:

1. "1AP engaged in 'Efforts to Aid Trump' in overturning the results of the 2020 Presidential Election";

2. "1AP was 'was involved in a less publicly visible yet still expansive effort to keep President Donald J. Trump in power' ";

3. "1AP . . . spent much of the postelection period working in the shadows with pro-Trump lawyers, activists, business executives and military veterans to undermine public confidence in the election and to bolster Mr. Trump's hopes of remaining in the White House";

4. "1AP 'had men on the ground outside the building on Jan. 6 and others at the Willard Hotel, near some of Mr. Trump's chief allies' ";

---

[2] The court notes the contrast between Plaintiff's purported mission to ensure that *every* American can freely speak on matters of public concern without threat or fear of retribution and the fact that this lawsuit specifically seeks to limit Defendants' ability to speak freely, but neither irony nor hypocrisy are relevant to this Court's analysis.

5. 'On the day of the Capitol attack, at least one of Mr. Lewis's lieutenants, Geoffrey Flohr, a former Michigan police officer, was outside the building walking the grounds and talking on his cellphone just before the riot erupted";

6. "Another member of 1AP posted on Twitter that afternoon, claiming he was in an 'overwatch position' in Arlington County, Va., where prosecutors say the Oath Keepers had placed at a hotel an armed 'quick reaction force' that was prepared to move into Washington if needed"; and

7. "As for Mr. Lewis [President of 1AP] . . . '[t]oday is the day the true battles begin,' he wrote on Twitter just as the Capitol was breached."

Am. Compl. ¶ 15(a)–(g).  1AP alleges that the January 3, 2022 article was "republished millions of times by third-parties" including by Robert Draper, a NYT reporter, who tweeted a link to the article with a caption that highlighted 1AP and their "role in 1/6."  Am. Compl. ¶ 14. 1AP further alleges that the January 3, 2022 article, viewed in its entirety, states or implies that 1AP was involved in the events of January 6, 2021 and the article had a "defamatory gist" implying that 1AP is a "right-wing paramilitary group" like "high-profile extremist" and "far-right nationalist Proud Boys and Oath Keepers militia."  Am. Compl. ¶ 16.

*B. The March 29, 2022 Article*

On March 29, 2022, NYT published a second online article written by Feuer entitled, "New Focus on How a Trump Tweet Incited Far-Right Groups Ahead of Jan. 6."  Am. Compl. ¶ 17.  The next day, a version of this article appeared in print in Section A, Page 1 of the New York edition of the *New York Times* with the headline: "Evidence Grows That Dec. 19 Trump Tweet Paved Way for Jan. 6."  Am. Compl. ¶ 17.  The Amended Complaint alleges that the March 29, 2022 NYT article included the following materially false statements of fact:

8. "[A] [December 19, 2020] tweet by President Donald J. Trump less than three weeks before Jan. 6, 2021, served as a crucial call to action for extremist groups that played a central role in storming the Capitol";

9. "Extremist groups almost immediately celebrated Mr. Trump's Twitter message, which they widely interpreted as an invitation to descend on the city in force";

10. "Extremists began to set up encrypted communications channels, acquire protective gear and, in one case, prepare heavily armed 'quick reaction forces' to be staged outside Washington";

11. "The event on Dec. 12, 2020, which Mr. Trump flew over in Marine One, showed his ability to draw huge crowds of ordinary people in support of his baseless assertions that the election had been stolen.  But it also brought together at the same time and place extremist and paramilitary groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian, who would be present on Jan. 6";

12. "Mr. Trump's message arguably landed with the greatest impact among members of the same extremist groups that had been in Washington on Dec. 12"; and

13. "Once the call came, early on Dec. 19, the extremists were ecstatic."

Am. Compl. ¶ 19(a)–(f).  1AP alleges that Feuer, and other NYT employees, also tweeted out links to this article with the captions that falsely stated that "1AP 'stormed the Capitol' on January 6, 2021." Am. Compl. ¶ 17.  The Amended Complaint further alleges that the March 29, 2022 article viewed in its entirety, states or implies, that 1AP was one of the extremist and paramilitary groups that played a role in storming the Capitol on January 6, 2021.  Am. Compl. ¶ 20.

*C. The June 29, 2022 Article*

On June 29, 2022, NYT published another online article written by Feuer entitled, "Jan. 6 Panel Explores Links Between Trump Allies and Extremist Groups."  Am. Compl. ¶ 21.  A version of this article appeared in print the next day on Section A, Page 17 of the New York edition of the *New York Times* with the headline: "Testimony of Trump Allies and Extremists at Hearing."  Am. Compl. ¶ 21.  The Amended Complaint alleges that the June 29, 2022 NYT article included the following materially false statements of fact:

14. "Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a pair of allies [Flynn and Stone] who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence"; and

15. "Jamie Raskin, Democrat of Maryland, has said he intends to lead a presentation that will focus on the roles far-right groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian played in the Capitol attack."

Am. Compl. ¶ 23(a)–(b).  1AP also asserts that the June 29, 2022 article was republished, via Twitter, millions of times by third parties.  Am. Compl. ¶ 22.  1AP further alleges that this article, viewed in its entirety, states that 1AP was at the "forefront of the violence" on January 6.  Am. Compl. ¶ 24.  1AP alleges that this article republishes Jamie Raskin's defamatory statement that 1AP played a role in "the Capitol attack."  Am. Compl. ¶ 24.

### D. The June 30, 2022 NPR Interview

On June 30, 2022, NPR aired an interview with Feuer.  Am. Compl. ¶ 25.  The Amended Complaint asserts that during the NPR interview Feuer made the following materially false statements of fact:

16. "[w]hile we don't know what Meadows may have said to Stone and Flynn, what we do know is that Stone and Flynn 'both have extensive contacts to far-right militia groups that were intimately involved in the attack on the Capitol'; and

17. "The call from Meadows to Stone and Flynn 'is a potential conduit in which Trump could be connected directly to these militia groups that, ultimately, were at the vanguard of the attack on the Capitol."

Am. Compl. ¶ 26(a)–(b).  The Amended Complaint alleges that these statements are materially false because 1AP was not involved in the attack on the Capital.  Am. Compl. ¶ 27.

### E. The July 11, 2022 Article

On July 11, 2022, NYT published an online article written by Luke Broadwater entitled, "Raskin Brings Expertise on Right-Wing Extremism to Jan. 6 Inquiry."  Am. Compl. ¶ 28.  A version of this article appeared in print the next day on Section A, Page 13 of the New York edition of the *New York Times* with the headline: "Raskin Faces Major Moment in 5-Year Crusade Against

Extremism." Am. Compl. ¶ 28. The Amended Complaint alleges that this article included the following materially false statements of fact and defamatory implications:

18. "[A]fter Mr. Trump's many efforts to overturn the 2020 election had failed, he and his allies turned to violent far-right extremist groups";

19. "There were Proud Boys, Oath Keepers, Three Percenters, the QAnon network, Boogaloo Boys, militia men and other assorted extremist and religious cults that assembled under the banner of 'Stop The Steal' ";

20. "This was quite a coming-out party for a lot of extremist, antigovernment groups, and white nationalist groups that had never worked together before";

21. "Donald Trump's tweet urging everyone to descend upon Washington for a wild protest on Jan. 6 succeeded in galvanizing and unifying the dangerous extremists of the country";

22. "The J6 'panel plans to detail known links between the political operative Roger Stone, a longtime ally of Mr. Trump's, the former national security adviser, Michael T. Flynn, and the extremist groups"; and

23. "Mr. Flynn has ties to the 1st Amendment Praetorian paramilitary group, which provided him with security when he appeared as a speaker at a pro-Trump march in Washington in December 2020. Joining the group in a security role at the event were members of the Oath Keepers, including Mr. Rhodes."

Am. Compl. ¶ 30(a)–(f). 1AP also alleges that the July 11, 2022 article was republished millions of times by third parties via Twitter. Am. Compl. ¶ 29. The Amended Complaint asserts that this article, viewed in its entirety, states or implies that 1AP was one of the "violent far-right extremist groups" that were involved in efforts to overturn the 2020 election and that 1AP worked with or was linked to extremist groups. Am. Compl. ¶ 31.

## II.    Procedural History

1AP filed its Original Complaint in this action on January 3, 2023. [ECF No. 1]. Thereafter, on April 5, 2023, after the 90-day tolling period had ended and Plaintiff still had not filed proof of service on the docket, the Court entered an Order directing Plaintiff to serve Defendants and file proof of service on the docket within two weeks. The Court warned Plaintiff

that failure to comply could result in dismissal pursuant to Rules 4 and 41 of the Federal Rules of Civil Procedure. [ECF No. 3]. Waivers of service executed on April 10, 2023 were subsequently filed on the docket. [ECF Nos. 4, 5]. Thereafter, Defendants filed a pre-motion letter seeking to dismiss the Amended Complaint. [ECF No. 9]. The Court set a briefing schedule, including providing Plaintiff an opportunity to file an Amended Complaint in response to the issues raised by Defendants in connection with their contemplated motion to dismiss. [ECF No. 10]. Plaintiff filed its operative Amended Complaint, [ECF No. 37], and thereafter Defendants moved to dismiss. [ECF No. 38].

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When adjudicating a motion to dismiss, the Court "accept[s] all factual allegations in the complaint and draw[s] all reasonable inferences in the plaintiff's favor." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

Under New York Law, which applies in this case,[3] a defamation claim must allege (1) a written defamatory statement that is of and concerning the plaintiff, (2) publication of that statement to a third party, (3) with the requisite level of fault, (4) the statement must be false, and

---

[3] New York substantive law controls in this case because both parties' briefs assume that New York substantive law controls and "such implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (quoting *Tehran–Berkeley Civil & Environmental Engineers v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 242 (2d Cir. 1989)) (internal quotation marks omitted).

(5) special damages or *per se* actionability. *See Davis v. Boeheim*, 24 N.Y.3d 262, 268–70, 22 N.E.3d 999 (2014); *see also Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citing *Celle v. Filipino Reporter Enterps. Inc*., 209 F.3d 163, 176 (2d Cir. 2000)). Where one or more challenged statements are substantially true, and thus do not meet the falsity requirement of normal "direct" defamation claim, *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987 N.Y.S.2d 37 (2014), a plaintiff may bring a "defamation by implication" claim as long as the statement(s) contain a strong implication that is false and defamatory. *Id.* at 35. However, a defamation by implication claim must still meet the other requirements of a defamation claim. *See, e.g., Biro v. Conde Nast*, 807 F.3d 541, 567 (2d Cir. 2015) (holding that implications may not be actionable if they are expressions of opinion); *Herbert v. Lando*, 781 F.2d 298, 307 n.4 (2d Cir. 1986) (noting that the actual malice requirement applies to defamation by implication claims).

When evaluating a motion to dismiss, the Court must also consider any written instruments attached to the complaint or incorporated by reference into the complaint. *Kinsey v. New York Times Co.*, 991 F.3d 171, 171 (2d Cir. 2021). The Court may also consider extrinsic material that is "integral" to the complaint. *See Palin*, 940 F.3d at 811; *see also Ctr. for Med. Progress v. Planned Parenthood Fed'n of America*, 551 F. Supp. 3d 320, 324–25 (S.D.N.Y. 2021), *aff'd sub nom*, *Daleiden v. Planned Parenthood Fed'n of America*, No. 21-CV-2068, 2022 WL 1013982 (2d Cir. Apr. 5, 2022).[4]

## DISCUSSION

### I.  Time Barred Claims

A threshold issue exists regarding whether Plaintiff's claims based on the January 3, 2022 article are time barred by the applicable statute of limitations. In New York, "an action to recover

---

[4] Although 1AP did not attach the various articles, tweets, and statements to its pleadings, the Amended Complaint quotes extensively from them to provide the basis of its defamation claim. Defendants submitted the full text of the

damages for . . . libel [and] slander" must be commenced within one year.  N.Y. C.P.L.R. § 215(3)).  In determining when the statute of limitations begins to run on a defamation claim, New York applies the single publication rule.  *See Gregoire v. G.P. Putnam's Sons,* 298 N.Y. 119, 125, 81 N.E.2d 45 (1948).  Under this rule, the statute of limitations begins to accrue at the time of the first publication, which is defined as "the earliest date on which the work was placed on sale or became generally available to the public."  *Van Buskirk v. The New York Times Co.,* 325 F.3d 87, 89 (2d Cir. 2003) (internal quotations and citation omitted).  The New York Court of Appeals has extended this rule to online publications.  *See Firth v. State*, 98 N.Y.2d 365, 370, 747 N.Y.S.2d 69, 775 N.E.2d 463 (2002); *see also Martin v. Daily News L.P.*, 121 A.D.3d 90, 990 N.Y.S.2d 473, 483 (1st Dep't 2014) ("This rule applies to publications on the Internet . . . so continuous access to an article posted via hyperlinks . . . is not a republication.") (citation omitted).

Defendants argue that Plaintiff filed its original Complaint on January 3, 2023, the final day of the statute of limitations period for all of its claims based on the January 3, 2022 article.  Defs. Mem. at 24.  Defendants assert that the statute of limitations was subsequently tolled for 90-days in order to allow Plaintiff to effectuate service, however, Plaintiff failed to do so.  Defs. Mem. at 24.  Therefore, Defendants argue that on April 4, 2023, after the 90-day tolling period had ended and Plaintiff still had not served Defendants, the statute of limitations started running again and expired that same day.  Defs. Mem. at 25.  Defendants acknowledge that on April 5, 2023 the Court *sua sponte* raised the issue of 1AP's failure to serve the original Complaint within the 90-day tolling period, and cautioned 1AP that its action would be dismissed pursuant to Rules 4 and 41 of the Federal Rules of Civil Procedure if the original Complaint was not served on or before

---

articles and tweets in connection with their motion to dismiss (ECF No. 40-(1–5); accordingly, since they are integral to the Complaint and to Plaintiff's claims, the Court considers the Article's full text when evaluating the sufficiency of the Amended Complaint.

April 19, 2023.  *See* ECF No. 3.  However, Defendants argue that the statute of limitations period for claims based on the January 3, 2022 article had already expired on April 4, 2023 and therefore those claims are time barred.  Defs. Mem. at 25.

Plaintiff argues that the Court "utilized its power under Rule 4 of the Federal Rules of Civil Procedure to grant additional time to comply with the service requirement" and then Plaintiff "timely served the Complaint within that deadline."  Pl. Opp. at 3.  Plaintiff argues that as such "[a]ny violation was addressed and resolved by the Court's extension of the deadline on April 5."  Pl. Opp. at 3.

Federal Rule of Civil Procedure 4(m) governs the consequences for untimely service of process and provides that:

> if a defendant is not served within 90 days after the complaint is filed, the court—on a motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).  A court pursuant to Rule 4 can *grant an extension to serve*: (1) upon a showing of good cause; or (2) without good cause within the Court's discretion.  *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007).  However, this Rule does not permit the Court to wholly ignore an already expired statute of limitations.  *See Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990), *abrogated on other grounds by Zapata*, 502 F.3d 192 (the statute of limitations for the underlying claim is tolled during the 90 day period from the filing of the complaint, but "[i]f service is not complete by the end of the [90] days [] *the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period*.") (emphasis added).  If Plaintiff had sought an extension to serve prior to the expiration the Court could have pursuant to its discretion under Rule 4(m) given

Plaintiff an extension and the tolling would have continued.  *See e.g.*, *Clyburne v. Ctr. for Comprehensive Health Prac., Inc.,* No. 4-CV-6695, 2006 WL 1559238, at *3 (S.D.N.Y. June 5, 2006) (explaining that the claims are only tolled during the time period provided by Rule 4, but because an extension request was made and granted before the tolling period and the statute of limitations expires the claims remained tolled).  However, that is not what happened here.  Instead, Plaintiff, or more likely Plaintiff's prior counsel, filed its original Complaint on the very last day of the statute of limitations period for its claims based on the January 3, 2022 article, failed to serve Defendants within the 90-day tolling period provided by Rule 4, failed to request an extension to serve Defendants prior to the tolling period expiring, the statute of limitations began to run again, and some of its claims lapsed.  *See Amnay v. Del Labs*, 117 F. Supp. 2d 283, 287 (E.D.N.Y. 2000) (declining to grant an extension request under Rule 4 since plaintiff failed to effectuate service within the tolling period causing the statute of limitations clock to resume running and expire barring any further action by plaintiff).

Plaintiff's claims based on the January 3, 2022 article had to have been filed within one year after the article was initially published.  Additionally, Plaintiff was required to serve its Complaint within 90 days to obtain the tolling protection and avoid being barred by New York's one year statute of limitations.  Alternatively, Plaintiff could have sought an extension to serve to ensure the tolling continued.  Plaintiff failed to do either here, and therefore, Plaintiff's claims based on the January 3, 2022 article are barred by the applicable statute of limitations and must be dismissed.[5]  Regardless of the above, Plaintiff's claims based on the January 3, 2022 article would have to be dismissed for several additional reasons.

---

[5] "To the extent that Plaintiff has been deprived of potentially viable claims against Defendants, [it] may have a remedy in the form of a malpractice suit against [its] former attorney and his firm. But that does not entitle [it] to prosecute" its time barred claims at the expense of Defendants. *See Benites v. New York Dep't of Corr. & Cmty. Supervision*, No.

## II.     Plaintiff Fails To State A Claim

Plaintiff argues that it was defamed by numerous statements contained in the articles, all of which were published by NYT and three of which were written by Feuer, three tweets, which were posted by Feuer or other NYT employees, and one interview in which Feuer participated that was published on NPR.

Defamation "is defined as the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*, 87 N.Y.2d 744, 751 665 N.E.2d 153 (1996) (internal quotations and citations omitted).  As outlined above, under New York law, a plaintiff must sufficiently allege: (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity, and (5) special damages or *per se* actionability.  *See Davis*, 24 N.Y.3d at 268–70, 22 N.E.3d 999.

### A.     The Amended Complaint Fails to Sufficiently Allege NYT or Feuer Published the Alleged Defamatory Statements With The Requisite Level of Intent—Actual Malice

Defendants argue that Plaintiff is required to plead actual malice because New York's anti-SLAPP law applies to this lawsuit, or alternatively because 1AP is a limited-purpose public figure.  Defs. Mem. at 18.  Defendants assert that Plaintiff has failed to allege facts that plausibly allege NYT or Feuer published any of the allegedly defamatory statements with actual malice, and thus its claims must be dismissed.  Defs. Mem. at 18.

---

21-CV-06863, 2023 WL 1966181, at *6 (S.D.N.Y. Feb. 13, 2023) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 634 n.10 (1962)).

Plaintiff asserts that the heightened standard of actual malice does not apply because it is not a public figure or limited-purpose public figure. Pl. Opp. at 9. Plaintiff does not acknowledge or address whether New York's anti-SLAPP law applies to this action in its opposition brief.

i.    New York's Anti-SLAPP Law Applies to this Action

The New York anti-SLAPP law states:

> [I]n an action involving public petition and participation, damages may only be recovered if the plaintiff, in addition to all other necessary elements, shall have established by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false, where the truth or falsity of such communication is material to the cause of action at issue.

N.Y. Civ. Rights Law § 76-a(2). The substantive provisions of New York's anti-SLAPP law govern a federal court sitting in diversity. *See La Liberte v. Reid*, 966 F.3d 79, 86 n.3 (2d Cir. 2020); *see also Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021). Under the New York anti-SLAPP law "[a]n 'action involving public petition and participation' is a claim based upon: (1) any communication in a place open to the public or a public forum in connection with an issue of public interest." N.Y. Civ. Rights Law § 76-a(1)(a).

This action clearly involves a "communication in a place open to the public or a public forum," because all of the allegedly defamatory statements were alleged to have been published online by the New York Times, Feuer, or NPR. Am. Compl. ¶¶ 13, 14, 17, 21, 25, 28. Both are clearly places open to the public. *See Ctr. for Med. Progress*, 551 F. Supp. 3d at 332 ("[t]he present case clearly falls within the scope of the newly amended anti-SLAPP law" because the challenged statements were published on Twitter and Rewire News which "are both open to the public").

Additionally, the articles and interview absolutely concern "an issue of public interest." The law makes clear that public interest "shall be construed broadly, and shall mean any subject

other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *see Lindberg v. Dow Jones & Co., Inc.*, No. 20-CV-8231, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) ("In light of the extremely broad interpretation [of what qualifies as public interest] by New York courts," cases where "the subject matter was not a matter of legitimate public concern are extremely rare."). As Plaintiff alleges "January 6, 2021 was one of the most dangerous days in the modern history of our republic." Am. Compl. ¶ 10. Therefore, reporting on the events of January 6, 2021 qualifies as "in connection with an issue of public interest." *See Prince v. Intercept*, 634 F. Supp. 3d 114, 138–39 (S.D.N.Y. 2022) ("The Article—which covered issues of national security and international relations, published to a general audience—concerns more than a purely private matter.") (internal quotations omitted).

For the reasons discussed above, New York's anti-SLAPP law applies, and thus Plaintiff must sufficiently plead actual malice to survive the motion to dismiss.[6]

ii.  The Amended Complaint Fails to Sufficiently Allege
     Defendants Published Any Statements with Actual Malice

Plaintiff states that even if the Court determines that the actual malice standard applies, the Amended Complaint alleges facts that, if accepted as true, would sufficiently allege actual malice. Pl. Opp. at 10. In particular, Plaintiff states that there are facts in the Amended Complaint that show (1) "the inherent improbability of the Statements," (2) that "the events never happened and that 1AP's involvement in the Capitol attacks was fabricated as part of a political narrative that also involved General Flynn," (3) that "NYT and Feuer purposefully avoided the truth—they ignored known, readily available, credible sources, including the FBI, who investigated 1AP, cleared it of any wrongdoing and never initiated any criminal charge or proceeding against 1AP

---

[6] Because the Court has concluded that New York's anti-SLAPP law applies to this action, which Plaintiff does not contest in its opposition, and therefore Plaintiff must plead actual malice, the Court does not consider whether Plaintiff is a limited purpose public figure.

or any of its officers," and (4) that "NYT and Feuer continued to publish the false and defamatory Statements after they learned that 1AP contended in a lawsuit that the Statements were false and defamatory."  Pl. Opp. at 10.

Defendants argue that the Amended Complaint "pleads labels and conclusions, not allegations that if proved would show actual malice."  Defs. Mem. at 21.  Specifically, Defendants assert that 1AP's claims, without providing any support, that NYT or Feuer held a bias, and "betrayed the truth in a misguided CNN-like quest" are insufficient to plead actual malice.  Defs. Mem. at 20.  Defendants also assert that an allegation that "1AP contended in some other liable suit that similar statements were false and defamatory" is also insufficient to plead actual malice because general denials are not enough to demonstrate actual malice and "[i]n any event, that suit was filed after most of the statements at issue here" were made and "actual  malice is a determination of the publisher's subjective view as of the time of the publication."  Defs. Mem. at 21.  Defendants further argue that the "actual malice analysis turns on what defendants knew at publication, not what facts may have existed somewhere in the world."  Defs. Reply at 8.  Defendants also argue that the allegations that Defendants "abandoned all journalistic standards and integrity and principles of ethical journalism" are also insufficient to establish actual malice.  Defs. Mem. at 21.

Actual malice requires showing that the statements were "made with knowledge that [they were] false or with reckless disregard of whether [they were] false or not."  *Palin*, 940 F.3d at 810 (internal quotations and citation omitted); *see also New York Times v. Sullivan*, 376 U.S. 254, 280 (1964).  This means that Plaintiff cannot merely allege that the publisher failed to fully investigate or failed to uncover falsity.  *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) ("[F]ailure to investigate before publishing, even when a reasonably prudent person would

have done so, is not sufficient to establish reckless disregard."); *Sullivan*, 376 U.S. at 288 ("[T]he evidence against the Times supports at most a finding of negligence in failing to discover the misstatements, and is constitutionally insufficient to show the recklessness that is required for a finding of actual malice."); *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) ("The reckless conduct needed to show actual malice is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing, but by whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication[.]") (internal citations and quotations omitted).

Additionally, allegations of biases held by the publisher do not satisfy actual malice unless there are additional facts to demonstrate that the defendant also acted pursuant to that bias. *See Palin*, 940 F.3d at 814 (requiring more than "sheer political bias" to establish actual malice); *Harte-Hanks Commc'ns*, 491 U.S. at 665 ("[A] newspaper's motive in publishing a story— whether to promote an opponent's candidacy or to increase its circulation—cannot provide a sufficient basis for finding actual malice."). Instead, the plaintiff needs to allege facts, that if proven true, show that the publisher actually possessed a "high degree of awareness of [the statements'] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).

Plaintiff has not sufficiently alleged facts that NYT or Feuer published any of the alleged defamatory statements with actual malice. For example, the Amended Complaint alleges "[u]pon information and belief, in pushing the 'domestic violent extremism' (DVE) narrative, NYT and Feuer were acting upon instructions and at the direction of one or more government agencies, including the Federal Bureau Investigation." Am. Compl. ¶ 1 n.1. Plaintiff similarly alleges that NYT and Feuer published these false statements and implications "as part of a preconceived government narrative that 'domestic violent extremists' were involved in the attack on the Capitol"

and that "NYT and Feuer did not seek the truth or report it . . . they betrayed the truth in a misguided CNN-like quest to sensationalize news about the January 6 insurrection."  Am. Compl. ¶ 34.  As an initial matter these allegations are completely conclusory and unsupported by specific facts to claim NYT or Feuer actually held a bias against 1AP.  Nonetheless these allegations would be insufficient to allege actual malice.  *See Palin*, 940 F.3d at 814 (requiring more than "sheer political bias" to establish actual malice); *Harte-Hanks Commc'ns*, 491 U.S. at 665 (holding that political motivation alone is not sufficient for a finding of actual malice); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 186 (S.D.N.Y. 2020) (the plaintiff's allegations are largely conclusory or speculative and "[w]ithout more specific facts bearing on [the defendant's] knowledge or motives to act based on personal bias, she cannot establish a plausible inference of actual malice").

Plaintiff also alleges that "[p]rior to publication of the articles at issue in this case, NYT and Feuer knew that 1AP had been thoroughly investigated by the FBI, and cleared of any wrongdoing . . . no charges had ever been brought against 1AP or any of its members by any law enforcement agency."  Am. Compl. ¶ 12.  Plaintiff further states that "[g]iven 1AP's stature and the fact that they were fully and thoroughly investigated and never charged with any crime related to the attack on January 6, 2021, the statements and implications are inherently improbable."  Am. Compl. ¶ 34.  The Amended Complaint also alleges that "NYT and Feuer knew from their examination of a defamation lawsuit filed by 1AP in April 2022 that 1AP contended that the statements and implications were false and defamatory."  Am. Compl. ¶ 34.

These allegations again are wholly conclusory.  Plaintiff fails to allege any specific facts actually connecting NYT and/or Feuer to this FBI investigation and its results.  While a speaker may be found to have acted with actual malice if a plaintiff can allege that the speaker specifically

reviewed a contrary publication previously, *see Palin*, 940 F.3d at 813–14 (naming specific articles of which the writer of a defamatory article oversaw publication), a speaker is not otherwise required to seek out contrary stories.  *Harte-Hanks Commc'ns*, 491 U.S. at 688 (holding that a lack of prudent investigation does not establish reckless disregard or actual malice); *see also Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124 (2d Cir. 2013) (explaining that a publisher who does not already have apparent reasons to doubt the truth of a story is not required to initiate an investigation to create such doubt).  Besides the conclusory allegations that NYT and Feuer knew about this FBI investigation and its results, there are no allegations providing any facts to make that connection. *See Sullivan*, 376 U.S. at 287 ("[t]he mere presence of the stories in the files does not, of course, establish that the Times 'knew' the advertisement was false, since the state of mind required for actual malice would have to be brought home to the persons in the Times' organization having responsibility for the publication").  Furthermore, allegations that the Defendants were aware that in another defamation lawsuit Plaintiff argued that similar statements were false and defamatory, does not amount to actual malice.  *See Edwards v. Nat'l Audubon Soc., Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error"); *see also Contemp. Mission, Inc. v. New York Times Co.*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612 (2d Cir. 1988) ("Publication in the face of a denial by plaintiffs of a statement's truth does not demonstrate actual malice.").

Plaintiff claims that the allegedly defamatory statements and implications that 1AP played a role in the January 6 insurrection [were] completely fabricated."  Am. Compl. ¶ 34.  While it is true that allegations that " 'a story [was] fabricated by the defendant' if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the

information" or allegations that the statements were based on "unverified anonymous" sources may support a showing of actual malice, *Biro*, 807 F.3d at 545 (quoting *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968)), there are no allegations here that Defendants failed to provide sources or relied on unverified anonymous sources in publishing the challenged statements.

Plaintiff also alleges, again in a conclusory fashion, that "NYT and Feuer knowingly abandoned all journalistic standards and integrity and principles of ethical journalism." Am. Compl. ¶ 34. This too is wholly conclusory and does not amount to actual malice. *See Khan v. New York Times Co.*, 269 A.D. 2d 74, 77, 710 N.Y.S.2d 41 (1st Dep't 2000) (" 'reckless disregard' for the truth requires more than a departure from reasonably prudent conduct"); *see also Brimelow v. New York Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (summary order) ("[n]or are we persuaded by [the plaintiff's] attempts to find additional support in the Complaint's references to the [defendant's] alleged departure from 'accepted newsgathering standards' and its 'own commitment to fairness and impartiality' ").

Finally, Plaintiff alleges that "[o]n December 15, 2022 1AP served Defendants with written notice advising Defendants that the statements and implications in the various Articles, tweets and NPR interview were false and defamatory and demanding that the false statements and implications be retracted, and removed from the Internet" and "Defendants refused to retract." Am. Compl. ¶ 35. NYT's refusal to retract does not amount to actual malice either. *See Sullivan*, 376 U.S. 286–87 ("Times' failure to retract upon respondent's demand . . . is likewise not adequate evidence of malice for constitutional purposes."); *see also Biro*, 807 F.3d at 546 ("events that occurred after publication . . . cannot be relevant to the publisher's state of mind [regarding] his alleged malice at the time of publication.") (internal quotations omitted and alteration in original).

Because 1AP has failed to allege facts that, if proven true, could plausibly show that the NYT or Feuer actually possessed a "high degree of awareness of [the statements'] probable falsity," *Garrison*, 379 U.S. at 74, it has failed to allege actual malice. As a result, Plaintiff has failed to state a claim and the motion to dismiss must be granted. However, the Court briefly notes below the various other issues with Plaintiff's claims that further support dismissal.

### B. Plaintiff Fails to State a Claim for the Additional Reason that the Amended Complaint Fails to Allege the Required Elements of a Defamation Claim

Plaintiff's failure to plead actual malice is fatal to its defamation and defamation by implication claims. But, Plaintiff has failed to plausibly allege that Defendants are liable for the additional reasons discussed below.

### i.   Plaintiff Fails to Plead Special Damages

Defendants allege that Plaintiff's claims must also be dismissed because the Amended Complaint does not sufficiently plead defamation *per se* and it has failed to allege special damages with any level of specificity. Defs. Mem. at 23. Plaintiff's opposition alleges that it has adequately pled special damages and makes no argument or reference to a *per se* claim. Pl. Opp. at 24. Plaintiff abandoned its passing references to a claim of defamation *per se* in opposition to the motion to dismiss. It is well-established that a "plaintiff effectively concedes a defendant's arguments by his failure to respond to them." *See Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012); *see also Scott v. JPMorgan Chase & Co.*, No. 13-CV-646, 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (dismissing claims because the plaintiff "failed to respond," and thus "effectively concede[d]," an argument with "conclusive effect") (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015); *Tlapanco v. Elges*, No. 15-CV-2852, 2017 WL 4329789, at *4 (S.D.N.Y. Sept. 14, 2017) (ruling that plaintiff forfeited an argument by failing to

raise it in an opposition brief).  Since Plaintiff abandoned its defamation *per se* argument the Court finds that special damages are a necessary element of Plaintiff's claim.  *See Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136, 145 (S.D.N.Y. 2022) ("failure to plead special damages is a fatal defect") (quotations and citations omitted).

To plead special damages, New York law requires a plaintiff to identify "the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation, not from the effects of defamation." *Matherson v. Marchello*, 100 A.D.2d 233, 235, 473 N.Y.S.2d 998, 1000 (2d Dep't 1984) (quotations and citations omitted), *abrogated on other grounds by Laguerre v. Maurice*, 138 N.Y.S.3d 123 (2d Dep't 2020).  "[Special damages] must be fully and accurately identified with sufficient particularity to identify actual losses." *Id.* at 1001 (quotation marks omitted).  "[R]ound figures or a general allegation of a dollar amount as special damages will not suffice." *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 441 (S.D.N.Y. 1997) (citing *Boyle v. Stiefel Labs., Inc.*, 204 A.D.2d 872, 612 N.Y.S.2d 469, 471 (3d Dep't), *appeal denied*, 84 N.Y.2d 803, 617 N.Y.S.2d 137, 641 N.E.2d 158 (1994).  "The particularity requirement is strictly applied, as courts will dismiss defamation claims for failure to allege special damages with the requisite degree of specificity." *Thai v. Cayre Grp. Ltd.*, 726 F. Supp. 2d 323, 330 (S.D.N.Y. 2010) (citing *Emergency Enclosures, Inc. v. National Fire Adjustment Co.*, Inc., 68 A.D.3d 1658, 893 N.Y.S.2d 414, 417 (4th Dep't 2009)); *see also L.W.C. Agency v. St. Paul Fire & Mar. Ins. Co.*, 125 A.D.2d 371, 509 N.Y.S.2d 97, 100 (2d Dep't 1986).

The Amended Complaint states that "as a direct result of Defendants' defamation [and defamation by implication], 1AP suffered damage and loss, including, but not limited to, special damage, loss of income, lost future earnings and diminished earning capacity, injury to standing, good will and reputation, costs and other out-of-pocket expenses, in the sum of $75,000,000.00."

Am. Compl. ¶¶ 42, 48.  This is precisely the type of "general allegation of a dollar amount" that is insufficient to support a claim of defamation.  *See Thai*, 726 F. Supp. 2d at 330; *see also Dellaportas v. Shahin*, No. 24-CV-0793, 2024 WL 3729183, at *5 (S.D.N.Y. Aug. 7, 2024) ("libel claim must be dismissed because the special damages he alleges are speculative and do not make "any attempt at itemization").  Plaintiff's claims must be dismissed on the additional ground that it fails to sufficiently plead special damages.

ii.  Many of Defendants' Statements Are Not Actionable
     Because They Are Not "Of and Concerning" Plaintiff

Defendants argue that many of the challenged statements are not "of and concerning" Plaintiff since they do not explicitly reference Plaintiff by name.  Defs. Mem. at 10.  Plaintiff argues in turn that, because Defendants identified 1AP as "extremist," and then throughout the relevant articles Defendants reference "extremist groups," the statements not directly referencing Plaintiff by name can be reasonably interpreted as referring to Plaintiff since Plaintiff falls into that category.  Pl. Opp. at 15.

To survive a motion to dismiss, a plaintiff must "advance [] colorable claims of having been identified and described by defamatory comment."  *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir. 1980).  Thus, a defendant's statement is only actionable for a defamation claim when the statement is "of and concerning" the plaintiff.  *See Brady v. Ottaway Newspapers, Inc.*, 84 A.D.2d 226, 445 N.Y.S.2d 786, 788 (2d Dep't 1981) (a plaintiff must allege that "the allegedly defamatory comment refer[s] to the plaintiff"); *see also Church of Scientology Int'l v. Time Warner, Inc.*, 806 F. Supp. 1157, 1159–60 (S.D.N.Y. 1992), *aff'd sub nom. Church of Scientology Int'l*, 238 F.3d 168.  "Whether a plaintiff has satisfied this requirement is typically resolved by the court at the pleading stage."  *Elias v. Rolling Stone LLC*, 872 F.3d 97, 105 (2d Cir. 2017) (citing *Church of Scientology Int'l*, 238 F.3d at 173).

In deciding whether the "of and concerning" requirement has been sufficiently plead, the Court must determine whether upon reading the statements, those who know the plaintiff would have understood that the plaintiff was the focus of the allegedly libelous statement. *See Elias*, 872 F.3d at 104–05; *see also Dalbec v. Gentleman's Companion, Inc.,* 828 F.2d 921, 925 (2d Cir. 1987) ("It is not necessary that all the world should understand the libel."). Particularly relevant to this action, under the group libel doctrine, a plaintiff's claim for defamation is inadequate when it is not mentioned individually in an allegedly defamatory statement but instead is merely a part of a group that is referenced. *See Elias*, 872 F.3d at 107–08 (citing *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 132 A.D.3d 82, 15 N.Y.S.3d 36, 41 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82, 42 N.Y.S.3d 64, 65 N.E.3d 35 (2016)). However, there is an exception to this general rule "where a statement defames all members of a small group." *Elias,* 872 F.3d at 108 (citing *Brady*, 84 A.D.2d at 231, 445 N.Y.S.2d at 790 (2d Dep't 1981)). "To evaluate a small group defamation claim, a court considers the size of the group, whether the statement impugns the character of all or only some of the group's members, and the prominence of the group and its individual members in the community." *Id.*

Plaintiff alleges that the following non-time barred statements, although not directly naming 1AP, are "of and concerning" 1AP because the articles "intentionally engage[] in reciprocation" by referring to "extremists" and then "specifically identifying examples of such 'extremist and paramilitary groups.' " Am. Compl. ¶ 20.

- "[A] [December 19, 2020] tweet by President Donald J. Trump less than three weeks before Jan. 6, 2021, served as a crucial call to action *for extremist groups* that played a central role in storming the Capitol";

- "*Extremist groups* almost immediately celebrated Mr. Trump's Twitter message, which they widely interpreted as an invitation to descend on the city in force";

- "*Extremists* began to set up encrypted communications channels, acquire protective gear and, in one case, prepare heavily armed 'quick reaction forces' to be staged outside Washington";

- "Mr. Trump's message arguably landed with the greatest impact among *members of the same extremist groups* that had been in Washington on Dec. 12";

- "Once the call came, early on Dec. 19, *the extremists* were ecstatic.";

- "Federal Prosecutors and congressional investigators have homed in on how a tweet by Donald Trump was a crucial call to action to *far-right extremist groups* that stormed the Capitol on Jan.6";

- "Fed prosecutors and congressional investigators have gathered growing evidence of how Trump's 'wild' tweet in Dec '20 served as a crucial catalyst and call to action *for extremists groups*, which immediately started military style planning for Jane 6";

- "Be 'there, will be wild!' How Trump's middle-of-the-night tweet on Dec. 19, 2020, inflamed *nationalist groups* that ultimately stormed the Capitol a few weeks later";

- "[A]fter Mr. Trump's many efforts to overturn the 2020 election had failed, he and his allies turned to *violent far-right extremist groups*";

- "There were Proud Boys, Oath Keepers, Three Percenters, the QAnon network, Boogaloo Boys, militia men and *other assorted extremist and religious cults* that assembled under the banner of 'Stop The Steal'";

- "This was quite a coming-out party for a lot of *extremist, antigovernment groups*, and white nationalist groups that had never worked together before"; and

- "Donald Trump's tweet urging everyone to descend upon Washington for a wild protest on Jan. 6 succeeded in galvanizing and unifying the *dangerous extremists of the country*."

*See* Am. Compl. ¶¶ 19(a)–(c), 19(e)–(f), 17, 30(a)–(d) (emphasis added).  These statements, generally referencing "extremists" are insufficient to satisfy the "of and concerning" requirement under the group libel doctrine.  *Elias*, 872 F.3d at 107–08 (citing *Three Amigos SJL Rest., Inc.*, 132 A.D.3d 82, 15 N.Y.S.3d at 41, *aff'd*, 28 N.Y.3d 82, 42 N.Y.S.3d 64, 65 N.E.3d 35.  These statements only reference vague and undefined large categories which contain an untold number of people and groups of people.  *See Diaz v. NBC Universal, Inc.*, 337 F. App'x 94, 96 (2d Cir. 2009) (summary order) (affirming dismissal of defamation claim because the group referenced

was extremely large in size); *see also Abramson v. Pataki*, 278 F.3d 93 (2d Cir. 2002) ("statement made by [the defendant] would probably not be deemed to apply to any individual since it refers to a group of more than one thousand people").

And although Plaintiff is mentioned in parts of the articles, *see e.g.*, Am. Compl. ¶¶ 19(d), 23(b), 30(f), that does not mean that all of the statements concern Plaintiff; this is even true when the plaintiff is described as a part of this larger group or an example of a member of the group. *See Chau v. Lewis*, 935 F. Supp. 2d 644, 664 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118 (2d Cir. 2014) (rejecting plaintiff's argument that "[b]y constantly shifting focus between plaintiffs and CDO managers generally, the book leaves no doubt that its criticisms apply to both"); *see also Sparrow Fund Mgt. LP v. MiMedx Group, Inc.*, No. 18-CV-4921, 2019 WL 1434719, at *10 (S.D.N.Y. Mar. 31, 2019) (finding that certain statements referencing the category "short-sellers" were "not sufficiently particular" to the plaintiff, though the article did elsewhere describe the plaintiff as a short-seller).

Furthermore, the small group doctrine does not apply here because "extremist groups" and the other broad undefined categories included in the articles are not small groups or particular specifically defined groups of individuals. *See Three Amigos SJL Rest.*, 28 N.Y.3d at 87, 65 N.E.3d at 38 (finding that challenged statements were not amenable to the small group exception because they failed to "describe a particular, specifically-defined group of individuals"). The categories of groups mentioned in the challenged articles are vague, large, and wholly undefined. *See Elias,* 872 F.3d at 108 ("successful small group defamation claims typically involve groups with twenty-five or fewer members"); *see also Brady*, 84 A.D.2d at 231, 445 N.Y.S.2d at 790 ("These vague and general references to a comparatively large group, without mentioning the plaintiffs, do not constitute an actionable defamation."). Plus, these statements do not implicate

*all* members of this category or group. *See Elias,* 872 F.3d at 108 ("where a statement defames *all members* of a small group") (emphasis added).

There are also a handful of statements that Plaintiff points to that do not rely solely on these broad category groups and instead contain slightly more facts potentially connecting them to Plaintiff. In particular, Plaintiff argues that, since statements elsewhere in the articles suggest some connection between Plaintiff and Stone and Flynn, *see* ECF No. 40-3, 40-5 (for example Feuer states in the NPR interview "Stone and Flynn were often accompanied by members of the Proud Boys, the Oath Keepers and . . . the 1st Amendment Praetorian"), readers would interpret statements referencing Stone and Flynn to be "of and concerning" Plaintiff. These statements include:

- "Mr. Trump, on the eve of the Capitol attack, had tried to open a channel of communication with a *pair of allies* [*Flynn and Stone*] who had not only worked on his behalf for weeks challenging the results of the election, but who also had extensive ties to extremist groups like the Proud Boys and the Oath Keepers, who were soon to be at the forefront of the violence";

- "The J6 'panel plans to detail known links between the political operative *Roger Stone*, a longtime ally of Mr. Trump's, the former national security adviser, *Michael T. Flynn*, and the extremist groups";

- "[w]hile we don't know what Meadows may have said to *Stone and Flynn*, what we do know is that *Stone and Flynn* 'both have extensive contacts to far-right militia groups that were intimately involved in the attack on the Capitol";

- "The call from Meadows to *Stone and Flynn* 'is a potential conduit in which Trump could be connected directly to these militia groups that, ultimately, were at the vanguard of the attack on the Capitol."

*See* Am. Compl. ¶¶ 23(a), 26(a)(b), 30(e) (emphasis added). These references to Stone and Flynn are insufficient to establish that these statements were "of and concerning" 1AP. As an initial matter, nowhere does the Amended Complaint allege that Stone and Flynn are members or

representatives of 1AP. Instead, Plaintiff simply alleges that references to Stone and Flynn amount to references to 1AP. That is too far a leap.

First, references to individuals who are actually members of a specified organization are not necessarily sufficient to be statements "of and concerning" the organization. *See Church of Scientology Int'l*, 806 F. Supp. at 1161 ("Statements which refer to individual members of an organization do not implicate the organization.") (citation omitted). Therefore, the suggestion that references to individuals who are not alleged to be a part of 1AP could be "of and concerning" 1AP is not reasonable. Second, the groups referenced in these statements that mentioned Stone and Flynn are either specifically identified and they do not include Plaintiff (like the Proud Boys or Oath Keepers) or are vague and undefined large groups. *See Sparrow Fund Mgt., LP v. Mimedx Group, Inc.*, No. 118-CV-04921, 2019 WL 8955307, at *14 (S.D.N.Y. Nov. 7, 2019), *report and recommendation adopted,* No. 18-CV-4921, 2020 WL 1330283 (S.D.N.Y. Mar. 22, 2020) (finding that a statement referencing the parties of "multiple lawsuits" did not identify the plaintiff individually because such a general reference "expands the size of the group to an unknown number of parties").

iii.    Many of the Challenged Statements Are Not Sufficiently Alleged to be False

Defendants argue that Plaintiff fails to challenge or explain what is false about the allegedly defamatory statements. Defs. Mem. at 6. Plaintiff argues that it sufficiently explained the falsity of each challenged statement. Pl. Opp. at 7. Besides the fact that Plaintiff has not sufficiently alleged actual malice or special damages, almost all of the non-time barred challenged statements that are actually "of and concerning" Plaintiff are not sufficiently alleged to be false.

For a statement to be defamatory, it must be false, since true assertions cannot give rise to direct defamation claims. *See Gross v. New York Times Co.*, 82 N.Y.2d 146, 152–53, 603

N.Y.S.2d 813, 623 N.E.2d 1163 (1993) ("falsity is a necessary element of a defamation cause of action"); *see also Celle*, 209 F.3d at 181. In New York, the burden falls on the plaintiff to establish the falsity of allegedly defamatory statements. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 444, 749 N.Y.S.2d 456, 779 N.E.2d 167 (2002) ("[a] party alleging defamation must allege that the statement is false"); *see also Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).

To satisfy the burden of alleging falsity, a plaintiff cannot merely declare that the defendant's statement was false; it must elaborate on what was false about the statement. *See Tannerite Sports, LLC*, 864 F.3d at 245 ("a plaintiff in New York courts generally must identify how the defendant's statement was false to survive a motion to dismiss") (citing *Silsdorf v. Levine*, 59 N.Y.2d 8, 14, 449 N.E.2d 716 (1983). A plaintiff must assert specific facts that, if found to be true, would contradict the defendant's statement and show that those statements are not "substantially true." *Id.* at 247. "Substantial truth," the standard New York courts used to determine falsity for defamation claims, "turns on the understanding of the 'average reader' " and whether the statement would "have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012); *see also Fleckenstein v. Friedman*, 266 N.Y. 19, 24, 193 N.E. 537 (1934) ("A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.").

While the Amended Complaint contains the conclusory language "the following [are] materially false statement of fact," *see* Am. Compl. ¶¶ 15, 19, 23, 26, 30, before it lists each of the challenged statements, the Court need not credit these unspecific and conclusory allegations which do not explain what is actually contradicted or false about the challenged statements. *See Tannerite*

*Sports, LLC*, 864 F.3d at 247.  Furthermore, Plaintiff points to the same two following allegations

in the Amended Complaint to establish falsity for every single challenged statement:

- "neither 1AP, Lewis, not any of 1AP's security professional engaged in violence or played any part or role or had any involvement in the planning coordination or the attacks on the Unites States Capitol on January 6, 2022" Am. Compl. ¶ 12

- "1AP is not a violent, dangerous, paramilitary, extremist group . . . [and] played no role whatsoever in the planning, coordination or execution of the January 6 attacks on the United States Capitol, and certainly did no storm the Capitol." Am. Compl. ¶ 32.

*See* Pl. Opp. at 11–20 (citing Am. Compl. ¶¶ 12, 32).  Plaintiff argues that, if proven true, these

facts would demonstrate that each of Defendants' challenged statements are false.  Pl. Opp. at 11–

14.

This argument is faulty.  Even accepting these broad disclaimers as true for the purposes

of this motion, they do not prove the falsity of the challenged statements.  For example, consider

one of the challenged statements in the January 3, 2022 article: "Now congressional investigators

are examining the role of another right-wing paramilitary group that was involved in a less publicly

visible yet still expansive effort to keep President Donald J. Trump in power: the 1ˢᵗ Amendment

Praetorian."  *See* ECF No. 40–1; Am. Compl. 15(b).  Plaintiff's allegations if prove true, *i.e.*, that

1AP played no role in the January 6 attack on the Capitol, does not prove false that congressional

investigators examined its role in keeping President Trump in power, which is what the challenged

statement says.  The same is true for the remaining challenged statements in the January 3, 2022

article.  *See* Am. Compl. ¶ 19(a)–(f).

Similarly, the March 29 article states: "The event on Dec. 12, 2020 . . . brought together at

the same time and place extremist and paramilitary groups like the Proud Boys the Oath Keepers

and the 1ˢᵗ Amendment Praetorian, who would be present on Jan. 6."  *See* ECF No. 40–2; Am.

Compl. ¶ 19(d).  For substantially the same reasons as discussed above, Plaintiff's reliance on the

above-quoted allegations in paragraphs 12 and 32 of the Amended Complaint does not demonstrate that it is false that 1AP attended the December 12, 2020 event that other groups like the Proud Boys and Oath Keepers attended.  Nor does it refute that 1AP was present on January 6.  Instead, Plaintiff's allegations only refute that 1AP engaged in planning or executing the violent attack that eventually unfolded, which significantly, the articles do not allege.

> Representative Jamie Raskin, Democrat of Maryland, has said he intends to lead a presentation that will focus on the roles of far-right groups like the Proud Boys, the Oath Keepers and the 1st Amendment Praetorian played in the Capitol attack.  Mr. Raskin has also promised to explore the connections between those groups and the people in Mr. Trump's orbit.

ECF No. 40–3; Am. Compl. ¶ 23(b).  However, these are clearly not accusations or factual statements made by NYT or Feuer.  As clearly reflected in the article by the use of quotations, they are merely a recounting of what Mr. Raskin has said.  It is true that "merely reporting what another has said . . . does not insulate a reporter from liability for defamation."  *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp.3d 810, 824 (S.D.N.Y. 2021) (internal quotation marks omitted).  However, a reporter can be insulated from liability depending on how the information is presented.  *See id.*  This is the type of factual situation where the statement contained in the article is not defamatory because it attributes the statement to a source and makes clear that it is a merely an allegation that will be further investigated.  *See, e.g.*, *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021).  Plaintiff's challenge to a similar statement in the July 11 article fails for the same reason.  *See* ECF No. 40–4; Am. Compl. ¶ 30(f).

For all of the various reasons discussed above, Plaintiff's claims based on a theory of direct defamation must be dismissed for failure to state a claim.

iv.  Plaintiffs Fail to Make a Rigorous Showing to
Support a Claim of Defamation by Implication

Plaintiff also argues that even if the statements are not all false, the various articles falling

within the statute of limitations, *see* Am. Compl. ¶¶ 20, 24, 30, have the "strong defamatory gist

and false implication" that "1AP was involved, played a role, participated in or conspired and

colluded with others to plan and undertake the violent seditious attack upon the United States

Capitol on January 6, 2021."  Am. Compl. ¶ 44, *see also* Am. Compl. ¶¶ 20, 24, 31.  Plaintiffs

allege that the articles "imply that 1AP engaged in conduct that is criminal, dishonest, deceitful,

immoral, unethical, and that, at the very least they knowingly aided and abetted such misconduct."

Am. Compl. ¶ 44.  Defendants argue that Plaintiff's claim fails because the ordinary meaning of

the words of the articles do not have the meaning Plaintiff ascribes to them, and Plaintiff fails to

show that the author intended or endorsed the defamatory inference.  Defs. Mem. at 12.

Under New York law, a plaintiff may bring a defamation-by-implication claim, which is

based not on false statements, but on statements that create "false suggestions, impressions and

implications arising from otherwise truthful statements." *Armstrong v. Simon & Schuster, Inc.*, 85

N.Y.2d   373,   381,   625   N.Y.S.2d   477,   649   N.E.2d   825   (1995);   *see   also*

*Herbert*, 781 F.2d at 307 ("[a] combination of individual statements which in themselves may not

be defamatory might lead the reader to draw an inference that is damaging to the plaintiff").

Generally, a claim for defamation by implication must be based on a "misleading omission[ ] or

false suggestion." *Krepps v. Reiner*, 588 F. Supp. 2d 471, 483 (S.D.N.Y. 2008).

To survive a motion to dismiss alleging a defamation-by-implication claim, "the plaintiff

must make a rigorous showing" that the challenged publication "as a whole can be reasonably read

both to impart a defamatory inference and to affirmatively suggest that the author intended or

endorsed the inference." *Stepanov*, 120 A.D.3d at 37, 987 N.Y.S.2d 37; *see also Biro*, 883 F.

Supp. 2d at 466.  In determining defamatory meaning, the Court must consider the context of the article as a whole.  *See Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 488–89 (S.D.N.Y. 2021).  This standard "strikes the appropriate balance between a plaintiff's right to recover in tort for statements that defame by implication and a defendant's First Amendment protection for publishing substantially truthful statements."  *Stepanov*, 120 A.D.3d at 38; *see also Kesner*, 515 F. Supp. 3d at 170.  This is an "objective" standard, which "asks whether the plain language of the communication itself suggests that an inference was intended or endorsed."  *Stepanov*, 120 A.D.3d at 37.

Plaintiff alleges that the March 29 article "viewed in its entirety, states or implies that 1AP was one of the extremists and paramilitary groups that played a role in storming the Capitol on January 6, 2021."  Am. Compl. ¶ 20.  Plaintiff further alleges that the June 29 article "viewed in its entirety, states that 1AP was at the 'forefront of the violence' on January 6."  Am. Compl. ¶ 24.  Finally, Plaintiff argues that "the [July] 11 article, viewed in its entirety, states or implies that 1AP was one of the 'violent far-right extremist groups' that were involved in efforts to overturn the 2020 election" and that "1AP 'assembled' and/or 'worked together' with or is linked to other 'extremist, antigovernment groups and white nationalist groups.' "  Am. Compl. ¶ 31.  Plaintiff alleges the "ordinary meaning of the words" used in these articles is susceptible to a defamatory implication.  Am. Compl. ¶¶ 20, 24, 31.

These allegations claim too much.  When reviewing the articles as a whole, the plain language does not impart the defamatory meaning that Plaintiff claims.  *See Stepanov*, 120 A.D.3d at 37 ("[I]t is not a subjective standard like the 'actual malice' test, but an objective one that asks whether the plain language of the communication itself suggests that an inference was intended or endorsed").  In attempting to allege these defamatory implications, Plaintiff picks out specific

phrases or statements from the article, removes them from their surrounding context in order to allege these defamatory implications.  For example, the June 29 article viewed in its entirety does not state "that 1AP was at the 'forefront of the violence' on January 6," Am. Compl. ¶ 24, instead the article read in full makes clear that it is reporting on allegations made and questions being asked in the underlying investigation into the events of January 6.  *See* ECF No. 40–3.  The one specific reference to "forefront of the violence" is even attributed to other specifically named organizations, not including Plaintiff.  *See* ECF No. 40–3.  Selecting particular phrases and pulling them out of context from these articles to assert an overall defamatory implication is improper.  *See James v. Gannett Co.,* 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976).

The articles at issue do not imply facts about Plaintiff that are not true, instead they simply report on the ongoing investigations and allegations related to the events that took place on January 6, that to some extent include investigations regarding and allegations against 1AP.  That cannot support a defamation by implication claim.  *See Martin v. Hearst Corp.*, 777 F.3d 546 (2d Cir. 2015) (denying defamatory implication where an article reported that plaintiff was arrested and criminally charged because "[r]easonable readers understand that some people who are arrested are guilty and that others are not").  While the underlying investigation may have ultimately shown something different than what was reported, and Plaintiff likely did not appreciate being included in these articles, the articles cannot support a defamation by implication claim.  *See Id.*  ("Reporting [plaintiff's] arrest without an update may not be as complete a story as [plaintiff] would like" but it is not defamation by implication).  Plaintiff does not satisfy a rigorous showing, that these articles have the defamatory implications it prescribes to them.

In addition, even if a defamatory implication was plausible, Plaintiff's claim still fails because aside from a conclusory allegation, *see* Am. Compl. ¶ 46, the Amended Complaint does

not satisfy the rigorous showing that Defendants intended these defamatory implications. *See Stepanov*, 120 A.D.3d at 37–38, 987 N.Y.S.2d 37 (implied defamation under New York requires that the author intended or endorsed the defamatory meaning); *see also Kesner*, 515 F. Supp. 3d at 175; *see also Lindell v. Mail Media Inc.*, 575 F. Supp. 3d 479, 488 (S.D.N.Y. 2021) (dismissing a defamation by implication claim because the plaintiff failed to make the rigorous showing that the defendant intended the implication).

    v.   <u>Many of the Challenged Statements Contain Unactionable Opinions</u>

Defendants assert that many of the challenged statements are non-actionable opinions because they include terms like "far-right group," "right-wing paramilitary group," "murky security group," "extremist," "paramilitary," "violent," "dangerous," "antigovernment," "white nationalist," or "militia" groups. Defs. Mem. at 21–23. Plaintiff very broadly replies to these arguments with the same phrase for each statement: The statement is "not an opinion because it uses precise language, readily understood, it can be proven false, and it was published by Defendants as a news story and not under the opinion section." Pl. Opp. at 12, 14–16.

"[E]xpressions of an opinion false or not, libelous or not, are constitutionally protected and may not be the subject of private damages actions." *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286, 508 N.Y.S.2d 901, 501 N.E.2d 550, 550 (1986) (internal quotation marks omitted); *see also Flamm v. American Ass'n of Univ. Women*, 201 F.3d 144, 147–48 (2d Cir. 2000). "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).

Whether a statement is a fact or an opinion is a matter of law to be decided by courts. *Celle*, 209 F.3d at 178. Courts generally consider the following three factors when deciding whether a

statement is actionable fact or non-actionable opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Flamm*, 201 F.3d at 153 (internal quotation marks omitted) (citing *Gross*, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167).

Defendants are correct that terms such as those challenged by Plaintiff are generally considered non-actionable. *See Buckley v. Littell*, 539 F.2d 882, 893 (2d Cir. 1976) ("the use of 'fascist,' 'fellow traveler' and 'radical right' as political labels . . . cannot be regarded as having been proved to be statements of fact, among other reasons, because of the tremendous imprecision of the meaning and usage of these terms in the realm of political debate"); *Brimelow v. New York Times Co.*, No. 20-CV-222, 2020 WL 7405261, at *9 (S.D.N.Y. Dec. 16, 2020), *aff'd*, No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021) ("the characterization of some individuals . . . as 'white nationalists' is [a] non-actionable opinion"); *Nat'l Rifle Ass'n of America v. Cuomo*, 350 F. Supp. 3d 94, 133 (N.D.N.Y. 2018) ("Gov. Cuomo's statement that the "[t]he NRA is an extremist organization" is clearly an expression of his opinion"). To the extent that Plaintiff basis its claims for defamation on the challenged categorizations or labels, they are nonactionable opinions.

## III.    Fair and True Report Privilege

Even if the challenged statements and articles were found to be plausibly defamatory, many would be protected by the fair report privilege, recognized under New York law. New York's Civil Rights Law provides:

> A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any

> judicial proceeding, legislative proceeding or other official
> proceeding, or for any heading of the report which is a fair and true
> headnote of the statement published.

N.Y. Civ. Rights Law § 74.  "The purpose of Civil Rights Law § 74 is the protection of reports of

[applicable] proceedings which are made in the public interest."  *Cholowsky v. Civiletti,* 69 A.D.3d

110, 887 N.Y.S.2d 592, 595 (2d Dep't 2009) (citation and quotation marks omitted).  Section 74

protects both statements that "essentially summarize or restate the allegations of a pleading" and

"the release of background material with regard to the case."  *Kesner*, 515 F. Supp. 3d at 172.  The

fact that a defendant "derive[s] information about the judicial proceedings from secondary sources

[does] not mean that Civil Rights Law § 74 [is] inapplicable."  *Cholowsky,* 69 A.D.3d 110, 887

N.Y.S.2d at 596.  There is also "no requirement that the publication report the plaintiff's side of

the controversy."  *Id.*

    "A key test courts have adopted to resolve whether a report qualifies for

the fair report privilege is whether the ordinary viewer or reader can determine from the

publication itself that the publication is reporting on a judicial proceeding."  *Kinsey v. New York

Times Co.*, 991 F.3d 171, 178–79 (2d Cir. 2021).  Additionally, to qualify for the privilege a

statement must be "substantially accurate."  *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d

Cir. 2005).  "A report is 'substantially accurate' if, despite minor inaccuracies, it does not produce

a different effect on a reader than would a report containing the precise truth."  *Id.*  (citation

omitted).  As the New York Court of Appeals has explained, "[a] fair and true report admits of

some liberality; the exact words of every proceeding need not be given if the substance be

substantially stated."  *Holy Spirit Ass'n for Unification of World Christianity v. New York Times

Co.,* 49 N.Y.2d 63, 424 N.Y.S.2d 165, 399 N.E.2d 1185, 1187 (1979).  However, "Section 74 does

not afford protection if the specific statements at issue, considered in their context, 'suggest[ ]

36

more serious conduct than that actually suggested in the official proceeding.' " *Calvin Klein Trademark Trust v. Wachner,* 129 F. Supp. 2d 248, 253 (S.D.N.Y. 2001) (quoting *Daniel Goldreyer, Ltd. v. Van de Wetering,* 217 A.D.2d 434, 630 N.Y.S.2d 18, 22 (1st Dep't 1995)).

An ordinary reader would plainly understand that the challenged statements and articles are relaying information relating to the underlying investigations and proceedings. The articles all explicitly mention and repeatedly reference the underlying investigation, the allegations made, and the evidence that was presented or was going to be presented at the proceedings. *See e.g.,* Am. Compl. ¶¶ 21, 23(b), 28, 30(e). The fact that Plaintiff was never charged or found guilty of wrongdoing does not mean that Section 74 does not apply to the investigation. *See Kinsey v. New York Times Co.*, 991 F.3d 171, 179 (2d Cir. 2021) (quoting *Cholowsky*, 69 A.D.3d at 114–15); *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 214–15 (N.D.N.Y. 2014) ("the investigations themselves, independent of any culminating action, were explicitly deemed to constitute official proceedings"). The articles without question would be understood by an ordinary reader to be reporting on the investigation and proceedings conducted by Congress into the on the events of January 6. *See Sheindlin v. Brady*, 597 F. Supp. 3d 607, 634 (S.D.N.Y. 2022) ("the context surrounding this sentence makes clear that Defendant was reporting on a judicial proceeding").

To receive the protection of Section 74, the publications must be "substantially accurate" in reporting on the proceeding. *Karedes v. Ackerley Grp., Inc.*, 423 F.3d 107, 119 (2d Cir. 2005); *Kesner*, 515 F. Supp. 3d 149 (publication may not "suggest more serious conduct than that actually suggested in the official proceeding"). Plaintiff asserts repeatedly that the articles and the statements create a different effect on the reader, but to support that Plaintiff simply disputes that the underlying allegations made in the investigation were incorrect since Plaintiff was not involved in the Capitol attack. *See e.g.*, Pl. Opp. at 12. While that may be true, Plaintiff's complaint then

is with the underlying investigation.  Plaintiff does not argue that this investigation did not occur, that 1AP was not a part of the investigation, or that these allegations, quotes, and evidence were not mentioned or presented in connection with the underlying investigation.  Instead, 1AP merely disputes that the allegations *in the underlying investigation* were incorrect.  However, challenging the underlying allegations made in the investigation and proceeding is not sufficient to overcome the fair and true reporting privilege.  *See Kesner*, 515 F. Supp. 3d at 175.  Therefore, even if these statements or articles were found to be defamatory, they would nonetheless be privileged under Section 74.

## CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are DISMISSED.  Plaintiff was put on notice of the deficiencies in its complaint by reason of arguments raised in Defendants' pre-motion letter, [ECF No. 8], and the Court provided Plaintiff an opportunity to amend its complaint in response to Defendants' pre-motion letter.  [ECF No. 10].  Plaintiff did in fact file an Amended Complaint.  [ECF No. 37]. Accordingly, the Court finds that granting Plaintiff leave to amend here would be futile.  *See Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006)).

The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 38 and to close this case.

SO ORDERED.

Date: March 28, 2025
    New York, NY

_____
**MARY KAY VYSKOCIL**
**United States District Judge**

38